FILED
CLERK, U.S. DISTRICT COURT
FEB - 5 2010
CENTRAL DISTRICT OF CALIFORNIA
BY DEPUTY

ANDERSON KILL & OLICK, P.C.
WILLIAM G. PASSANNANTE (*PRO HAC VICE*)
A. MARCELLO ANTONUCCI (*PRO HAC VICE*)
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
TEL: 212-278-1000
FAX: 212-278-1733

ANDERSON KILL WOOD & BENDER, P.C.
JOSEPH G. BALICE (SBN 245509)
864 EAST SANTA CLARA STREET
VENTURA, CA 93001
TEL: 805-288-1300
FAX: 805-288-1301

ATTORNEYS FOR PLAINTIFF, KEYSTONE AUTOMOTIVE INDUSTRIES, INC.

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEYSTONE AUTOMOTIVE INDUSTRIES, INC.,<br><br>Plaintiff,<br><br>v.<br><br>ACE AMERICAN INSURANCE COMPANY,<br><br>Defendant. | Case No.: CV10 0881 CAS (SSx)<br><br>**COMPLAINT FOR BREACH OF IMPLIED COVENANT OR GOOD FAITH AND UNFAIR DEALING; REQUEST FOR TRIAL BY JURY** |

COPY

**INTRODUCTION**

1. This is an insurance coverage action in which Plaintiff Keystone Automotive Industries, Inc. ("Keystone" or "Plaintiff"), paid all of the premiums due to purchase general liability insurance (collectively, the "Policies") from Defendant ACE American Insurance Company ("ACE" or "Defendant"), and had its claim for defense and indemnity insurance coverage improperly denied by an insurance company protecting its own financial interests rather than its policyholder's interests.

ANDERSON KILL & OLICK, P.C.
1251 AVENUE OF THE AMERICAS ▪ NEW YORK, NY 10020 ▪ TELEPHONE: 212-278-1000-1300 ▪ FAX: 212-278-1733 ▪ WWW.ANDERSONKILL.COM

ANDERSON KILL & OLICK, P.C.

1251 AVENUE OF THE AMERICAS ■ NEW YORK, NY 10020 ■ TELEPHONE: 212-278-1000-1300 ■ FAX: 212-278-1733 ■ WWW.ANDERSONKILL.COM

2.      On November 30, 2006, MQVP, Inc. ("MQVP") filed an action against Keystone alleging, among other things, that Keystone infringed, misused, misrepresented, and unfairly competed with the MQVP mark.  See MQVP, Inc. v. Keystone Automotive, Inc., No. 06-51141 (E.D. Mich. 2006) (the "MQVP Claim").  The allegations made by MQVP against Keystone plainly fall within the terms of the "advertising injury" coverage provisions in the Policies ACE sold to Keystone.

3.      On April 27, 2007, Keystone tendered the MQVP Claim to ACE, and requested the insurance coverage due under the Policies.  To date, ACE has wrongfully denied Keystone the full benefits of the Policies it sold to Keystone.

4.      In a December 19, 2008 e-mail, ACE agreed to provide defense insurance coverage and to pay defense costs.  Later, ACE wrongfully reversed its promise and withdrew its defense insurance coverage to Keystone.

5.      By reason of ACE's improper handling of Keystone's MQVP Claim, breach of its duty of good faith and fair dealing to Keystone, and its refusal to provide the full benefits of the Policies it sold to Keystone, Keystone has been forced to incur substantial costs and fees in connection with the defense and settlement of the MQVP Claim, and in connection with the pursuit of this action to recover insurance.

## PARTIES

6.      Keystone is a California corporation with an office at 700 East Bonita Avenue, Pomona, California 91767.

7.      Upon information and belief, ACE is an insurance company organized and existing under the laws of Pennsylvania with its principal place of business at 436 Walnut Street, P.O. Box 1000, Philadelphia, Pennsylvania 19106.

///

ANDERSON KILL & OLICK, P.C.
1251 AVENUE OF THE AMERICAS ■ NEW YORK, NY 10020 ■ TELEPHONE: 212-278-1000-1300 ■ FAX: 212-278-1733 ■ WWW.ANDERSONKILL.COM

## JURISDICTION AND VENUE

8. This Court has original jurisdiction over the allegations asserted in this Complaint pursuant to 28 U.S.C. § 1332(a)(1) because the Claim in controversy exceeds the sum or value of $75,000, exclusive of costs or interest, and is between citizens of different States.

9. Venue of this action is proper in this district pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events giving rise to the claims set forth herein occurred in this district.

## BACKGROUND

### The ACE Insurance Policies

10. ACE sold the following general liability insurance policies (the "Policies"), with the indicated policy numbers, policy periods, and policy limits, to Keystone:

| Policy No. | Policy Period | Policy Limits |
|---|---|---|
| HDOG21702298 | 12/31/03-12/31/04 | $1,000,000 |
| HDOG21702018 | 12/31/04-12/31/05 | $1,000,000 |
| HDOG2059083A | 12/31/05-12/31/06 | $1,000,000 |
| HDOG20592709 | 12/31/06-12/31/07 | $1,000,000 |

11. Attached as Exhibit A is Policy No. HDOG21702298, issued for 12/31/03-12/31/04, with limits of $1,000,000. This Policy is representative of the all the Policies with respect to all material provisions at issue in this dispute.

12. Keystone paid ACE all of the premiums to purchase the Policies.

13. Keystone has complied with all applicable conditions precedent, except those that have been excused, and all obligations, including payment of the deductible, for insurance coverage under the Policies.

///

///

**A. The ACE Insurance Policies' "Advertising Injury" Provisions**

14. In the Policies' insuring agreement, ACE promised to "pay those sums that the insured [Keystone] becomes legally obligated to pay as damages because of 'personal and advertising injury'" and ACE accepted the "duty to defend the insured against any 'suit' seeking those damages."

15. Pursuant to the Policies themselves and the Deductible Endorsement thereto defense costs erode the deductible, but once the deductible has been exhausted, the Policies' limits are not reduced by defense expenses incurred defending claims.

The Policies define "personal and advertising injury," among other things, as:

> [An] injury, including consequential 'bodily injury', arising out of one or more the following offenses; …
>
> **f.** The use of another's advertising idea in your 'advertisement'; or
>
> **g.** Infringing upon another's copyright, trade dress, or slogan in your 'advertisement.'

The Policies define "advertisement" as:

> [A] notice that is broadcast or published to the general public or specific market segments about your goods, products or services, for the purpose of attracting customers or supporters. For the purpose of this definition:
>
> **a.** Notices that are published include material placed on the Internet or similar electronic means of communication ….

16. The Policies' "Exclusion i" removes from insurance coverage: "'[p]ersonal and advertising injury' arising out of the infringement of copyright, patent, trademark, trade secret, or other intellectual property rights[,]" but state that "this exclusion does not apply to infringement in your advertisement of copyright, trade dress or slogan."

**B. The History Of The "Advertising Injury" Coverage Provision**

17. As noted above, the "advertising injury" coverage provisions of the Policies cover various "offenses."

ANDERSON KILL & OLICK, P.C.
1251 AVENUE OF THE AMERICAS ■ NEW YORK, NY 10020 ■ TELEPHONE: 212-278-1000-1300 ■ FAX: 212-278-1733 ■ WWW.ANDERSONKILL.COM

18. In or about 1976, in order to provide expanded coverage under the standard form Comprehensive General Liability, the Insurance Services Office ("ISO") filed in all states, on behalf of its subscribers, members and service purchasers, a "BROAD FORM COMPREHENSIVE GENERAL LIABILITY ENDORSEMENT G222."

19. ISO included an "Explanatory Memorandum" with its filing of the BROAD FORM COMPREHENSIVE GENERAL LIABILITY ENDORSEMENT G222, which states, in part:

> This endorsement was developed for use with the Comprehensive General Liability Policy only since this endorsement is designed to expand on the broad coverage already provided by the CGL policy …
>
> We believe that the coverage afforded under this endorsement is the broadest package of coverage available to the average insured …
>
> The following is a general description of the coverage provided under this endorsement: ...
>
> Advertising injury covers the insured for various types of injuries such as piracy, unfair competition, infringement of copyright, etc., arising out of the insured's advertising, promotional or publicity activities.

20. The broad grant of insurance coverage for "advertising injur[ies]," as described in the ISO Explanatory Memorandum, while evolving, continues to grant the "broadest package of coverage available to the average insured …."

21. Upon information and belief, ACE was aware of the representations made in the ISO Explanatory Memorandum filing made on their behalf regarding the BROAD FORM COMPREHENSIVE GENERAL LIABILITY ENDORSEMENT G222.

22. The Policies that ACE sold to Keystone are written on a standard ISO form.

ANDERSON KILL & OLICK, P.C.
1251 AVENUE OF THE AMERICAS ■ NEW YORK, NY 10020 ■ TELEPHONE: 212-278-1000-1300 ■ FAX: 212-278-1733 ■ WWW.ANDERSONKILL.COM

ANDERSON KILL & OLICK, P.C.
1251 AVENUE OF THE AMERICAS ■ NEW YORK, NY 10020 ■ TELEPHONE: 212-278-1000-1300 ■ FAX: 212-278-1733 ■ WWW.ANDERSONKILL.COM

23. As such, the Policies provide and should be interpreted as providing broad "advertising injury" coverage.

**The MQVP Complaint**

24. On November 30, 2006, MQVP brought an action against Keystone alleging, among other things, Keystone infringed, misused, and misrepresented the MQVP mark in Keystone's advertising materials given to body shops, including labels, packaging, invoices, and catalogues. MQVP also alleged Keystone infringed, misused, and misrepresented the MQVP mark by using it on the Keystone website.

25. Additionally, MQVP alleged that Keystone's use of the MQVP mark was, among other things, unfair competition.

**The MQVP Claim**

26. The allegations from the MQVP Complaint are covered "personal and advertising injury" "offenses" in Keystone's "advertisements" under the Policies.

27. "Exclusion i" does not apply because the allegations from the MQVP Complaint fall under the exception for "infringement in your advertisement of copyright, trade dress or slogan."

28. On April 27, 2007, Keystone submitted the MQVP Claim to ACE.

29. Over four months later, on September 18, 2007, ACE responded, stating it would begin its insurance coverage investigation of Keystone's MQVP Claim.

30. After this lengthy delay, ACE began an inadequate insurance coverage investigation of Keystone's MQVP Claim.

31. On October 15, 2007, ACE further responded to Keystone's tender of the MQVP Claim by asserting general insurance coverage defenses under the Policies and reserving its rights as to providing defense and indemnity insurance coverage under the Policies.

ANDERSON KILL & OLICK, P.C.
1251 AVENUE OF THE AMERICAS ■ NEW YORK, NY 10020 ■ TELEPHONE: 212-278-1000-1300 ■ FAX: 212-278-1733 ■ WWW.ANDERSONKILL.COM

32. Thereafter, on ACE's request under the Policies, Keystone regularly provided ACE with information regarding the MQVP Claim and defense expenses incurred.

33. As a result of ACE's lengthy insurance coverage investigation and requests for information regarding the MQVP Claim, Keystone believed that ACE would provide defense and indemnity insurance coverage for the MQVP Claim.

34. Nearly a year later, on August 22, 2008, ACE denied Keystone's MQVP Claim on the basis of "Exclusion i" as well as a number of other inapplicable insurance coverage defenses.

35. Nonetheless, in a December 18, 2008, e-mail, Keystone continued to pursue defense and indemnity insurance coverage from ACE for the MQVP Claim.

36. Then, in a December 19, 2008 e-mail, ACE accepted, without reservation of its duty to defend; "ACE American has acknowledged its duty to defend during a certain period to time (sic), and accordingly, ACE American will pay those defense costs owed under the policy."

37. In the December 19, 2008 e-mail above, ACE did not continue to reserve its rights.

38. After ACE acknowledged its duty to defend in the December 19, 2008 e-mail, ACE did not assume control of the defense of the MQVP Claim, nor did ACE appoint defense counsel for Keystone in the MQVP Claim, or otherwise coordinate with Keystone to provide defense of the MQVP Claim.

39. In a February 20, 2009 e-mail, Keystone informed ACE that Keystone incurred $139,449.95, in defense costs (in addition to Keystone's deductible), and sought reimbursement of same.

40. On March 26, 2009, ACE paid $83,167.40, to Keystone for its defense costs for the MQVP Claim. Ace never explained how it reached this figure, or on what basis it decided to pay Keystone for less than 60% of the defense costs Keystone incurred defending the MQVP

ANDERSON KILL & OLICK, P.C.
1251 AVENUE OF THE AMERICAS ■ NEW YORK, NY 10020 ■ TELEPHONE: 212-278-1000-1300 ■ FAX: 212-278-1733 ■ WWW.ANDERSONKILL.COM

Claim. Either this determination was arbitrary and in disregard of Keystone's contractual rights, or ACE withheld whatever justification it had in discrediting Keystone's defense expenses.

41. Keystone continued to incur substantial defense costs for the MQVP Claim.

42. ACE, however, failed and refused to defend Keystone in the MQVP Claim or reimburse Keystone any further for the costs incurred defending the MQVP Claim.

43. On October 28, 2009, Keystone settled the MQVP Claim, in principle and the settlement is awaiting the approval of the Bankruptcy Court.

44. ACE, however, refused to provide Keystone with settlement indemnification for the MQVP Claim.

45. ACE also refused to indemnify Keystone for the money paid to settle the MQVP Claim.

46. Keystone has paid substantial amounts in defense costs and settlement of the MQVP Claim that ACE is required to pay to Keystone under the Policies.

**COUNT I**
**(Breach of Contract of ACE's Duty to Defend)**

47. Keystone repeats and realleges paragraphs 1 through 46, as if fully set forth herein.

48. ACE was obligated to defend Keystone in the MQVP Claim because it is covered, or at least potentially covered, under the "advertising injury" coverage provisions in the Policies.

49. ACE breached its contractual obligations by failing and refusing to defend Keystone in the MQVP Claim.

50. Keystone has fully satisfied all of the conditions precedent, except those that have been excused, and has satisfied all other obligations under the Policies.

51. As a direct and proximate result of ACE's breach, Keystone has suffered substantial damages in an amount to be determined at trial. In addition, Keystone has sustained, and continues to sustain, attorneys' fees and costs in pursuing its rights under the Policies.

ANDERSON KILL & OLICK, P.C.
1251 AVENUE OF THE AMERICAS ■ NEW YORK, NY 10020 ■ TELEPHONE: 212-278-1000-1300 ■ FAX: 212-278-1733 ■ WWW.ANDERSONKILL.COM

52. Furthermore, any of ACE's insurance coverage defenses should be barred by the doctrine of estoppel or alternatively were waived, because when ACE represented it would pay Keystone's defense costs for the MQVP Claim, it did so without reservation of rights to deny insurance coverage under the Policies, and when ACE began paying Keystone those defense costs, and Keystone relied on that representation and payment to its detriment.

**COUNT II**
**(Breach of Contract of ACE's Duty to Indemnify)**

53. Keystone repeats and realleges paragraphs 1 through 52, as if fully set forth herein.

54. Under the Policies, ACE is obligated to indemnify Keystone for the settlement of MQVP Claim because it is covered under the "advertising injury" coverage provisions.

55. ACE breached its contractual obligations by failing and refusing to indemnify Keystone for the full amount of the settlement of the MQVP Claim.

56. Keystone has fully satisfied all of the conditions precedent, except those that have been excused, and has satisfied all other obligations under the Policies.

57. As a direct and proximate result of ACE's breach, Keystone has suffered substantial damages in an amount to be determined at trial. Additionally, ACE has sustained, and continues to sustain, attorneys' fees and costs in pursuing its rights under the Policies.

58. Moreover, any of ACE's insurance coverage defenses should be barred by the doctrine of estoppel, or alternatively were waived, because ACE represented to Keystone that it would pay Keystone the defense costs for the MQVP Claim, ACE did not continue to reserve its rights to deny insurance coverage under the Policies, began paying Keystone those defense costs, and Keystone relied on that representation and payment to its detriment.

///

///

ANDERSON KILL & OLICK, P.C.
1251 AVENUE OF THE AMERICAS ■ NEW YORK, NY 10020 ■ TELEPHONE: 212-278-1000-1300 ■ FAX: 212-278-1733 ■ WWW.ANDERSONKILL.COM

**COUNT III**
**(Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing -- Insurance Bad Faith)**

59. Keystone repeats and realleges paragraphs 1 through 58, as if fully set forth herein.

60. In every contract of insurance, including the Policies at issue here, there is an implied covenant of good faith and fair dealing that the insurance company will do nothing to unfairly deprive its policyholder of the benefits of the contract or to place its own interests before the interests of its policyholder. ACE, having sold the Policies to Keystone, was at all times bound to said implied covenant of good faith and fair dealing.

61. In the course of denying insurance coverage and failing and/or refusing to pay Keystone's defense and indemnification costs under the Policies' "advertising injury" coverage provisions, ACE breached the implied covenant of good faith and fair dealing by, among other things:

(a) Denying Keystone's claim by asserting insurance coverage defenses that are legally and/or factually invalid;

(b) Placing unduly restrictive interpretations on its policy terms for the purpose of denying coverage due under the Policies;

(c ) Misrepresenting the terms of the Policies in order to advance its own economic interests, to the detriment of Keystone;

(d) Failing to investigate adequately Keystone's insurance claims;

(e) Failing to defend Keystone's MQVP Claim, forcing Keystone to fund its own defense;

(f) Arbitrarily paying Keystone less than the 60% of the defense expenses that ACE acknowledged it had a duty to pay and withholding any justification for doing so;

(g) Improperly handling Keystone's MQVP Claim by representing that it would provide for Keystone's defense and by paying Keystone's defense costs, but then refusing to further pay such costs;

(h) Unreasonably and unjustifiably failing timely and fully to provide Keystone's defense and pay Keystone's indemnification costs under the Policies' "advertising injury" insurance coverage provisions;

(i) Failing to give Keystone's interests equal consideration with its own;

(k) Forcing Keystone to institute litigation to recover amounts due under the Policies.

62. Upon information and belief, ACE's conduct was unreasonable and engaged in for the purpose of placing ACE's own interests ahead of those of Keystone, its policyholder, and for withholding from Keystone the rights and benefits to which Keystone are entitled under the Policies.

63. Upon information and belief, ACE's conduct was done with conscious disregard of Keystone's rights and constitutes despicable conduct, and was done with the intent to vex, injure or annoy Keystone such as to constitute oppression, fraud or malice under California Civil Code section 3294, entitling Keystone to punitive damages in an amount appropriate to punish or set an example of ACE.

64. As a direct and proximate result of ACE's breach, Keystone has suffered substantial damages in an amount to be determined at trial. In addition, Keystone has incurred, and continues to incur, attorneys' fees and costs in pursuing its rights under the Policies.

## PRAYERS FOR RELIEF

**WHEREFORE**, Plaintiff requests the following relief:

1. Enter judgment on Count I in favor of Keystone and against ACE in an amount to be determined by the Court, including pre- and post-judgment interest, and consequential damages.

2. Enter judgment on Count II in favor of Keystone and against ACE in an amount to be determined by the Court, including pre- and post-judgment interest, and consequential damages.

3. Enter judgment on Count III in favor of Keystone and against ACE in an amount to be determined by the Court, including pre- and post-judgment interest, consequential

ANDERSON KILL & OLICK, P.C.
1251 AVENUE OF THE AMERICAS ■ NEW YORK, NY 10020 ■ TELEPHONE: 212-278-1000-1300 ■ FAX: 212-278-1733 ■ WWW.ANDERSONKILL.COM

damages, attorneys' fees, the costs of this action, and punitive damages in an amount appropriate to punish or set an example of ACE.

**Respectfully submitted,**

**DATED: February 3, 2010**

**By:** [signature]

**WILLIAM G. PASSANNANTE (*PHV*)**
**A. MARCELLO ANTONUCCI (*PHV*)**
**ANDERSON KILL & OLICK, P.C.**

**JOSEPH G. BALICE (SBN 245509)**
**ANDERSON KILL WOOD & BENDER, P.C.**
**Attorneys for Plaintiff,**
**KEYSTONE AUTOMOTIVE INDUSTRIES, INC.**

ANDERSON KILL & OLICK, P.C.
1251 AVENUE OF THE AMERICAS ■ NEW YORK, NY 10020 ■ TELEPHONE: 212-278-1000-1300 ■ FAX: 212-278-1733 ■ WWW.ANDERSONKILL.COM

ANDERSON KILL & OLICK, P.C.
1251 AVENUE OF THE AMERICAS ■ NEW YORK, NY 10020 ■ TELEPHONE: 212-278-1000-1300 ■ FAX: 212-278-1733 ■ WWW.ANDERSONKILL.COM

**JURY DEMAND**

KEYSTONE AUTOMOTIVE INDUSTRIES demands a trial by jury on all counts so triable.

**DATED:** **February 3, 2010**

By: [signature]

**WILLIAM G. PASSANNANTE (*PHV*)**
**A. MARCELLO ANTONUCCI (*PHV*)**
**ANDERSON KILL & OLICK, P.C.**

**JOSEPH G. BALICE (SBN 245509)**
**ANDERSON KILL WOOD & BENDER, P.C.**
**Attorneys for Plaintiff,**
**KEYSTONE AUTOMOTIVE INDUSTRIES, INC.**

**EXHIBIT A**

# EXHIBIT A

# General Liability Policy – Declarations

ACE USA

- [ ] Bankers Standard Insurance Company, 436 Walnut Street, PO Box 1000, Philadelphia, Pennsylvania 19106-3703
- [ ] Century Indemnity Company, 436 Walnut Street, PO Box 1000, Philadelphia, Pennsylvania 19106-3703
- [ ] ACE Fire Underwriters Insurance Company, 436 Walnut Street, PO Box 1000, Philadelphia, Pennsylvania 19106-3703
- [x] ACE American Insurance Company, 436 Walnut Street, PO Box 1000, Philadelphia, Pennsylvania 19106-3703
- [ ] ACE Property and Casualty Insurance Company, 436 Walnut Street, PO Box 1000, Philadelphia, Pennsylvania 19106-3703
- [ ] Indemnity Insurance Company of North America, 436 Walnut Street, PO Box 1000, Philadelphia, Pennsylvania 19106-3703
- [ ] Insurance Company of North America, 436 Walnut Street, PO Box 1000, Philadelphia, Pennsylvania 19106-3703
- [ ] Pacific Employers Insurance Company, 436 Walnut Street, PO Box 1000, Philadelphia, Pennsylvania 19106-3703

POLICY IDENTIFICATION

HDO | G20592709

NAMED INSURED AND ADDRESS

Keystone Automotive Industries, Inc.
700 East Bonita Ave.
Pomona, CA 91767

PRIOR POLICY NO. OR NEW: HDO G2059083A

PRODUCER CODE: 157056 COMM: NIL
AON Risk Services Inc.
707 Wilshire Blvd., Suite 6000
Los Angeles, CA 90017

MARKETING OFFICE: 5DP/LAU
MARKET HAZARD CODE:
PIIC CODE: 5531 INDUSTRY CODE:

POLICY IS : Renewal OF HDO G2059083A

NAMED INSURED IS : Corporation

BUSINESS OF INSURED : Automotive Parts Supplier

POLICY PERIOD : FROM 12/31/2006 TO 12/31/2007

12:01 A.M. STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE

## PREMIUM PAYMENT CONDITIONS

AUDIT PERIOD : Annual

PAYMENT FREQUENCY : Annual

PAYMENT SCHEDULE : Annual

*Includes: $9 KY Domestic, Foreign & Alien Insurers Monthly Surcharges; $49 New Jersey Property/Liability Insurance Guarantee Association Surcharge

TOTAL ADVANCE PREMIUM: $ 143,408* (Minimum Premium: $136,182)

PREMIUMS RESULTING FROM AUDIT ARE NOT INCLUDED IN THE ABOVE.

EXHIBIT A

| DECLARATIONS – GENERAL LIABILITY POLICY Page 2 | HDO | POLICY IDENTIFICATION G20592709 |
|---|---|---|

## COVERAGES AND LIMITS OF INSURANCE

In return for the payment of premium indicated above, we agree with you to provide the following coverage(s) at the limits shown, subject to all of the terms and conditions of this policy.

Coverage Form:

| COMMERCIAL GENERAL LIABILITY | Limits of Insurance |
|---|---|
| Each Occurrence Limit | $ 1,000,000 |
| Damage to Premises Rented to You Limit | $ 300,000 |
| Medical Expense Limit (any one person or organization) | $ 100,000 |
| Personal & Advertising Injury Limit | $ 1,000,000 |
| General Aggregate Limit (other than Products/ Completed Operations) | $ 10,000,000 |
| Products/Completed Operations Aggregate Limit | $ 2,000,000 |
| Employee Benefits Liability Per Claim | $ 1,000,000 |
| Employee Benefits Liability Aggregate | $ 1,000,000 |
| | $ |
| | $ |
| | $ |

## SCHEDULE OF LOCATIONS

LOCATION NUMBER AND ADDRESS

Per Schedule on file with company

**DECLARATIONS – GENERAL LIABILITY POLICY Page 3**

POLICY IDENTIFICATION
HDO G20592709

## SCHEDULE OF COVERAGES

**COVERAGE PART:**

| Location Number | Coverage | Class Code/ Classification Description | Premium Basis | Exposure | Rate | Premium |
|---|---|---|---|---|---|---|
| 001 | | 10070 | S | * *752,500,000 | $ 0.1905 | $ 143,350 |
| | | | | | $ | $ |
| | | | | | $ | $ |
| | | | | | $ | $ |
| | | | | | $ | $ |
| | | | | | $ | $ |
| | | | | | $ | $ |
| | | | | | $ | $ |

TOTAL PREMIUM FOR THIS COVERAGE PART $ 143,350

When used as a premium basis the following code definitions apply:

A - Area – Per 1,000 square feet of area
C - Total Cost – per $1,000 of total cost
D - If Any
E - Admissions – per 1,000 admissions
F - Flat Charge
J - Total Operating Expenditures – per $1,000 of Expenditures
O - Other
P - Payroll – per $1,000 of payroll
S - Gross Sales – per $1,000 of Gross Sales
U - Units
X - Each

DECLARATIONS – GENERAL LIABILITY POLICY Page 4

POLICY IDENTIFICATION HDO G20592709

## FORMS AND ENDORSEMENTS (Page 1 of 4)

### FORMS AND ENDORSEMENTS ATTACHED TO THIS POLICY AT INCEPTION

SCHEDULE OF COVERAGE PARTS

| Form No. | Description |
|---|---|
| ALL20887 | ACE Producer Compensation Practices & Policies |
| ILP0010104 | U.S. Treasury Department's Office of Foreign Assets Control ("OFAC") Advisory Notice to Policyholders |
| IL00171198 | Common Policy Conditions |
| CG00011001 | Commercial General Liability Coverage Form |
| ALL2Y31a | Arkansas Notice to Policyholders |
| ALL5X45 | Questions About Your Insurance? - FL, MO, TN |
| ALL18653a | Questions About Your Insurance? (IL) |
| ALL2Y81 | Indiana Notice To Policyholders |
| ALL2U78b | Notice To All Oklahoma Policyholders |
| A115S54 | Notice To Pennsylvania Property and Casualty Insurance Policyholders |
| ALL4Y30b | Information and Complaints (TX) |
| DCE19368f | Notification To Texas Policyholders |
| ALL7X47a | Important Information to Virginia Policyholders Regarding Your Insurance |
| ALL5X51a | Wisconsin Notice to Policyholders |

SCHEDULE OF ENDORSEMENTS

| Endt. No. | Form No. | Description |
|---|---|---|
| 1. | LD12992a | Schedule of Named Insureds |
| 2. | LD5X70a | Composite Rate Endorsement |
| 3. | LD6U72a | Deductible Endorsement (ALAE INCLUDED IN DEDUCTIBLE) |
| 4. | LD2G44a | Amendment of Conditions |
| 5. | LD12983a | Additional Insured - Employees Fellow Employees - Bodily Injury Only |
| 6. | LD9863A | Employee Benefits Liability Endorsement |
| 7. | LD3R16 | Exclusion - Asbestos |
| 8. | LD4S35 | Exclusion - Lead |
| 9. | LD5T92 | Fellow Employee Coverage |
| 10. | LD0846 | Professional Liability Exclusion Endorsement |
| 11. | LD7F23 | Absolute Pollution Exclusion |
| 12. | CG20051185 | Additional Insured - Controlling Interest |
| 13. | CG20260704 | Additional Insured - Designated Person or Organization |

This declaration and the coverage form(s) and endorsements, if any, listed above and attached, completes this policy.

COUNTERSIGNED AT: ______________ AUTHORIZED AGENT: ______________

DATE: ______________

EXHIBIT A

## SCHEDULE OF FORMS AND ENDORSEMENTS

| Named Insured | Keystone Automotive Industries, Inc. | | Endorsement Number (Page 2 of 4) |
|---|---|---|---|
| Policy Symbol HDO | Policy Number G20592709 | Policy Period 12/31/2006 to 12/31/2007 | Effective Date of Endorsement 12/31/2006 |
| Issued By (Name of Insurance Company) ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

| Endt. No. | Form No. | Description |
|---|---|---|
| 14. | CG20280704 | Additional Insured - Lessor of Leased Equipment |
| 15. | CG21470798 | Employment - Related Practices Exclusion |
| 16. | CG21701102 | Cap on Losses From Certified Acts of Terrorism |
| 17. | CG24041093 | Waiver Of Transfer Of Rights Of Recovery Against Others To Us |
| 18. | TRIA11a | Policyholder Disclosure Notice Of Terrorism Insurance Coverage |
| 19. | ALL18057-0 | Notification of Premium Adjustment |
| 20. | CG00670305 | Exclusion - Violation of Statutes That Govern E-Mails, Fax, Phone Calls or Other Methods of Sending Material or Informat |
| 21. | IL00210702 | Nuclear Energy Liability Exclusion Endorsement (Broad Form) |
| 22. | CG00621202 | War Liability Exclusion |
| 23. | CG26080490 | Arkansas Changes - Multi-Year Policies |
| 24. | IL02310702 | Arkansas Changes - Cancellation and Nonrenewal |
| 25. | IL02580702 | Arizona Changes - Cancellation and Nonrenewal |
| 26. | CG32340105 | California Changes |
| 27. | IL02701104 | California Changes - Cancellation and Nonrenewal |
| 28. | IL02280406 | Colorado Changes - Cancellation and Nonrenewal |
| 29. | IL01401105 | Connecticut Changes - Civil Union |
| 30. | IL02600705 | Connecticut Changes - Cancellation and Nonrenewal |
| 31. | IL02370702 | Delaware Changes - Termination Provisions |
| 32. | CG02201106 | Florida Changes - Cancellation And Nonrenewal |
| 33. | IL02620702 | Georgia Changes - Cancellation and Nonrenewal |
| 34. | IL02760204 | Iowa Changes - Cancellation and Nonrenewal |
| 35. | CG02000705 | Illinois Changes - Cancellation and Nonrenewal |
| 36. | IL01620406 | Illinois Changes - Defense Costs |
| 37. | CG01230397 | Indiana Changes - Pollution Exclusion |
| 38. | CG01091185 | Kansas And Oklahoma Changes - Transfer of Rights |
| 39. | IL02610702 | Kansas Changes - Cancellation and Nonrenewal |
| 40. | IL02630702 | Kentucky Changes - Cancellation and Nonrenewal |
| 41. | CG01181204 | Louisiana Changes - Legal Action Against Us |
| 42. | CG01250303 | Louisiana Changes - Insuring Agreement |
| 43. | CG26841204 | Louisiana Changes - Transfer of Rights of Recovery Against Others To Us Condition |

Authorized Agent

EXHIBIT A

SCHEDULE OF FORMS AND ENDORSEMENTS

| Named Insured | Keystone Automotive Industries, Inc. | | Endorsement Number (Page 3 of 4) |
|---|---|---|---|
| Policy Symbol HDO | Policy Number G20592709 | Policy Period 12/31/2006 to 12/31/2007 | Effective Date of Endorsement 12/31/2006 |
| Issued By (Name of Insurance Company) ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

| Endt. No. | Form No. | Description |
|---|---|---|
| 44. | IL02770505 | Louisiana Changes - Cancellation and Nonrenewal |
| 45. | CG02011204 | Maryland Changes |
| 46. | CG26731204 | Maryland Changes - Premium Audit Condition |
| 47. | IL09130498 | Insurance Inspection Services Exemption From Liability |
| 48. | CG01681204 | Michigan Changes |
| 49. | IL02860702 | Michigan Changes - Cancellation and Nonrenewal |
| 50. | CG01220798 | Minnesota Changes - Contractual Liability Exclusion and Supplementary Payments |
| 51. | CG26050207 | Minnesota Changes |
| 52. | CG26811204 | Minnesota Changes - Duties Condition |
| 53. | CG01340803 | Missouri Changes - Pollution Exclusion |
| 54. | CG26250405 | Missouri Changes - Guaranty Association |
| 55. | CG26501298 | Missouri Changes - Medical Payments |
| 56. | IL02821206 | Mississippi Changes - Cancellation and Nonrenewal |
| 57. | CG26201093 | New Jersey Changes - Loss Information |
| 58. | IL02081205 | New Jersey Changes - Cancellation and Nonrenewal |
| 59. | IL02510204 | Nevada Changes - Cancellation and Nonrenewal |
| 60. | CG01041204 | New York Changes - Premium Audit |
| 61. | CG01630999 | New York Changes Commercial General Liability Coverage Form |
| 62. | CG26211091 | New York Changes - Transfer of Duties When A Limit Of Insurance Is Used Up |
| 63 | IL02681105 | New York Changes - Cancellation and Nonrenewal |
| 64. | CG01091185 | Kansas And Oklahoma Changes - Transfer of Rights |
| 65 | IL02360702 | Oklahoma Changes - Cancellation and Nonrenewal |
| 66. | IL02790106 | Oregon Changes - Cancellation and Nonrenewal |
| 67. | IL02460702 | Pennsylvania Changes - Cancellation and Nonrenewal |
| 68. | IL01970702 | Rhode Island Changes |
| 69. | IL02730106 | Rhode Island Changes - Cancellation and Nonrenewal |
| 70. | IL02490702 | South Carolina Changes - Cancellation and Nonrenewal |
| 71. | IL02500702 | Tennessee Changes - Cancellation and Nonrenewal |
| 72. | CG01030606 | Texas Changes |
| 73. | CG01861204 | Utah Changes |
| 74. | CG01790203 | Virginia Changes |
| 75. | CG01540906 | Vermont Changes - Pollution |

Authorized Agent

EXHIBIT A

# SCHEDULE OF FORMS AND ENDORSEMENTS

| Named Insured | Keystone Automotive Industries, Inc. | | | Endorsement Number (Page 4 of 4) |
|---|---|---|---|---|
| Policy Symbol HDO | Policy Number G20592709 | Policy Period 12/31/2006 to 12/31/2007 | | Effective Date of Endorsement 12/31/2006 |
| Issued By (Name of Insurance Company) ACE American Insurance Company | | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

| Endt. No. | Form No. | Description |
|---|---|---|
| 76. | IL01090206 | Vermont Changes - Civil Union |
| 77. | CG01240193 | Wisconsin Changes - Amendment of Policy Conditions |

CC-1E15 Ptd. In U.S.A.

Authorized Agent

EXHIBIT A

POLICY NUMBER: HDO G20592709

**ACE Producer Compensation**
**Practices & Policies**

ACE believes that policyholders should have access to information about ACE's practices and policies related to the payment of compensation to brokers and independent agents. You can obtain that information by accessing our website at http://www.aceproducercompensation.com or by calling the following toll-free telephone number: 1-866-512-2862.

EXHIBIT A

POLICY NUMBER: HDO G20592709

IL P 001 01 04

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations, and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

© ISO Properties, Inc., 2004

EXHIBIT A

POLICY NUMBER: HDO G20592709

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

**A. Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.
2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:
   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or
   b. 30 days before the effective date of cancellation if we cancel for any other reason.
3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.
4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.
5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.
6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**D. Inspections And Surveys**

1. We have the right to:
   a. Make inspections and surveys at any time;
   b. Give you reports on the conditions we find; and
   c. Recommend changes.
2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:
   a. Are safe or healthful; or
   b. Comply with laws, regulations, codes or standards.
3. Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.
4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**E. Premiums**

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and
2. Will be the payee for any return premiums we pay.

**F. Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Copyright Insurance Services Office, Inc., 1998

EXHIBIT A

POLICY NUMBER: HDO G20592709

COMMERCIAL GENERAL LIABILITY
CG 00 01 10 01

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

SECTION I – COVERAGES

COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

      **(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

      **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

   **b.** This insurance applies to "bodily injury" and "property damage" only if:

      **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

      **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

      **(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

   c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

   **d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

      **(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

      **(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage", or

      **(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

© ISO Properties, Inc., 2000

EXHIBIT A

e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

2. **Exclusions**

This insurance does not apply to:

a. **Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

b. **Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract", and

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

c. **Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

d. **Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

e. **Employer's Liability**

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

© ISO Properties, Inc., 2000

EXHIBIT A

**f. Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

**(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building;

**(ii)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

**(i)** Any insured; or

**(ii)** Any person or organization for whom you may be legally responsible; or

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

**(i)** "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

**(ii)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

© ISO Properties, Inc., 2000

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(b) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

(a) Less than 26 feet long; and

(b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

**j. Damage To Property**

"Property damage" to:

(1) Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

© ISO Properties, Inc., 2000

EXHIBIT A

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section **III** – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section **III** – Limits Of Insurance.

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance ; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

© ISO Properties, Inc., 2000

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

2. **Exclusions**

This insurance does not apply to:

a. **Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

b. **Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

c. **Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

d. **Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

e. **Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

f. **Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

g. **Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

h. **Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

i. **Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

j. **Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

(1) Advertising, broadcasting, publishing or telecasting;

(2) Designing or determining content of websites for others, or

(3) An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a.**, **b.** and **c.** of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

k. **Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

© ISO Properties, Inc., 2000

EXHIBIT A

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-Related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

COVERAGE C MEDICAL PAYMENTS

**1. Insuring Agreement**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(1)** The accident takes place in the "coverage territory" and during the policy period;

**(2)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(3)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while taking part in athletics.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage A.

**h. War**

Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**a.** All expenses we incur.

© ISO Properties, Inc., 2000

EXHIBIT A

b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

e. All costs taxed against the insured in the "suit".

f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

(1) Agrees in writing to:

(a) Cooperate with us in the investigation, settlement or defense of the "suit";

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2) Provides us with written authorization to:

(a) Obtain records and other information related to the "suit"; and

(b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section I – Coverage **A** – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

a. We have used up the applicable limit of insurance in the payment of judgments or settlements; or

b. The conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

© ISO Properties, Inc., 2000

EXHIBIT A

**SECTION II – WHO IS AN INSURED**

1. If you are designated in the Declarations as:

   a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

   d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

   e. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

2. Each of the following is also an insured:

   a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

      (1) "Bodily injury" or "personal and advertising injury":

         (a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

         (b) To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

         (c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs **(1)(a)** or **(b)** above; or

         (d) Arising out of his or her providing or failing to provide professional health care services.

      (2) "Property damage" to property:

         (a) Owned, occupied or used by,

         (b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

      you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

   b. Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

   c. Any person or organization having proper temporary custody of your property if you die, but only:

      (1) With respect to liability arising out of the maintenance or use of that property; and

      (2) Until your legal representative has been appointed.

   d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

   a. "Bodily injury" to a co-"employee" of the person driving the equipment; or

   b. "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

© ISO Properties, Inc., 2000

EXHIBIT A

4. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

   a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

   b. Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

   c. Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III – LIMITS OF INSURANCE**

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of

   a. Insureds,

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

   a. Medical expenses under Coverage **C**;

   b. Damages under Coverage **A**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard" and

   c. Damages under Coverage **B**.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to **2.** above, the Personal and Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under Coverage **A**; and

   b. Medical expenses under Coverage **C**

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

1. **Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

      **(1)** How, when and where the "occurrence" or offense took place;

      **(2)** The names and addresses of any injured persons and witnesses; and

      **(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

© ISO Properties, Inc., 2000

EXHIBIT A

b. If a claim is made or "suit" is brought against any insured, you must:

(1) Immediately record the specifics of the claim or "suit" and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

**b. Excess Insurance**

This insurance is excess over:

(1) Any of the other insurance, whether primary, excess, contingent or on any other basis:

(a) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(b) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

(c) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

(d) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section I – Coverage **A** – Bodily Injury And Property Damage Liability.

(2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

© ISO Properties, Inc., 2000

EXHIBIT A

When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(1)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(2)** The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice

## SECTION V – DEFINITIONS

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment"

 © ISO Properties, Inc , 2000

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

   a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

   b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in **a.** above; or

   c. All other parts of the world if the injury or damage arises out of:

      (1) Goods or products made or sold by you in the territory described in **a.** above;

      (2) The activities of a person whose home is in the territory described in **a.** above, but is away for a short time on your business; or

      (3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

   provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by:

   a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

   b. Your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

   a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   b. A sidetrack agreement;

   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. An elevator maintenance agreement;

   f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

   Paragraph **f.** does not include that part of any contract or agreement:

   (1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing.

   (2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

      (a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

      (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage, or

   (3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

© ISO Properties, Inc., 2000

EXHIBIT A

**10.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**11.** "Loading or unloading" means the handling of property:

**a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

**b.** While it is in or on an aircraft, watercraft or "auto"; or

**c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**12.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

**(1)** Power cranes, shovels, loaders, diggers or drills; or

**(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in **a.**, **b.**, **c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

**(2)** Cherry pickers and similar devices used to raise or lower workers.

**f.** Vehicles not described in **a.**, **b.**, **c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

**(a)** Snow removal;

**(b)** Road maintenance, but not construction or resurfacing; or

**(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

© ISO Properties, Inc., 2000

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b. Does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

(2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

(3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. "Your product":

a. Means:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) You;

(b) Others trading under your name; or

(c) A person or organization whose business or assets you have acquired; and

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

© ISO Properties, Inc., 2000

b. Includes

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

(2) The providing of or failure to provide warnings or instructions.

c. Does not include vending machines or other property rented to or located for the use of others but not sold.

22. "Your work":

a. Means:

(1) Work or operations performed by you or on your behalf; and

(2) Materials, parts or equipment furnished in connection with such work or operations.

b. Includes

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

(2) The providing of or failure to provide warnings or instructions.

POLICY NUMBER: HDO G20592709

**Arkansas**
**Notice to Policyholders**

## QUESTIONS ABOUT YOUR INSURANCE?

If You have questions about your insurance, need coverage information, or require assistance in resolving complaints, do not hesitate to contact either your insurance agent, or ACE USA, Customer Service Department, 436 Walnut Street, Philadelphia, PA 19106-3703, telephone 1-800-352-4462.

If you wish to contact the Arkansas Insurance Department, their address and toll-free number are:

Arkansas Insurance Department
1200 West Third Street
Little Rock, AR 72201-1904
1-800-282-9134

POLICY NUMBER: HDO G20592709

ACE USA

## Questions About Your Insurance?

Answers to questions about your insurance, coverage information, or assistance in resolving complaints can be obtained by calling ACE USA, Customer Support Service Department, at 1-800-352-4462.

ALL-5X45 (11/96) Ptd in U S A

EXHIBIT A

POLICY NUMBER: HDO G20592709

# QUESTIONS ABOUT YOUR INSURANCE?

Answers to questions about your insurance, coverage information, or assistance in resolving complaints can be obtained by contacting ACE USA Customer Support Service Department:

ACE USA
436 Walnut Street
Philadelphia, Pennsylvania 19106-3703

Telephone Number: 1-800-352-4462

**The Illinois Division of Insurance** may also be contacted for assistance. Insurance analysts are available to answer general questions by phone at our toll-free Consumer Assistance Hotline (866) 445-5364. **However, complaints must be submitted in writing.**

**How to file a complaint with the Insurance Department:**

Complaints may be submitted in the following ways.

- On-line at **www.ins.state.il.us** and by following the instructions posted.
- By email at: **consumer_complaints@ins.state.il.us**.
- By fax: (217) 558-2083
- By mail: 320 W. Washington St Springfield, IL 62767

POLICY NUMBER: HDO G20592709

ACE USA

# Indiana
# Notice To Policyholders

We are here to serve you.. ..

As our policyholder, your satisfaction is very important to us. If you have a question about your policy, if you need assistance with a problem, or if you have a claim, you should first contact your insurance agent.

If you are unable to reach your agent, or if you wish to contact us directly, please call our Customer Services Department at 1-800-352-4462. Should you have a valid claim, we fully expect to provide a fair settlement in a timely fashion.

Should you feel you are not being treated fairly with respect to a claim, you may also contact the Indiana Department of Insurance with your complaint.

To contact the Department, write or call:

Consumer Services Division
Indiana Department of Insurance
311 West Washington Street, Suite 300
Indianapolis, IN 46204-2787
317-232-2395 or 1-800-622-4461

POLICY NUMBER: HDO G20592709

# NOTICE TO ALL OKLAHOMA POLICYHOLDERS

**WARNING:** Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

You are insured by the Company listed on the Signature page which is named on the first page of the Declarations of this policy. It is an ACE USA company and has its principal office at 436 Walnut Street, PO Box 1000, Philadelphia, PA 19106-3703.

POLICY NUMBER: HDO G20592709

# NOTICE

## TO PENNSYLVANIA PROPERTY AND CASUALTY INSURANCE POLICYHOLDERS

A Pennsylvania law known as the "Insurance Consultation Services Exemption Act" has a provision that insurers, their agents, employees or service contractors are not subject to liability for damages from injury, death or loss occurring as a result of any act or omission by any person in the course of performing any survey, consultation, inspection, advisory or related service incident to an application for insurance, a new policy for insurance or an existing policy or insurance for the purpose of reducing the likelihood of injury, death or loss.

This provision shall not apply:

1) If the injury, loss or death occurred during the actual performance of consultation services and was caused by the negligence of the insurer, its agent, employees or service contractors which was a proximate cause of the injury, death or loss.

2) To any consultation services required to be performed under the provisions of a written service contract not incidental to a policy of insurance.

3) In any action against any insurer, its agents, employees or service contractors for damages caused by the act or omission of said insurer, its agents, employees or service contractors in which it is judicially determined that such act or omission constituted a crime, actual malice or gross negligence.

This provision of the "Insurance Consultation Services Exemption Act" applies to all insurance consultation services rendered incident to policies of property or casualty insurance. It does not apply to the immunities and protections provided by section 305, act of June 2, 1915 known as the "Pennsylvania Workmen's Compensation Act."

The provisions of the "Insurance Consultation Services Exemption Act" shall not be effective and applicable unless the insurer furnishes the insured with written notice of the provision of this act at the time the policy is issued or renewed. The Insurance Commissioner has approved the contents of this notice and the manner in which the notice is given.

POLICY NUMBER: HDO G20592709

ACE USA

# Information and Complaints

This information is being provided to you pursuant to the requirements of Articles 1.35, 1.35D and 21.71 of the Texas Insurance Code relating to our Toll Free information and complaint number.

**IMPORTANT NOTICE**

To obtain information or make a complaint:

You may call the Company's toll-free telephone number for information or to make a complaint at:

**1-(800) 352-4462**

You may also write to the Company at:

ACE USA
Customer Services
PO Box 1000
Philadelphia, PA 19106-3703

You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at:

1-(800) 252 3439

You may write the Texas Department of Insurance

P.O. Box 149104
AUSTIN, TX 78714-9104
FAX #(512) 475-1771

PREMIUM OR CLAIM DISPUTES: Should you have a dispute concerning your premium or about a claim you should contact your agent or the company first. If the dispute is not resolved you may contact the Texas Departrment of Insurance

ATTACH THIS NOTICE TO YOUR POLICY: This notice is for information only and does not become a part of condition of the attached document.

**AVISO IMPORTANTE**

Para obtener informacion o para someter una queja:

Usted puede llamar al numero de telefono gratis de la Compania para informacion o para someter una queja at:

**1 (800) 352-4462**

Usted tambien puede escribir a la Compania.

ACE USA
Customer Services
PO Box 1000
Philadelphia, PA 19106 3703

Puede communicarse con el Departmento de Seguros de Texas para obtener informacion acerca de companias, coberturas, derechos o quejas al:

1 (800) 252-3439

Puede escribir al Departamento de Seguros de Texas

P.O. Box 149104
AUSTIN, TX 78714-9104
FAX #(512) 475-1771

DISPUTAS SOBRE PRIMAS O RECLAMOS: Si tiene una disputa concerniente a su prima o un reclamo, debe comunicarse con el agente o la compania primero. Si no se resuelve la disputa puede entonces communicarse con el departmento de Seguros en Texas

UNA ESTE AVISO A SU POLIZA. Este aviso es solo para proposito de informacion y no se convierte en parte o condicion del documento adjunto.

POLICY NUMBER: HDO G20592709

ACE USA

**Notification To Texas Policyholders Commercial Automobile Liability, General Liability, Professional Liability, And Medical Professional Liability (Other Than Hospitals) Of Accident Prevention Services**

The ACE USA operating insurance companies provide policyholders with accident prevention services and programs to help them reduce the frequency and severity of accidents in their business. If you would like more information on the specific services and programs that ACE USA can provide, contact National Manager, Jurisdictional Services, ACE USA Risk Control Services, P.O. Box 1000, Philadelphia, PA 19105-1000 or call toll free at 1.866.357.3797.

POLICY NUMBER: HDO G20592709

ACE USA

# Important Information to Virginia Policyholders Regarding Your Insurance

In the event you need to contact someone about this insurance for any reason please contact your agent. If no agent was involved in the sale of this insurance, or if you have additional questions you may contact the insurance company issuing this insurance at the following address and telephone number

ACE USA Companies
Customer Support Service Department
436 Walnut Street
PO Box 1000
Philadelphia, PA 19106-3703
1-800-352-4462

If you have been unable to contact or obtain satisfaction from the company or the agent, you may contact the Virginia State Corporation Commission's Bureau of Insurance at:

1300 East Main Street
Tyler Building
Richmond, VA 23219
Consumer Hot Line: 1-800-552-7945
Bureau of Insurance. 804-371-9185

Written correspondence is preferable so that a record of your inquiry is maintained. When contacting your agent company or the Bureau of Insurance, have your policy number available.

POLICY NUMBER: HDO G20592709

ACE USA

# Wisconsin Notice to Policyholders

## KEEP THIS NOTICE WITH YOUR INSURANCE PAPERS

**PROBLEMS WITH YOUR INSURANCE?** – If you are having problems with your insurance company or agent, do not hestitate to contact the insurance company or agent to resolve your problem.

**ACE USA**
**Customer Support Service Department**
**436 Walnut Street**
**PO Box 1000**
**Philadelphia, PA 19106-3703**
**1-800-352-4462**

You can also contact the **OFFICE OF THE COMMISSIONER OF INSURANCE**, a state agency which enforces Wisconsin's insurance laws, and file a complaint. You can contact the **OFFICE OF THE COMMISSIONER OF INSURANCE** by contacting:

Office of the Commissioner of Insurance
Complaints Department
P.O. Box 7873
Madison, WI 53707-7873
1-800-236-8517
608-266-0103

POLICY NUMBER: HDO G20592709

ENDT. #1

## SCHEDULE OF NAMED INSUREDS

| Named Insured<br>Keystone Automotive Industries, Inc. | | | Endorsement Number<br>1 |
|---|---|---|---|
| Policy Symbol<br>HDO | Policy Number<br>G20592709 | Policy Period<br>12/31/2006 to 12/31/2007 | Effective Date of Endorsement<br>12/31/2006 |
| Issued By (Name of Insurance Company)<br>ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

The Named Insured shown in the Declarations is amended to read as follows:

Keystone Automotive Industries, Inc.

as well as any organization other than a partnership or joint venture, and over which you or your subsidiary currently maintain ownership or majority interest provided there is no other similar insurance available to that organization; and any other organization you newly acquire or form, other than a partnership or joint venture, and over which you maintain ownership or majority interest, provided:

a) there is no other similar insurance available to that organization; and

b) you notify us of such acquisition not later than 60 days after the end of the policy period.

As respects newly acquired or formed organizations

1. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization, and

2. Coverage B does not apply to "personal injury" or "advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past joint venture that is not shown as a Named Insured on this schedule.

Authorized Agent

EXHIBIT A

POLICY NUMBER: HDO G20592709

ENDT. #2

# COMPOSITE RATE ENDORSEMENT

| Named Insured Keystone Automotive Industries, Inc. | | | Endorsement Number 2 |
|---|---|---|---|
| Policy Symbol HDO | Policy Number G20592709 | Policy Period 12/31/2006 to 12/31/2007 | Effective Date of Endorsement 12/31/2006 |
| Issued By (Name of Insurance Company) ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**Commercial General Liability Coverage Form**

Paragraph a. of Condition 5., PREMIUM AUDIT, is replaced by the following:

a. The estimated premium for this Coverage Form is based on the exposures you told us you would have when this policy began.

b. We will compute the final premium by application of the composite rate(s) shown below to the actual exposure. The deposit premium will be credited against the final premium due and the first Named Insured will be billed for the balance, if any. If the deposit premium exceeds the final premium due, the first Named Insured will get a refund.

c. We will compute the final premium for all entities that are either acquired or divested by you during the policy term, provided that the entity has its own books and records and a separate federal identification number.

d. As used in this endorsement, WC Payroll shall include all payroll, including that for the standard exception classes as defined in the General Rules of the Commercial Lines Manual, and GL Payroll shall include all payroll except that for the standard exception classes as defined in the General Rules of the Commercial Lines Manual.

SCHEDULE

| Exposure Basis | Estimated Amount | Rate Per | Deposit Premium |
|---|---|---|---|
| Gross Sales | $752,500,000 | $ 0.1905 | $ 143,350 |

Authorized Agent

LD-5X70a (11/02) Ptd. in U.S.A.

EXHIBIT A

POLICY NUMBER: HDO G20592709

ENDT. #3

## DEDUCTIBLE ENDORSEMENT
(ALAE INCLUDED IN DEDUCTIBLE)

| Named Insured | Keystone Automotive Industries, Inc. | | Endorsement Number 3 |
|---|---|---|---|
| Policy Symbol HDO | Policy Number G20592709 | Policy Period 12/31/2006 TO 12/31/2007 | Effective Date of Endorsement 12/31/2006 |
| Issued By (Name of Insurance Company) ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

SCHEDULE

| | |
|---|---|
| Deductible Per Occurrence | $ 250,000 |
| Claims Service Organization | Sedgwick |

1. Our obligation to pay damages and "allocated loss adjustment expense" under this policy applies only to the amount of damages and "allocated loss adjustment expense" in excess of the Deductible amount stated in the Schedule above. The Limits of Insurance will be reduced by the amount of damages and medical expenses included in the Deductible..

   The Deductible Per Occurrence shall apply separately to:

   a. The sum of all damages and "allocated loss adjustment expense" under Coverage A and medical expenses under Coverage C arising out of any one "occurrence"; and

   b. The sum of all damages and "allocated loss adjustment expense" under Coverage B sustained by any one person or organization.

2. You and we mutually agree that the Claim Service Organization shown in the schedule will provide investigation, administration, adjustment, and settlement services, and will provide for the defense of all claims or "suits" arising under this policy. Accordingly, you agree with us that we shall not have any duty to defend any such "suit", nor to pay any "allocated loss adjustment expense" within the Deductible amounts with respect to any claim or "suit

3. You will pay all sums the insured becomes legally obligated to pay within the Deductible Per Occurrence.

4. We will have the right at our sole discretion:

   a. To pay any damages under this policy within the Deductible Per Occurrence should you fail to pay any final judgment against or settlement entered into by an insured

   b. To pay any amounts within the Deductible Per Occurrence to settle any claim or "suit".

   c. To assume the defense and control of any claim or "suit" seeking payment of damages under this policy that we believe will exceed the Deductible Per Occurrence, and

   d. To pay any "allocated loss adjustment expense" incurred by us associated with **a.**, **b.**, or **c.** above.

   You shall promptly reimburse us for any sums we may have paid under Item 4.

5. All terms, conditions, and limitations of this policy not inconsistent with this endorsement shall continue to apply.

EXHIBIT A

**DEFINITIONS**

When used in this endorsement:

"**Deductible Per Occurrence**" shall mean the amount of damages and "allocated loss adjustment expense" under this policy which you have a duty to pay and which arise from (i) any one "occurrence" to which insurance applies under this policy or (ii) "personal injury" or "advertising injury" (or "personal and advertising injury" if so defined in your policy) sustained by any one person or organization.

"**Allocated Loss Adjustment Expense**" shall mean any expenses, costs, and interest provided for under Section 1 - Coverages, Supplementary Payments – Coverages A and B of this policy, or any other expenses, costs, or interest incurred in connection with the investigation, administration, adjustment, settlement or defense of any claim or "suit" arising under this policy, which the Claim Service Organization shown in the Schedule, under its accounting practices, directly allocates to a particular claim, whether or not a payment indemnifying the claimant(s) is made. Such expenses include, but are not limited to, subrogation, all court costs, fees and expenses; fees for service of process; fees and expenses to attorneys for legal services; the cost of services of undercover operations and detectives; fees to obtain medical cost containment services; the cost of employing experts for the purpose of preparing maps, photographs, diagrams, and chemical or physical analysis, or for expert advice or opinion; the cost of obtaining copies of any public records; and the cost of obtaining depositions and court reporters or recorded statements. "Allocated loss adjustment expense" shall not include the salaries of our employees or our overhead or adjuster's fees.

Authorized Agent

POLICY NUMBER: HDO G20592709

ENDT. #4

## AMENDMENT OF CONDITIONS

| Named Insured<br>Keystone Automotive Industries, Inc. | | | Endorsement Number<br>4 |
|---|---|---|---|
| Policy Symbol<br>HDO | Policy Number<br>G20592709 | Policy Period<br>12/31/2006 to 12/31/2007 | Effective Date of Endorsement<br>12/31/2006 |
| Issued By (Name of Insurance Company)<br>ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

**THIS ENDORSEMENT CHANGES YOUR POLICY. PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following are added to paragraph 2. Duties In The Event of Occurrence, Claim or Suit of Section IV – Commercial General Liability Conditions:

e. It is agreed that knowledge of an occurrence by any of your agents, servants or employees shall not constitute knowledge by you unless one of your executive officers or anyone responsible for administering your insurance program has received such notice from the agent, servant or employee.

The following is added to paragraph 6. Representations of Section IV – Commercial General Liability Conditions:

d. Your failure to disclose all hazards existing as of the inception date of the policy shall not prejudice you with respect to the coverage afforded by this policy, provided such failure or omission is not intentional and you did not know about such hazards prior to the commencement of the policy period

Authorized Representative

Reprinted, in part, with permission of ISO Properties, Inc., 2001

POLICY NUMBER: HDO G20592709

ENDT. #5

## ADDITIONAL INSURED – EMPLOYEES
## FELLOW EMPLOYEES – BODILY INJURY ONLY

| Named Insured<br>Keystone Automotive Industries, Inc. | | | Endorsement Number<br>5 |
|---|---|---|---|
| Policy Symbol<br>HDO | Policy Number<br>G20592709 | Policy Period<br>12/31/2006 to 12/31/2007 | Effective Date of Endorsement<br>12/31/2006 |
| Issued By (Name of Insurance Company)<br>ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

**THIS ENDORSEMENT CHANGES YOUR POLICY. PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

Paragraph 2. a of Section II – "WHO IS AN INSURED" is replaced by the following:

a. Your "employees", other than your "executive officers", but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, no "employee" is an insured for:

(1) "Personal and Advertising injury":

a.) To you, to your partners or members (if you are a partnership or joint venture), or to a co-"employee" while in the course of his or her employment or while performing duties related to the conduct of your business;

b.) To the spouse, child, parent, brother or sister of the co-"employee" as a consequence of paragraph (1)(a) above;

c.) For which there is an obligation to share damages with or repay someone else who must pay damages because of the injury described in paragraphs (1)(a) or (b) above;.

(2) "Bodily injury" or "personal and advertising injury" arising out of his or her providing or failing to provide professional health care services.

(3) "Property damage" to property

(a) Owned, occupied or used by,

(b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your "employees" or, if you are a partnership or joint venture, by any partner or member.

Authorized Representative

Reprinted, in part, with permission of ISO Properties Inc., 2001

EXHIBIT A

POLICY NUMBER: HDO G20592709

ENDT. #6

## EMPLOYEE BENEFITS LIABILITY ENDORSEMENT

| Named Insured: Keystone Automotive Industries, Inc. | | | Endorsement Number: 6 |
|---|---|---|---|
| Policy Symbol: HDO | Policy Number: G20592709 | Policy Period: 12/31/2006 to 12/31/2007 | Effective Date of Endorsement: 12/31/2006 |
| Issued By (Name of Insurance Company): ACE American Insurance Company | | | |

Insert the policy number The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

THIS ENDORSEMENT PROVIDES CLAIMS-MADE COVERAGE.

Limits of Insurance

| | |
|---|---|
| Each Claim Limit | $ 1,000,000 |
| Aggregate Limit | $ 1,000,000 |
| Retroactive Date | 12/31/2003 |
| Deductible Amount | $ 250,000 |

(If no entry appears above, the information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

INSURING AGREEMENT

We will pay under this endorsement those sums that the insured becomes legally obligated to pay as damages because of a claim or "suit" brought by any employee, former employee, or their beneficiaries or legal representatives in connection with any negligent error, omission, or breach of duty in the "administration" of your "employee benefits" programs

We will have the right and the duty to defend any "suit" seeking those damages But:

The amount we will pay for damages is limited as described in the Schedule as Limits of Insurance.

We may investigate and settle any claim or "suit" at our discretion; and

Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under this endorsement.

This insurance applies to negligent errors, omissions, breaches of duty, or misstatements only if a claim for damages is first made against any insured during the policy period or any Extended Reporting Period we provide under the paragraph titled Extended Reporting Period

This insurance does not apply to negligent errors, omissions, breaches of duty, or misstatements which occurred before the Retroactive Date shown above, or which occur after the end of the policy period.

WHO IS AN INSURED

With respect to this endorsement, Section II – Who Is An Insured is modified to include employees only while authorized to act in the "administration" of your "employee benefits" programs

EXCLUSIONS

Insurance under this endorsement does not apply to any claim or "suit" arising out of:

any dishonest, fraudulent, criminal or malicious act;

any "Bodily Injury," "Personal Injury," "Advertising Injury," or "Property Damage";

any claim for failure of performance of contract by any Insurer;

EXHIBIT A

any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law;

any termination of employment;

any failure of stock to perform as represented by you;

any advice given by you to your "employees" to participate or not to participate in stock subscription plans; or

any actual or alleged error or omission or breach of duty, committed or alleged to have been committed by a trustee, in the discharge of fiduciary duties, obligations or responsibilities imposed by the Federal Employee Retirement Income Security Act of 1974 or Title X of the Consolidated Omnibus Budget Reconciliation Act of 1985 (Public Law 99-272) or Section 9319 of the Omnibus Budget Reconciliation Act of 1986 (Public Law 99-509) or any amendments to these Acts.

**LIMITS OF INSURANCE**

The Limits of Insurance shown in the Schedule of this endorsement and the rules below, fix the most we will pay regardless of the number of:

Insureds;

Claims made or "suits" brought; or

Persons or organizations making claims or bringing "suits".

The Aggregate Limit is the most we will pay for the sum of all damages under this endorsement.

The Each Claim Limit is the most we will pay for damages arising out of any one claim or "suit".

The Limits of Insurance apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**DEDUCTIBLE**

A Deductible in the amount in the Schedule of this endorsement applies to each claim covered by this endorsement. We will subtract this amount from the amount of damages payable for each claim.

**ADDITIONAL DEFINITIONS**

The following additional definitions are added to Section V – Definitions:

"Employee benefits" means group life insurance, group accident or health insurance, profit sharing plans, pension plans, "employee" stock subscription plans, "employee" travel, vacation, or savings plans, workers compensation, unemployment insurance, social security and disability benefits insurance, and any other similar benefit program.

"Administration" means any of the following acts that you do or authorize a person to do:

Counseling "employees", other than giving legal advice, on "employee benefits" programs;

Interpreting your "employee benefits" programs;

Handling records for your "employee benefits" programs; and

Effecting enrollment, termination or cancellation of "employees" under your "employee benefits" programs.

"Administration" does not include:

The failure of performance of any contract by any insurer;

The failure of any investment plan to perform as represented by an insured;

The inability of "employee benefit" programs to meet their obligation due to insolvency.

EXTENDED REPORTING PERIOD

1. We will automatically provide an Extended Reporting Period as described in paragraph 2. and 3. below if:

   a. This endorsement is cancelled or not renewed; or

   b. We renew or replace this endorsement with insurance that:

      (1) Has a Retroactive Date later than the date shown on this endorsement; or

      (2) Does not apply to errors, omissions, breaches of duty, or misstatements on a claims-made basis.

2. The Extended Reporting Period does not extend the policy period or change the scope of coverage provided. It applies only to claims for errors, omissions, breaches of duty, or misstatements that occur before the end of the policy period but not before the Retroactive Date shown on this endorsement.

   Once in effect, the Extended Reporting Period may not be cancelled.

3. The Extended Reporting Period is automatically provided without additional charge. This period starts with the end of the policy period and lasts for Five years.

   The Extended Reporting Period does not apply to claims that are covered under any subsequent insurance you purchase, or that would be covered but for exhaustion of the amount of insurance applicable to such claims.

4. The Extended Reporting Period does not reinstate or increase the Limits of Insurance.

Authorized Agent

POLICY NUMBER: HDO G20592709

ENDT. #7

## EXCLUSION – ASBESTOS

| Named Insured Keystone Automotive Industries, Inc. | | | Endorsement Number 7 |
|---|---|---|---|
| Policy Symbol HDO | Policy Number G20592709 | Policy Period 12/31/2006 to 12/31/2007 | Eff. Date of Endorsement 12/31/2006 |
| Issued By (Name of Insurance Company) ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM
FARM COVERAGE FORM
LIQUOR LIABILITY COVERAGE FORM
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE FORM
POLLUTION LIABILITY COVERAGE FORM
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM
RAILROAD PROTECTIVE LIABILITY COVERAGE FORM
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY - NEW YORK

This insurance does not apply to any loss, demand, claim or "suit" arising out of or related in any way to asbestos or asbestos-containing materials.

Authorized Agent

EXHIBIT A

POLICY NUMBER: HDO G20592709

ENDT. #8

## EXCLUSION - LEAD

| Named Insured | Keystone Automotive Industries, Inc. | | Endorsement Number 8 |
|---|---|---|---|
| Policy Symbol HDO | Policy Number G20592709 | Policy Period 12/31/2006 to 12/31/2007 | Effective Date of Endorsement 12/31/2006 |
| Issued By (Name of Insurance Company) ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

COMMERCIAL GENERAL LIABILITY FORM
FARM COVERAGE FORM
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE FORM
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM
RAILROAD PROTECTIVE LIABILITY COVERAGE FORM
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY – NEW YORK

THE COMBINE POLICY – SECTION II
COMMERCIAL FARM POLICY – SECTION II
FARMERS PACKAGE POLICY – SECTION II

---

This insurance does not apply to, and we shall have no duty of any kind with respect to, any injury, damage, expense, cost, loss, liability or legal obligation arising out of or allegedly arising out of or in any way related to the toxic properties of lead or lead-containing products, materials or substances.

This exclusion applies to all forms of lead, including but not limited to solid, liquid, vapor and fumes.

This exclusion applies, but is not limited, to any injury, damage, expense, cost, loss, liability or legal obligation to test for, monitor, abate, remove, or take any other remedial action with respect to lead or lead-containing products, materials or substances.

The addition of this endorsement does not imply that other policy provisions, including but not limited to any pollution exclusion, do not also exclude coverage for lead-related injury, damage, expense, cost, loss, liability or legal obligation

Authorized Agent

POLICY NUMBER: HDO G20592709

ENDT. #9

## FELLOW EMPLOYEE COVERAGE

| Named Insured | Keystone Automotive Industries, Inc. | | Endorsement Number 9 |
|---|---|---|---|
| Policy Symbol HDO | Policy Number G20592709 | Policy Period 12/31/2006 to 12/31/2007 | Effective Date of Endorsement 12/31/2006 |
| Issued By (Name of Insurance Company) ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

**Commercial General Liability Coverage Form**

Paragraphs (a), (b) and (c) of 2.a (1) of Section II – "WHO IS AN INSURED" are deleted.

Coverage under this endorsement is excess over any other insurance, whether primary, excess, contingent or on any other basis, unless written specifically to apply in excess of this policy.

Authorized Agent

Reprinted in part with permission of Insurance Services Office, Inc., 1993

EXHIBIT A

POLICY NUMBER: HDO G20592709

ENDT. #10

## PROFESSIONAL LIABILITY EXCLUSION ENDORSEMENT

| Named Insured | Keystone Automotive Industries, Inc. | | Endorsement Number 10 |
|---|---|---|---|
| Policy Symbol HDO | Policy Number G20592709 | Policy Period 12/31/2006 to 12/31/2007 | Effective Date of Endorsement 12/31/2006 |
| Issued By (Name of Insurance Company) ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

This insurance does not apply to any damages arising out of any professional services, including, but not limited to,

A. The rendering or failure to render:

1 Medical, surgical, dental, x-ray, nursing, or any other health service or treatment, or the related furnishing of food or beverages;

2. Any cosmetic, ear piercing, tonsorial, massage, physiotherapy, chiropody, hearing aid, optical or optometrical service or treatment;

3. Any legal advice or legal service;

4 Any service or advice relating to physical fitness, including services or advice in connection with diet, cardio-vascular fitness, body building or physical training program; or

5 Any accounting, architectural, or engineering service

B The furnishing or dispensing of drugs or medical, dental or surgical supplies or appliances; or

C The handling or treatment of dead bodies and remains, including autopsies, organ donation or other procedures

Authorized Agent

LD-0846 (Ed 1/89) Ptd In U S A

EXHIBIT A

POLICY NUMBER: HDO G20592709

ENDT. #11

## ABSOLUTE POLLUTION EXCLUSION

| Named Insured | Keystone Automotive Industries, Inc. | | Endorsement Number 11 |
|---|---|---|---|
| Policy Symbol HDO | Policy Number G20592709 | Policy Period 12/31/2006 to 12/31/2007 | Effective Date of Endorsement 12/31/2006 |
| Issued By (Name of Insurance Company) ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**This endorsement replaced any pollution exclusion**

**and amends all insurance provided under the following:**

COMMERCIAL GENERAL LIABILITY FORM
FARM COVERAGE FORM
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE FORM
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM
RAILROAD PROTECTIVE LIABILITY COVERAGE FORM
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY – NEW YORK

This insurance does not apply to any injury, damage, expense, cost, loss, liability or legal obligation arising out of or in any way related to pollution, however caused.

Pollution includes the actual, alleged or potential presence in or introduction into the environment of any substance if such substance has, or is alleged to have, the effect of making the environment impure, harmful, or dangerous. Environment includes any air, land, structure or the air therein, watercourse or water, including underground water.

We shall have no duty to defend any suit arising out of or in any way related to pollution.

Authorized Agent

POLICY NUMBER: HDO G20592709

ENDT. #12

COMMERCIAL GENERAL LIABILITY

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED – CONTROLLING INTEREST

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

SCHEDULE

**Name of Person or Organization:**
Per schedule on file with company

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

1. WHO IS AN INSURED (Section II) is amended to include as an insured the person(s) or organization(s) shown in the Schedule but only with respect to liability arising out of
   a. Their financial control of you; or
   b. Premises they own, maintain or control while you lease or occupy these premises.
2. This insurance does not apply to structural alterations, new construction and demolition operations performed by or for that person or organization.

Copyright, Insurance Services Office, Inc., 1984

EXHIBIT A

POLICY NUMBER: HDO G20592709

ENDT. #13

COMMERCIAL GENERAL LIABILITY
CG 20 26 07 04

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED – DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SCHEDULE

| Name Of Additional Insured Person(s) Or Organization(s) |
|---|
| Any person or organization whom you have agreed to include as additional insured under a written contract, provided such contract was executed prior to the date of loss. |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

Section II – Who Is An Insured is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

A. In the performance of your ongoing operations; or

B. In connection with your premises owned by or rented to you.

© ISO Properties, Inc., 2004

EXHIBIT A

POLICY NUMBER: HDO G20592709

ENDT. #14

COMMERCIAL GENERAL LIABILITY
CG 20 28 07 04

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED – LESSOR OF LEASED EQUIPMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

SCHEDULE

| Name Of Additional Insured Person(s) Or Organization(s) |
| --- |
| Per Schedule on file with Company. |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

A. **Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your maintenance, operation or use of equipment leased to you by such person(s) or organization(s).

B. With respect to the insurance afforded to these additional insureds, this insurance does not apply to any "occurrence" which takes place after the equipment lease expires.

 © ISO Properties, Inc., 2004 

EXHIBIT A

POLICY NUMBER: HDO G20592709

ENDT. #15

COMMERCIAL GENERAL LIABILITY
CG 21 47 07 98

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

**(1)** A person arising out of any:

**(a)** Refusal to employ that person;

**(b)** Termination of that person's employment; or

**(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

B. The following exclusion is added to paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal injury" to:

**(1)** A person arising out of any:

**(a)** Refusal to employ that person;

**(b)** Termination of that person's employment; or

**(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person, or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal injury" to that person at whom any of the employment-related practices described in paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury

Copyright, Insurance Services Office, Inc., 1997

EXHIBIT A

POLICY NUMBER: HDO G20592709

ENDT. #16

COMMERCIAL GENERAL LIABILITY
CG 21 70 11 02

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

With respect to any one or more "certified acts of terrorism", we will not pay any amounts for which we are not responsible under the terms of the federal Terrorism Risk Insurance Act of 2002 (including subsequent acts of Congress pursuant to the Act) due to the application of any clause which results in a cap on our liability for payments for terrorism losses.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002. The federal Terrorism Risk Insurance Act of 2002 sets forth the following criteria for a "certified act of terrorism":

1. The act resulted in aggregate losses in excess of $5 million; and
2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

© ISO Properties, Inc., 2002

EXHIBIT A

POLICY NUMBER: HDO G20592709

ENDT. #17

COMMERCIAL GENERAL LIABILITY
CG 24 04 10 93

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SCHEDULE

**Name of Person or Organization:**

Any person or organization against whom you have agreed to waive your right of recovery in a written contract, provided such contract was executed prior to the date of loss.

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

The TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US Condition (Section **IV** -- COMMERCIAL GENERAL LIABILITY CONDITIONS) is amended by the addition of the following:

We waive any right of recovery we may have against the person or organization shown in the Schedule above because of payments we make for injury or damage arising out of your ongoing operations or "your work" done under a contract with that person or organization and included in the "products-completed operations hazard". This waiver applies only to the person or organization shown in the Schedule above.

Copyright, Insurance Services Office, Inc., 1992

EXHIBIT A

POLICY NUMBER: HDO G20592709

ENDT. #18

# POLICYHOLDER DISCLOSURE NOTICE OF TERRORISM INSURANCE COVERAGE

| Named Insured<br>Keystone Automotive Industries, Inc. | | | Endorsement Number<br>18 |
|---|---|---|---|
| Policy Symbol<br>HDO | Policy Number<br>G20592709 | Policy Period<br>12/31/2006 to 12/31/2007 | Effective Date of Endorsement<br>12/31/2006 |
| Issued By (Name of Insurance Company)<br>ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

You should be aware that under the Terrorism Risk Insurance Act (the Act), any losses resulting from certified acts of terrorism under your existing coverage may be partially reimbursed by the United States Government under a formula established by federal law (applicability is subject to the terms and conditions of each individual policy). The Act was specifically designed to address the ability of businesses and individuals to obtain property and casualty insurance for terrorism and to protect consumers by addressing market disruptions and ensure the continued availability of terrorism coverage.

Under the terms of the Act, you may now have the right to purchase insurance coverage for losses resulting from acts of terrorism. As defined in Section 102(1) of the Act: the term "act of terrorism" means any act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State, and the Attorney General of the United States to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property; or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of an air carrier or vessel or the premises of a United States mission; and to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

Responsibility for Compensation under the Act is shared between insurance companies covered by the Act and the United States Government. Under the formula set forth in the Act, the United States Government pays 90% (85% in 2007) of covered terrorism losses exceeding the statutorily established deductible, which is paid by the insurance company providing the coverage.

We are providing you with the terrorism coverage required by the Act. The premium for the coverage is set forth below.

Terrorism Risk Insurance Act premium: $ 5,017

Authorized Agent

EXHIBIT A

POLICY NUMBER: HDO G20592709

ENDT. #19

## NOTIFICATION OF PREMIUM ADJUSTMENT

| Named Insured<br>Keystone Automotive Industries, Inc. | | | Endorsement Number<br>19 |
|---|---|---|---|
| Policy Symbol<br>HDO | Policy Number<br>G20592709 | Policy Period<br>12/31/2006 to 12/31/2007 | Effective Date of Endorsement<br>12/31/2006 |
| Issued By (Name of Insurance Company)<br>ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

CONTRACTUAL INDEMNITY COVERAGE PART OCCURRENCE CORRIDOR
CONTRACTUAL INDEMNITY COVERAGE PART SLIDING ATTACHMENT
CONTRACTUAL INDEMNITY COVERAGE PART DEDUCTIBLE REIMBURSEMENT
COMMERCIAL GENERAL LIABILITY COVERAGE PART
EXCESS COMMERCIAL GENERAL LIABILITY COVERAGE FORM
BUSINESS AUTO COVERAGE PART
EXCESS COMMERCIAL AUTOMOBILE COVERAGE PART
TRUCKERS COVERAGE PART
EXCESS TRUCKERS COVERAGE PART
MOTOR CARRIER COVERAGE PART
GARAGE COVERAGE PART

For the states and lines of business in which regulatory approval has been granted for the NCCI Large Risk Alternative Rating Option, the ISO Large Risk Alternative Rating Option, or the independently filed ACE Large Risk Rating Plan, the premiums for this policy will be adjusted in accordance with the Notice of Election, signed by you.

Authorized Agent

EXHIBIT A

POLICY NUMBER: HDO G20592709

ENDT. #20

COMMERCIAL GENERAL LIABILITY
CG 00 67 03 05

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION – VIOLATION OF STATUTES THAT GOVERN E-MAILS, FAX, PHONE CALLS OR OTHER METHODS OF SENDING MATERIAL OR INFORMATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**DISTRIBUTION OF MATERIAL IN VIOLATION OF STATUTES**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

a. The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

b. The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

c. Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

B. The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**DISTRIBUTION OF MATERIAL IN VIOLATION OF STATUTES**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

a. The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

b. The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

c. Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

© ISO Properties, Inc., 2004

EXHIBIT A

POLICY NUMBER: HDO G20592709

ENDT. #21

IL 00 21 07 02

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT

(Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

   **A.** Under any Liability Coverage, to "bodily injury" or "property damage":

   **(1)** With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

   **(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   **B.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   **C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

   **(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

   **(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

   **(3)** The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

© ISO Properties, Inc., 2001

EXHIBIT A

2. As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material", "Special nuclear material" or "by-product material".

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

© ISO Properties, Inc., 2001

EXHIBIT A

POLICY NUMBER: HDO G20592709

ENDT. #22

COMMERCIAL GENERAL LIABILITY
CG 00 62 12 02

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# WAR LIABILITY EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. Exclusion **i.** under Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war; or

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**WAR**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

a. War, including undeclared or civil war; or

b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

C. Exclusion **h.** under Paragraph **2., Exclusions** of **Section I – Coverage C – Medical Payments** does not apply. Medical payments due to war are now subject to Exclusion **g.** of Paragraph **2., Exclusions** of **Section I – Coverage C – Medical Payments** since "bodily injury" arising out of war is now excluded under Coverage **A.**

© ISO Properties, Inc., 2002

EXHIBIT A

POLICY NUMBER: HDO G20592709

ENDT. #23
COMMERCIAL GENERAL LIABILITY

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ARKANSAS CHANGES – MULTI-YEAR POLICIES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

The following is added to the Common Policy Conditions:

**G. MULTI-YEAR POLICIES**

We may issue this policy for a term in excess of twelve months with the premium adjusted on an annual basis in accordance with our rates and rules.

Copyright, Insurance Services Office, Inc., 1990

EXHIBIT A

POLICY NUMBER: HDO G20592709

ENDT. #24

IL 02 31 07 02

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ARKANSAS CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART

A. Paragraph 5. of the **Cancellation** Common Policy Condition is replaced by the following:

5.a. If this policy is cancelled, we will send the first Named Insured any premium refund due.

b. We will refund the pro rata unearned premium if the policy is:

(1) Cancelled by us or at our request;

(2) Cancelled but rewritten with us or in our company group;

(3) Cancelled because you no longer have an insurable interest in the property or business operation that is the subject of this insurance; or

(4) Cancelled after the first year of a prepaid policy that was written for a term of more than one year.

c. If the policy is cancelled at the request of the first Named Insured, other than a cancellation described in **b.(2)**, **(3)** or **(4)** above, we will refund 90% of the pro rata unearned premium. However, the refund will be less than 90% of the pro rata unearned premium if the refund of such amount would reduce the premium retained by us to an amount less than the minimum premium for this policy.

d. The cancellation will be effective even if we have not made or offered a refund.

e. If the first Named Insured cancels the policy, we will retain no less than $100 of the premium, subject to the following:

(1) We will retain no less than $250 of the premium for the Boiler And Machinery Coverage Part.

(2) We will retain the premium developed for any annual policy period for the General Liability Classifications, if any, shown in the Declarations.

(3) If the Commercial Auto Coverage Part covers only snowmobiles or golfmobiles, we will retain $100 or the premium shown in the Declarations, whichever is greater.

© ISO Properties, Inc., 2001

EXHIBIT A

(4) If the Commercial Auto Coverage Part covers an "auto" with a mounted amusement device, we will retain the premium shown in the Declarations for the amusement device and not less than $100 for the auto to which it is attached.

B. The following is added to the **Cancellation** Common Policy Condition:

7. **Cancellation Of Policies In Effect More Than 60 Days**

a. If this policy has been in effect more than 60 days or is a renewal policy, we may cancel only for one or more of the following reasons:

(1) Nonpayment of premium;

(2) Fraud or material misrepresentation made by you or with your knowledge in obtaining the policy, continuing the policy or in presenting a claim under the policy;

(3) The occurrence of a material change in the risk which substantially increases any hazard insured against after policy issuance;

(4) Violation of any local fire, health, safety, building or construction regulation or ordinance with respect to any insured property or its occupancy which substantially increases any hazard insured against under the policy;

(5) Nonpayment of membership dues in those cases where our by-laws, agreements or other legal instruments require payment as a condition of the issuance and maintenance of the policy; or

(6) A material violation of a material provision of the policy.

b. Subject to Paragraph 7.c., if we cancel for:

(1) Nonpayment of premium, we will mail or deliver written notice of cancellation, stating the reason for cancellation, to the first Named Insured and any lienholder or loss payee named in the policy at least 10 days before the effective date of cancellation.

(2) Any other reason, we will mail or deliver notice of cancellation to the first Named Insured and any lienholder or loss payee named in the policy at least 20 days before the effective date of cancellation.

c. The following applies to the Farm Umbrella Liability Policy, Commercial Liability Umbrella Coverage Part and the Commercial Automobile Coverage Part:

(1) If we cancel for nonpayment of premium, we will mail or deliver written notice of cancellation, stating the reason for cancellation, to the first Named Insured and any lienholder or loss payee named in the policy, and any lessee of whom we have received notification prior to the loss, at least 10 days before the effective date of cancellation;

(2) If we cancel for any other reason, we will mail or deliver notice of cancellation to the first Named Insured and any lienholder or loss payee named in the policy, and any lessee of whom we have received notification prior to the loss, at least 20 days before the effective date of cancellation.

C. The following Condition is added and supersedes any other provision to the contrary:

**NONRENEWAL**

1. If we decide not to renew this policy, we will mail to the first Named Insured shown in the Declarations written notice of nonrenewal at least 60 days before:

a. Its expiration date; or

b. Its anniversary date, if it is a policy written for a term of more than one year and with no fixed expiration date.

However, we are not required to send this notice if nonrenewal is due to your failure to pay any premium required for renewal.

2. We will mail our notice to the first Named Insured's mailing address last known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

 © ISO Properties, Inc., 2001 

EXHIBIT A

POLICY NUMBER: HDO G20592709

ENDT. #25

IL 02 58 07 02

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ARIZONA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART

**A.** The following is added to the **Cancellation** Common Policy Condition (and applies except in situations where **B.**, below, applies):

7. **Cancellation Of Policies In Effect For 60 Days Or More**

   If this policy has been in effect for 60 days or more, or if this policy is a renewal of a policy we issued, we may cancel this policy only for one or more of the following reasons:

   a. Nonpayment of premium;

   b. Your conviction of a crime arising out of acts increasing the hazard insured against;

   c. Acts or omissions by you or your representative constituting fraud or material misrepresentation in the procurement of this policy, in continuing this policy or in presenting a claim under this policy;

   d. Substantial change in the risk assumed, except to the extent that we should have reasonably foreseen the change or contemplated the risk in writing the contract;

   e. Substantial breach of contractual duties or conditions;

   f. Loss of reinsurance applicable to the risk insured against resulting from termination of treaty or facultative reinsurance initiated by our reinsurer or reinsurers;

   g. Determination by the Director of Insurance that the continuation of the policy would place us in violation of the insurance laws of this state or would jeopardize our solvency; or

   h. Acts or omissions by you or your representative which materially increase the hazard insured against.

   If we cancel this policy based on one or more of the above reasons, we will mail by certified mail to the first Named Insured, and mail to the agent, if any, written notice of cancellation stating the reasons for cancellation. We will mail this notice to the last mailing addresses known to us, at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium.

   b. 60 days before the effective date of cancellation if we cancel for any of the other reasons.

© ISO Properties, Inc., 2001

EXHIBIT A

**B.** If the Commercial Property Coverage Part, Capital Assets Program (Output Policy) Coverage Part or the Farm Property – Farm Dwellings, Appurtenant Structures And Household Personal Property Coverage Form provides coverage for:

1. Real property which is used predominantly for residential purposes and consists of one through four dwelling units; and/or
2. Personal property (except business or farm personal property) of a person residing in such real property;

the following provisions apply (instead of those provided in Item **A.** above) with respect to cancellation of such coverage:

If this policy has been in effect for 60 days or more, or is a renewal of a policy we issued, we may cancel only for one or more of the following reasons:

a. Nonpayment of premium;

b. Your conviction of a crime arising out of acts increasing the hazard insured against;

c. Acts or omissions by you or your representative constituting fraud or material misrepresentation in obtaining the policy, continuing the policy, or presenting a claim under the policy;

d. Discovery of grossly negligent acts or omissions by you substantially increasing any of the hazards insured against;

e. Substantial change in the risk assumed by us, since the policy was issued, except to the extent that we should reasonably have foreseen the change or contemplated the risk in writing the contract;

f. A determination by the Director of Insurance that the continuation of the policy would place us in violation of the insurance laws of this state; or

g. Your failure to take reasonable steps to eliminate or reduce any conditions in or on the insured premises which contributed to a loss in the past or will increase the probability of future losses.

If we cancel this policy based on one or more of these reasons, we will mail written notice of cancellation, stating the reason(s) for cancellation, to the first Named Insured. We will mail this notice to the last mailing address known to us, at least:

(1) 10 days before the effective date of cancellation if we cancel for nonpayment of premium.

(2) 30 days before the effective date of cancellation, if we cancel for any of the other reasons.

**C.** The following is added and supersedes any provision to the contrary (and applies except in situations where **D.**, below, applies):

**NONRENEWAL**

1. If we elect not to renew this policy, we will mail by certified mail to the first Named Insured, and mail to the agent, if any, written notice of nonrenewal. We will mail this notice to the last mailing addresses known to us at least 60 days prior to the expiration of this policy.
2. If notice is mailed, proof of mailing will be sufficient proof of notice.
3. If either one of the following occurs, we are not required to provide written notice of nonrenewal:

   a. We or a company within the same insurance group has offered to issue a renewal policy; or

   b. You have obtained replacement coverage or agreed in writing to do so.

**D.** If the Commercial Property Coverage Part, Capital Assets Program (Output Policy) Coverage Part or the Farm Property – Farm Dwellings, Appurtenant Structures And Household Personal Property Coverage Form provides coverage for:

1. Real property which is used predominantly for residential purposes and consists of one through four dwelling units; and/or
2. Personal property (except business or farm personal property) of a person residing in such real property;

the following provisions apply (instead of those provided in Item **C.** above) with respect to nonrenewal of such coverage:

1. If we elect not to renew, we will mail written notice of nonrenewal, to the first Named Insured. We will mail this notice to the last mailing address known to us, at least 30 days before the end of the policy period. Proof of mailing will be sufficient proof of notice.
2. If either one of the following occurs, we are not required to provide notice of nonrenewal:

   a. You have agreed to nonrenewal; or

   b. You have accepted replacement coverage.
3. If our nonrenewal is based on the condition of the premises, you will be given 30 days' notice to remedy the identified conditions. If the identified conditions are remedied, coverage will be renewed. If the identified conditions are not remedied to our satisfaction, you will be given an additional 30 days, upon payment of premium, to correct the defective condition.

 © ISO Properties, Inc., 2001 

EXHIBIT A

E. The following Condition is added:

**RENEWAL**

1. If we elect to renew this policy and the renewal is subject to any of the following:

   a. Increase in premium;

   b. Change in deductible;

   c. Reduction in limits of insurance; or

   d. Substantial reduction in coverage;

   we will mail or deliver written notice of the change(s) to the first Named Insured, at the last mailing address known to us, at least 60 days before the anniversary or expiration date of the policy.

2. If renewal is subject to any condition described in **1.a.** through **1.d.** above, and we fail to provide notice 60 days before the anniversary or expiration date of this policy, the following procedures apply:

   a. The present policy will remain in effect until the earlier of the following:

      (i) 60 days after the date of mailing or delivery of the notice; or

      (ii) The effective date of replacement coverage obtained by the first Named Insured.

   b. If the first Named Insured elects not to renew, any earned premium for the period of extension of the terminated policy will be calculated pro rata at the lower of the following rates:

      (i) The rates applicable to the terminated policy; or

      (ii) The rates presently in effect.

   c. If the first Named Insured accepts the renewal, the premium increase, if any, and other changes are effective the day following this policy's anniversary or expiration date.

 © ISO Properties, Inc., 2001 

EXHIBIT A

POLICY NUMBER: HDO G20592709

ENDT. #26

COMMERCIAL GENERAL LIABILITY
CG 32 34 01 05

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# CALIFORNIA CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

The term "spouse" is replaced by the following:

Spouse or registered domestic partner under California law.

© ISO Properties, Inc., 2004

EXHIBIT A

POLICY NUMBER: HDO G20592709

ENDT. #27

IL 02 70 11 04

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# CALIFORNIA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART

**A.** Paragraphs **2.** and **3.** of the **Cancellation** Common Policy Condition are replaced by the following:

**2. All Policies In Effect For 60 Days Or Less**

If this policy has been in effect for 60 days or less, and is not a renewal of a policy we have previously issued, we may cancel this policy by mailing or delivering to the first Named Insured at the mailing address shown in the policy and to the producer of record, advance written notice of cancellation, stating the reason for cancellation, at least

**a.** 10 days before the effective date of cancellation if we cancel for:

**(1)** Nonpayment of premium; or

**(2)** Discovery of fraud by:

**(a)** Any insured or his or her representative in obtaining this insurance; or

**(b)** You or your representative in pursuing a claim under this policy.

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**3. All Policies In Effect For More Than 60 Days**

**a.** If this policy has been in effect for more than 60 days, or is a renewal of a policy we issued, we may cancel this policy only upon the occurrence, after the effective date of the policy, of one or more of the following:

**(1)** Nonpayment of premium, including payment due on a prior policy we issued and due during the current policy term covering the same risks.

**(2)** Discovery of fraud or material misrepresentation by:

**(a)** Any insured or his or her representative in obtaining this insurance; or

**(b)** You or your representative in pursuing a claim under this policy.

**(3)** A judgment by a court or an administrative tribunal that you have violated a California or Federal law, having as one of its necessary elements an act which materially increases any of the risks insured against.

© ISO Properties, Inc., 2004

EXHIBIT A

**(4)** Discovery of willful or grossly negligent acts or omissions, or of any violations of state laws or regulations establishing safety standards, by you or your representative, which materially increase any of the risks insured against.

**(5)** Failure by you or your representative to implement reasonable loss control requirements, agreed to by you as a condition of policy issuance, or which were conditions precedent to our use of a particular rate or rating plan, if that failure materially increases any of the risks insured against.

**(6)** A determination by the Commissioner of Insurance that the:

**(a)** Loss of, or changes in, our reinsurance covering all or part of the risk would threaten our financial integrity or solvency; or

**(b)** Continuation of the policy coverage would:

**(i)** Place us in violation of California law or the laws of the state where we are domiciled; or

**(ii)** Threaten our solvency.

**(7)** A change by you or your representative in the activities or property of the commercial or industrial enterprise, which results in a materially added, increased or changed risk, unless the added, increased or changed risk is included in the policy.

**b.** We will mail or deliver advance written notice of cancellation, stating the reason for cancellation, to the first Named Insured, at the mailing address shown in the policy, and to the producer of record, at least:

**(1)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium or discovery of fraud; or

**(2)** 30 days before the effective date of cancellation if we cancel for any other reason listed in Paragraph **3.a.**

**B.** The following provision is added to the **Cancellation** Common Policy Condition:

**7. Residential Property**

This provision applies to coverage on real property which is used predominantly for residential purposes and consisting of not more than four dwelling units, and to coverage on tenants' household personal property in a residential unit, if such coverage is written under one of the following:

Commercial Property Coverage Part

Farm Coverage Part – Farm Property – Farm Dwellings, Appurtenant Structures And Household Personal Property Coverage Form

**a.** If such coverage has been in effect for 60 days or less, and is not a renewal of coverage we previously issued, we may cancel this coverage for any reason, except as provided in **b.** and **c.** below.

**b.** We may not cancel this policy solely because the first Named Insured has:

**(1)** Accepted an offer of earthquake coverage; or

**(2)** Cancelled or did not renew a policy issued by the California Earthquake Authority (CEA) that included an earthquake policy premium surcharge.

However, we shall cancel this policy if the first Named Insured has accepted a new or renewal policy issued by the CEA that includes an earthquake policy premium surcharge but fails to pay the earthquake policy premium surcharge authorized by the CEA.

**c.** We may not cancel such coverage solely because corrosive soil conditions exist on the premises. This Restriction **(c.)** applies only if coverage is subject to one of the following, which exclude loss or damage caused by or resulting from corrosive soil conditions:

**(1)** Capital Assets Program Coverage Form (Output Policy);

**(2)** Commercial Property Coverage Part – Causes Of Loss – Special Form; or

**(3)** Farm Coverage Part – Causes Of Loss Form – Farm Property, Paragraph **D.** Covered Causes Of Loss – Special.

© ISO Properties, Inc., 2004
EXHIBIT A

C. The following is added and supersedes any provisions to the contrary:

**NONRENEWAL**

1. Subject to the provisions of Paragraphs **C.2.** and **C.3.** below, if we elect not to renew this policy, we will mail or deliver written notice stating the reason for nonrenewal to the first Named Insured shown in the Declarations and to the producer of record, at least 60 days, but not more than 120 days, before the expiration or anniversary date.

   We will mail or deliver our notice to the first Named Insured, and to the producer of record, at the mailing address shown in the policy.

2. **Residential Property**

   This provision applies to coverage on real property used predominantly for residential purposes and consisting of not more than four dwelling units, and to coverage on tenants' household property contained in a residential unit, if such coverage is written under one of the following:

   Capital Assets Program (Output Policy) Coverage Part

   Commercial Property Coverage Part

   Farm Coverage Part – Farm Property – Farm Dwellings, Appurtenant Structures And Household Personal Property Coverage Form

   a. We may elect not to renew such coverage for any reason, except as provided in **b., c.** and **d.** below:

   b. We will not refuse to renew such coverage solely because the first Named Insured has accepted an offer of earthquake coverage

      However, the following applies only to insurers who are associate participating insurers as established by Cal. Ins. Code Section 10089.16. We may elect not to renew such coverage after the first Named Insured has accepted an offer of earthquake coverage, if one or more of the following reasons applies:

      **(1)** The nonrenewal is based on sound underwriting principles that relate to the coverages provided by this policy and that are consistent with the approved rating plan and related documents filed with the Department of Insurance as required by existing law;

      **(2)** The Commissioner of Insurance finds that the exposure to potential losses will threaten our solvency or place us in a hazardous condition. A hazardous condition includes, but is not limited to, a condition in which we make claims payments for losses resulting from an earthquake that occurred within the preceding two years and that required a reduction in policyholder surplus of at least 25% for payment of those claims; or

      **(3)** We have:

         **(a)** Lost or experienced a substantial reduction in the availability or scope of reinsurance coverage; or

         **(b)** Experienced a substantial increase in the premium charged for reinsurance coverage of our residential property insurance policies; and

      the Commissioner has approved a plan for the nonrenewals that is fair and equitable, and that is responsive to the changes in our reinsurance position.

   c. We will not refuse to renew such coverage solely because the first Named Insured has cancelled or did not renew a policy, issued by the California Earthquake Authority that included an earthquake policy premium surcharge.

   d. We will not refuse to renew such coverage solely because corrosive soil conditions exist on the premises. This Restriction **(d.)** applies only if coverage is subject to one of the following, which exclude loss or damage caused by or resulting from corrosive soil conditions:

      **(1)** Capital Assets Program Coverage Form (Output Policy),

      **(2)** Commercial Property Coverage Part – Causes Of Loss – Special Form; or

      **(3)** Farm Coverage Part – Causes Of Loss Form – Farm Property, Paragraph **D.** Covered Causes Of Loss – Special.

3. We are not required to send notice of nonrenewal in the following situations:

   a. If the transfer or renewal of a policy, without any changes in terms, conditions, or rates, is between us and a member of our insurance group.

© ISO Properties, Inc., 2004

EXHIBIT A

b. If the policy has been extended for 90 days or less, provided that notice has been given in accordance with Paragraph **C.1.**

c. If you have obtained replacement coverage, or if the first Named Insured has agreed, in writing, within 60 days of the termination of the policy, to obtain that coverage.

d. If the policy is for a period of no more than 60 days and you are notified at the time of issuance that it will not be renewed.

e. If the first Named Insured requests a change in the terms or conditions or risks covered by the policy within 60 days of the end of the policy period.

f. If we have made a written offer to the first Named Insured, in accordance with the timeframes shown in Paragraph **C.1.**, to renew the policy under changed terms or conditions or at an increased premium rate, when the increase exceeds 25%.

© ISO Properties, Inc., 2004

POLICY NUMBER: HDO G20592709

ENDT. #28

IL 02 28 04 06

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# COLORADO CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

A. Paragraph 2. of the Cancellation Common Policy Condition is replaced by the following:

2. If this policy has been in effect for less than 60 days, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

b. 30 days before the effective date of cancellation if we cancel for any other reason.

B. The following is added to the Cancellation Common Policy Condition:

7. **Cancellation Of Policies In Effect For 60 Days Or More**

a. If this policy has been in effect for 60 days or more, or is a renewal of a policy we issued, we may cancel this policy by mailing through first-class mail to the first Named Insured written notice of cancellation:

(1) Including the actual reason, at least 10 days before the effective date of cancellation, if we cancel for nonpayment of premium; or

(2) At least 45 days before the effective date of cancellation if we cancel for any other reason.

We may only cancel this policy based on one or more of the following reasons:

(1) Nonpayment of premium;

(2) A false statement knowingly made by the insured on the application for insurance; or

(3) A substantial change in the exposure or risk other than that indicated in the application and underwritten as of the effective date of the policy unless the first Named Insured has notified us of the change and we accept such change.

C. The following is added and supersedes any other provision to the contrary:

**NONRENEWAL**

If we decide not to renew this policy, we will mail through first-class mail to the first Named Insured shown in the Declarations written notice of the nonrenewal at least 45 days before the expiration date, or its anniversary date if it is a policy written for a term of more than one year or with no fixed expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

© ISO Properties, Inc., 2005

EXHIBIT A

D. The following condition is added:

**INCREASE IN PREMIUM OR DECREASE IN COVERAGE**

We will not increase the premium unilaterally or decrease the coverage benefits on renewal of this policy unless we mail through first-clas mail written notice of our intention, including the actual reason, to the first Named Insured's last mailing address known to us, at least 45 days before the effective date.

Any decrease in coverage during the policy term must be based on one or more of the following reasons:

1. Nonpayment of premium;
2. A false statement knowingly made by the insured on the application for insurance; or
3. A substantial change in the exposure or risk other than that indicated in the application and underwritten as of the effective date of the policy unless the first Named Insured has notified us of the change and we accept such change.

If notice is mailed, proof of mailing will be sufficient proof of notice.

© ISO Properties, Inc., 2005

EXHIBIT A

POLICY NUMBER: HDO G20592709 ENDT. #29

IL 01 40 11 05

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# CONNECTICUT CHANGES – CIVIL UNION

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART

**A.** The term "spouse" is replaced by the following:

Spouse or party to a civil union recognized under Connecticut law.

**B.** Under the Commercial Auto Coverage Part, the term "family member" is replaced by the following:

"Family member" means a person related to the:

1. Individual Named Insured by blood, adoption, marriage or civil union recognized under Connecticut law, who is a resident of such Named Insured's household, including a ward or foster child; or
2. Individual named in the Schedule by blood, adoption, marriage or civil union recognized under Connecticut law, who is a resident of the individual's household, including a ward or foster child, if the Drive Other Car Coverage – Broadened Coverage For Named Individual Endorsement is attached.

**C.** With respect to coverage for the ownership, maintenance, or use of "covered autos" provided under the Commercial Liability Umbrella Coverage Part, or Farm Umbrella Liability Policy, the term "family member" is replaced by the following:

"Family member" means a person related to you by blood, adoption, marriage or civil union recognized under Connecticut law, who is a resident of your household, including a ward or foster child.

 © ISO Properties, Inc., 2005 

EXHIBIT A

POLICY NUMBER: HDO G20592709

ENDT. #30

INTERLINE
IL 02 60 07 05

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# CONNECTICUT CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

A. The **Cancellation** Common Policy Condition is replaced by the following:

CANCELLATION

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. Cancellation of policies in effect for less than 60 days

   If this policy has been in effect for less than 60 days and is not a renewal of a policy we issued, we may cancel this policy for any reason by giving you written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. Cancellation of policies in effect for 60 days or more

   a. If this policy has been in effect for 60 days or more or this is a renewal of a policy we issued, we may cancel this policy by giving you written notice of cancellation at least:

      (1) 10 days before the effective date of cancellation if we cancel for one or more of the following reasons:

         (a) Nonpayment of premium;

         (b) Conviction of a crime arising out of acts increasing the hazard insured against;

         (c) Discovery of fraud or material misrepresentation by you in obtaining the policy or in perfecting any claim thereunder;

         (d) Discovery of any willful or reckless act or omission by you increasing the hazard insured against; or

         (e) A determination by the Commissioner that continuation of the policy would violate or place us in violation of the law; or

      (2) 60 days before the effective date of cancellation if we cancel for one or more of the following reasons:

         (a) Physical changes in the property which increase the hazard insured against;

         (b) A material increase in the hazard insured against; or

         (c) A substantial loss of reinsurance by us affecting this particular line of insurance.

 © ISO Properties, Inc., 2004 

EXHIBIT A

b. We may not cancel policies in effect for 60 days or more or renewal policies for any reason other than the reasons described in Paragraph **3.a.** above.

c. If we cancel for nonpayment of premium, you may continue the coverage and avoid the effect of the cancellation by payment in full at any time prior to the effective date of cancellation.

d. Notice of cancellation will be delivered or sent by:

(1) Registered mail;

(2) Certified mail; or

(3) Mail evidenced by a United States Post Office certificate of mailing.

4. We will give notice to you at your last mailing address known to us.

5. Notice of cancellation will state the specific reason for the cancellation and the effective date of cancellation. The policy period will end on that date.

6. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

7. If notice is mailed, proof of mailing will be sufficient proof of notice.

B. The following is added and supersedes any other provision to the contrary:

**NONRENEWAL**

1. If we decide not to renew this policy, we will mail or deliver to you a written notice of nonrenewal, stating the specific reason for nonrenewal, at least 60 days before the expiration date of this policy. The notice will be sent to your address last known to us.

2. This notice will be delivered or sent by:

a. Registered mail;

b. Certified mail; or

c. Mail evidenced by a certificate of mailing.

If notice is mailed, proof of mailing is sufficient proof of notice.

3. However, we are not required to send this notice if nonrenewal is due to your failure to pay any advance premium required for renewal.

4. With respect to automobile liability insurance policies only, your policy shall terminate on the effective date of any other insurance policy you purchase with respect to any automobile designated in both policies.

© ISO Properties, Inc., 2004

EXHIBIT A

POLICY NUMBER: HDO G20592709

ENDT. #31

IL 02 37 07 02

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# DELAWARE CHANGES – TERMINATION PROVISIONS

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART

**A.** With respect to the:

Farm Property-Farm Dwellings, Appurtenant Structures and Household Personal Property Coverage Form; Commercial Property Coverage Part; and Capital Assets Program (Output Policy) Coverage Part;

if the policy covers a building that contains no more than 4 dwelling units, one of which is the insured's principal place of residence, or covers the insured's household personal property in a residential building, the following applies:

**1.** Paragraph **2.** of the **Cancellation Common Policy Condition** is replaced by the following:

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation along with the reasons for cancellation at least:

**a.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

After coverage has been in effect for more than 60 days or after the effective date of a renewal of this policy, no notice of cancellation will be issued by us unless it is based on at least one of the following reasons:

**(1)** Nonpayment of premium;

**(2)** Discovery of fraud or material misrepresentation made by you or with your knowledge in obtaining the policy, continuing the policy, or in presenting a claim under the policy;

**(3)** Discovery of willful or reckless acts or omissions on your part that increase any hazard insured against;

**(4)** The occurrence of a change in the risk that substantially increases any hazard insured against after insurance coverage has been issued or renewed;

**(5)** A violation of any local fire, health, safety, building, or construction regulation or ordinance with respect to any covered property or its occupancy that substantially increases any hazard insured against;

**(6)** A determination by the Insurance Commissioner that the continuation of the policy would place us in violation of the Delaware insurance laws; or

**(7)** Real property taxes owing on the insured property have been delinquent for two or more years and continue delinquent at the time notice of cancellation is issued.

© ISO Properties, Inc., 2001

EXHIBIT A

2. The following Condition is added:

**NONRENEWAL**

a. If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal to the first Named Insured, at least 30 days before the expiration date, or the anniversary date if this is a policy written for a term of more than one year or with no fixed expiration date.

b. Any notice of nonrenewal will include the reason(s) for nonrenewal and will be mailed or delivered to the first Named Insured at the last mailing address known to us.

c. If notice is mailed, proof of mailing will be sufficient proof of notice.

3. If Cancellation Changes **CP 02 99** is attached to the Commercial Property Coverage Part, Paragraph **E.2.** of that form is replaced by the following:

2. Pay property taxes that are owing and have been outstanding for more than two years following the date due, except that this provision will not apply where you are in a bona fide dispute with the taxing authority regarding payment of such taxes.

**B.** With respect to the:

CAPITAL ASSETS PROGRAM COVERAGE FORM (OUTPUT POLICY)

COMMERCIAL GENERAL LIABILITY COVERAGE FORM;

COMMERCIAL PROPERTY – LEGAL LIABILITY COVERAGE FORM;
COMMERCIAL PROPERTY – MORTGAGE HOLDER'S ERRORS AND OMISSIONS COVERAGE FORM;

EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE FORM;

FARM LIABILITY COVERAGE FORM;
LIQUOR LIABILITY COVERAGE FORM;

POLLUTION LIABILITY COVERAGE FORM;
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM; and

PROFESSIONAL LIABILITY COVERAGE FORM;

the following Condition is added and supersedes any other condition to the contrary:

**NONRENEWAL**

1. If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal to the first Named Insured, at least 60 days before the expiration date, or the anniversary date if this is a policy written for a term of more than one year or with no fixed expiration date.

2. Any notice of nonrenewal will be mailed or delivered to the first Named Insured at the last mailing address known to us.

3. If notice of nonrenewal is mailed, it will be sent by certified mail.

© ISO Properties, Inc., 2001

EXHIBIT A

POLICY NUMBER: HDO G20592709

ENDT. #32

COMMERCIAL GENERAL LIABILITY
CG 02 20 11 06

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# FLORIDA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART

A. Paragraph 2. of the **Cancellation** Common Policy Condition is replaced by the following.

2. **Cancellation Of Policies In Effect**

a. **For 90 Days Or Less**

If this policy has been in effect for 90 days or less, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation, accompanied by the reasons for cancellation, at least:

(1) 10 days before the effective date of cancellation if we cancel for nonpayment of premium, or

(2) 20 days before the effective date of cancellation if we cancel for any other reason, except we may cancel immediately if there has been

(a) A material misstatement or misrepresentation; or

(b) A failure to comply with the underwriting requirements established by the insurer.

b. **For More Than 90 Days**

If this policy has been in effect for more than 90 days, we may cancel this policy only for one or more of the following reasons:

(1) Nonpayment of premium;

(2) The policy was obtained by a material misstatement;

(3) Failure to comply with underwriting requirements established by the insurer within 90 days of the effective date of coverage;

(4) A substantial change in the risk covered by the policy; or

(5) The cancellation is for all insureds under such policies for a given class of insureds

If we cancel this policy for any of these reasons, we will mail or deliver to the first Named Insured written notice of cancellation, accompanied by the reasons for cancellation, at least:

(a) 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

(b) 45 days before the effective date of cancellation if we cancel for any of the other reasons stated in Paragraph **2.b.**

B. Paragraph 5. of the **Cancellation** Common Policy Condition is replaced by the following:

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will mail the refund within 15 working days after the date cancellation takes effect. The cancellation will be effective even if we have not made or offered a refund.

 © ISO Properties, Inc., 2006 

EXHIBIT A

C. The following is added and supersedes any other provision to the contrary:

**NONRENEWAL**

1. If we decide not to renew this policy we will mail or deliver to the first Named Insured written notice of nonrenewal, accompanied by the reason for nonrenewal, at least 45 days prior to the expiration of this policy.

2. Any notice of nonrenewal will be mailed or delivered to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

© ISO Properties, Inc., 2006

EXHIBIT A

POLICY NUMBER: HDO G20592709

ENDT. #33

IL 02 62 07 02

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# GEORGIA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART

**A.** Paragraph **A.1.** of the CANCELLATION Common Policy Condition is replaced by the following:

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation stating a future date on which the policy is to be cancelled, subject to the following:

   **a.** If only the interest of the first Named Insured is affected, the effective date of cancellation will be either the date we receive notice from the first Named Insured or the date specified in the notice, whichever is later. However, upon receiving a written notice of cancellation from the first Named Insured, we may waive the requirement that the notice state the future date of cancellation, by confirming the date and time of cancellation in writing to the first Named Insured.

   **b.** If by statute, regulation or contract this policy may not be cancelled unless notice is given to a governmental agency, mortgagee or other third party, we will mail or deliver at least 10 days notice to the first Named Insured and the third party as soon as practicable after receiving the first Named Insured's request for cancellation.

   Our notice will state the effective date of cancellation, which will be the later of the following:

   **(1)** 10 days from the date of mailing or delivering our notice, or

   **(2)** The effective date of cancellation stated in the first Named Insured's notice to us.

**B.** Paragraph **A.5.** of the CANCELLATION Common Policy Condition is replaced by the following:

5. Premium Refund

   **a.** If this policy is cancelled, we will send the first Named Insured any premium refund due.

   **b.** If we cancel, the refund will be pro rata, except as provided in **c.** below.

   **c.** If the cancellation results from failure of the first Named Insured to pay, when due, any premium to us or any amount, when due, under a premium finance agreement, then the refund may be less than pro rata. Calculation of the return premium at less than pro rata represents a penalty charged on unearned premium.

   **d.** If the first Named Insured cancels, the refund may be less than pro rata.

© ISO Properties, Inc., 2001

EXHIBIT A

e. The cancellation will be effective even if we have not made or offered a refund.

C. The following is added to the CANCELLATION Common Policy condition and supersedes any other provisions to the contrary:

If we decide to:

1. Cancel or nonrenew this policy; or

2. Increase current policy premium by more than 15% (other than any increase due to change in risk, exposure or experience modification or resulting from an audit of auditable coverages); or

3. Change any policy provision which would limit or restrict coverage;

Then:

We will mail or deliver notice of our action (including the dollar amount of any increase in renewal premium of more than 15%) to the first Named Insured and lienholder, if any, at the last mailing address known to us. Except as applicable as described in Paragraph D. below, we will mail or deliver notice at least:

1. 10 days before the effective date of cancellation if this policy has been in effect less than 60 days or if we cancel for nonpayment of premium; or

2. 45 days before the effective date of cancellation if this policy has been in effect 60 or more days and we cancel for a reason other than nonpayment of premium; or

3. 45 days before the expiration date of this policy if we decide to nonrenew, increase the premium or limit or restrict coverage

D. The following provisions apply to insurance covering residential real property only provided under the:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART;

COMMERCIAL PROPERTY COVERAGE PART; FARM COVERAGE PART;

if the named insured is a natural person.

With respect to such insurance, the following is added to the CANCELLATION Common Policy Condition and supersedes any provisions to the contrary:

1. When this policy has been in effect for 60 days or less and is not a renewal with us, we may cancel for any reason by notifying the first named insured at least 10 days before the date cancellation takes effect.

2. When this policy has been in effect for more than 60 days, or at any time if it is a renewal with us, we may cancel only for one or more of the following reasons:

   a. Nonpayment of premium, whether payable to us or to our agent;

   b. Upon discovery of fraud, concealment of a material fact, or material misrepresentation made by or with the knowledge of any person insured under this policy in obtaining this policy, continuing this policy or presenting a claim under this policy;

   c. Upon the occurrence of a change in the risk which substantially increases any hazard insured against; or

   d. Upon the violation of any of the material terms or conditions of this policy by any person insured under this policy.

   We may cancel by providing notice to the first named insured at least:

   - 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or
   - 45 days before the effective date of cancellation if we cancel for any of the reasons listed in b., c. or d. above.

 © ISO Properties, Inc., 2001

POLICY NUMBER: HDO G20592709

ENDT. #34

IL 02 76 02 04

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# IOWA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART

A. The **Cancellation Common Policy** Condition is replaced by the following:

CANCELLATION

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. **Cancellation Requirements**

   a. We may cancel this policy, by mailing or delivering to the first Named Insured and any loss payee written notice of cancellation at least:

      (1) 30 days before the effective date of cancellation if we cancel due to loss of reinsurance coverage;

      (2) 10 days before the effective date of cancellation if we cancel for any other reason.

   b. If this policy is a new policy and has been in effect for less than 60 days, we may cancel for:

      (1) Loss of reinsurance, subject to **d.** below, or

      (2) Any other reason.

   c. If this policy has been in effect for 60 days or more, or is a renewal of a policy we issued, we may cancel only for one or more of the following reasons:

      (1) Nonpayment of premium;

      (2) Misrepresentation or fraud made by or with your knowledge in obtaining the policy, when renewing the policy, or in presenting a claim under the policy;

      (3) Acts or omissions by you that substantially change or increase the risk insured;

      (4) Determination by the Commissioner that the continuation of the policy would jeopardize our solvency or would place us in violation of the insurance laws of this or any other state;

      (5) You have acted in a manner which you knew or should have known was in violation or breach of a policy term or condition; or

      (6) Loss of reinsurance, subject to **d.** below.

   d. We may cancel due to loss of reinsurance which provides coverage to us for a significant portion of the underlying risk insured, but only if the Commissioner determines that such cancellation is justified.

3. We will mail or deliver our notice to the first Named Insured's and any loss payee's last mailing address known to us.

© ISO Properties, Inc., 2003

EXHIBIT A

4. Notice of cancellation will state:

   a. The reason for cancellation; and

   b. The effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, a post office department certificate of mailing is proof of receipt of notice. However, if cancellation is for nonpayment of premium, a certificate of mailing is not required.

B. The following is added and supersedes any other provision to the contrary:

**NONRENEWAL**

1. If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal to the first Named Insured and any loss payee at least 45 days before the expiration date of this policy, except if:

   a. We have offered to issue a renewal policy; or

   b. You have failed to pay a premium due or any advance premium required by us for renewal.

2. If notice is mailed, a post office department certificate of mailing is proof of receipt of notice.

© ISO Properties, Inc., 2003

EXHIBIT A

POLICY NUMBER: HDO G20592709

ENDT. #35

COMMERCIAL GENERAL LIABILITY
CG 02 00 07 05

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ILLINOIS CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART

A. **Cancellation** (Common Policy Conditions) is replaced by the following:

CANCELLATION

1. The first Named Insured shown in the Declarations may cancel this policy by mailing to us advance written notice of cancellation.
2. We may cancel this policy by mailing to you written notice stating the reason for cancellation. If we cancel:
   a. For nonpayment of premium, we will mail the notice at least 10 days prior to the effective date of cancellation.
   b. For a reason other than nonpayment of premium, we will mail the notice at least:
      (1) 30 days prior to the effective date of cancellation if the policy has been in effect for 60 days or less.
      (2) 60 days prior to the effective date of cancellation if the policy has been in effect for more than 60 days.
3. If this policy has been in effect for more than 60 days, we may cancel only for one or more of the following reasons:
   a. Nonpayment of premium;
   b. The policy was obtained through a material misrepresentation,
   c. Any insured has violated any of the terms and conditions of the policy;
   d. The risk originally accepted has measurably increased;
   e. Certification of the Director of Insurance of the loss of reinsurance by the insurer that provided coverage to us for all or a substantial part of the underlying risk insured; or

© ISO Properties, Inc., 2004

EXHIBIT A

      f. A determination by the Director of Insurance that the continuation of the policy could place us in violation of the insurance laws of this State.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund will be less than pro rata. The cancellation will be effective even if we have not offered a refund.

**B.** The following is added and supersedes any provision to the contrary:

**NONRENEWAL**

If we decide not to renew or continue this policy, we will mail you and your agent or broker written notice, stating the reason for nonrenewal, at least 60 days before the end of the policy period. If we offer to renew or continue and you do not accept, this policy will terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

If we fail to mail proper written notice of nonrenewal and you obtain other insurance, this policy will end on the effective date of that insurance.

**C. Mailing Of Notices**

We will mail cancellation and nonrenewal notices to you, and the agent or broker, at the last addresses known to us. Proof of mailing will be sufficient proof of notice.

 © ISO Properties, Inc., 2004

POLICY NUMBER: HDO G20592709

ENDT. #36

IL 01 62 04 06

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ILLINOIS CHANGES – DEFENSE COSTS

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART – LEGAL LIABILITY COVERAGE FORM
COMMERCIAL PROPERTY COVERAGE PART – MORTGAGEHOLDERS ERRORS AND OMISSIONS COVERAGE FORM
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK COVERAGE PART

**A.** The provisions of Paragraph **B.** are added to all Insuring Agreements that set forth a duty to defend under:

1. Section **I** of the Commercial General Liability, Commercial Liability Umbrella, Employment-Related Practices Liability, Farm, Liquor Liability, Owners And Contractors Protective Liability, Pollution Liability, Products/Completed Operations Liability, Product Withdrawal, Professional Liability, Railroad Protective Liability, Underground Storage Tank Coverage Parts and the Farm Umbrella Liability Policy;
2. Section **II** – Liability Coverage in Paragraph **A.** Coverage under the Business Auto, Garage, Motor Carrier and Truckers Coverage Forms;
3. Section **A.** Coverage under the Legal Liability Coverage Form; and
4. Coverage **C** – Mortgageholder's Liability under the Mortgageholders Errors And Omissions Coverage Form.

**B.** If we initially defend an insured ("insured") or pay for an insured's ("insured's") defense but later determine that the claim(s) is (are) not covered under this insurance, we will have the right to reimbursement for the defense costs we have incurred.

The right to reimbursement for the defense costs under this provision will only apply to defense costs we have incurred after we notify you in writing that there may not be coverage, and that we are reserving our rights to terminate the defense and seek reimbursement for defense costs.

© ISO Properties, Inc., 2005

EXHIBIT A

POLICY NUMBER: HDO G20592709

ENDT. #37

COMMERCIAL GENERAL LIABILITY
CG 01 23 03 97

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# INDIANA CHANGES – POLLUTION EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following is added to Subparagraph **f., Pollution** of Paragraph **2., Exclusions** of **Bodily Injury And Property Damage Liability Coverage (Section I – Coverages)** and to Paragraph **2., Exclusions** of **Personal And Advertising Injury Liability Coverage (Section I – Coverages)** or to any amendment to or replacement thereof:

This Pollution Exclusion applies whether or not such irritant or contaminant has any function in your business, operations, premises, site or location.

 Copyright, Insurance Services Office, Inc., 1996 

EXHIBIT A

POLICY NUMBER: HDO G20592709

ENDT. #38

COMMERCIAL GENERAL LIABILITY

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# KANSAS AND OKLAHOMA CHANGES – TRANSFER OF RIGHTS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

Condition 8. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US (Section IV), does not apply to COVERAGE C. MEDICAL PAYMENTS.

 Copyright Insurance Services Office, Inc., 1984 

EXHIBIT A

POLICY NUMBER: HDO G20592709

ENDT. #39

IL 02 61 07 02

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# KANSAS CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

A. Paragraph 2. of the CANCELLATION Common Policy Condition is replaced by the following:

2.a. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation, stating the reasons for cancellation, at least:

(1) 10 days before the effective date of cancellation if we cancel for nonpayment of premium

(2) 30 days before the effective date of cancellation if we cancel for any other reason

b. If this policy has been in effect for 90 days or more, or if it is a renewal of a policy we issued, we may cancel this policy only for one or more of the following reasons:

(1) Nonpayment of premium;

(2) This policy was issued because of material misrepresentation;

(3) You or any other insured violated any of the material terms and conditions of this policy;

(4) Unfavorable underwriting factors, specific to you, exist that were not present at the inception of this policy;

(5) A determination by the insurance commissioner that continuation of coverage could place us in a hazardous financial condition or in violation of the laws of Kansas; or

(6) A determination by the insurance commissioner that we no longer have adequate reinsurance to meet our needs.

B. The following is added and supersedes any condition to the contrary:

NONRENEWAL

1. If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal, stating the reasons for nonrenewal, to the first Named Insured at least 60 days prior to the expiration of the policy.

2. Any notice of nonrenewal will be mailed or delivered to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

 © ISO Properties, Inc., 2001 

EXHIBIT A

POLICY NUMBER: HDO G20592709

ENDT. #40

IL 02 63 07 02

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# KENTUCKY CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART

A. Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following.

2. **Cancellation Of Policies In Effect For 60 Days Or Less**

   If this policy has been in effect for 60 days or less, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation, stating the reason for cancellation, at least 14 days before the effective date of cancellation.

B. The following is added to the **Cancellation** Common Policy Condition:

7. **Cancellation Of Policies In Effect For More Than 60 Days**

   a. If this policy has been in effect for more than 60 days or is a renewal of a policy we issued, we may cancel this policy only for one or more of the following reasons

      (1) Nonpayment of premium;

      (2) Discovery of fraud or material misrepresentation made by you or with your knowledge in obtaining the policy, continuing the policy, or in presenting a claim under the policy;

      (3) Discovery of willful or reckless acts or omissions on your part which increase any hazard insured against;

      (4) The occurrence of a change in the risk which substantially increases any hazard insured against after insurance coverage has been issued or renewed;

      (5) A violation of any local fire, health, safety, building, or construction regulation or ordinance with respect to any insured property or the occupancy thereof which substantially increases any hazard insured against;

      (6) We are unable to reinsure the risk covered by the policy; or

      (7) A determination by the commissioner that the continuation of the policy would place us in violation of the Kentucky insurance code or regulations of the commissioner

© ISO Properties, Inc. 2001

EXHIBIT A

**b.** If we cancel this policy based on Paragraph **7.a.** above, we will mail or deliver a written notice of cancellation to the first Named Insured, stating the reason for cancellation, at least:

**(1)** 14 days before the effective date of the cancellation, if cancellation is for nonpayment of premium; or

**(2)** 75 days before the effective date of the cancellation, if cancellation is for any reason stated in **7.a.(2)** through **7.a.(7)** above.

**C.** The following is added and supersedes any provision to the contrary:

**NONRENEWAL**

**1.** For the purpose of this Condition:

**a.** Any policy period or term of less than 6 months shall be considered to be a policy period or term of six months; and

**b.** Any policy period or term of more than 1 year or any policy with no fixed expiration date shall be considered a policy period or term of 1 year.

2. If we elect not to renew this policy, we will mail or deliver written notice of nonrenewal, stating the reason for nonrenewal, to the first Named Insured shown in the Declarations, at the last mailing address known to us, at least 75 days before the expiration date of the policy period.

**3.** If notice of nonrenewal is not provided pursuant to this Condition, coverage under the same terms and conditions shall be deemed to be renewed for the ensuing policy period upon payment of the appropriate premium until you have accepted replacement coverage with another insurer, or until you have agreed to the nonrenewal.

**4.** If we mail or deliver a renewal notice to the first Named Insured at least 30 days before the end of the policy period, stating the renewal premium and its due date, the policy will terminate without further notice unless the renewal premium is received by us or our authorized agent by the due date.

**5.** If this policy terminates because the renewal premium has not been received by the due date, we will, within 15 days, mail or deliver to the first Named Insured at his last known address a notice that the policy was not renewed and the date it was terminated.

**6.** If notice is mailed, proof of mailing is sufficient proof of notice.

© ISO Properties, Inc., 2001

EXHIBIT A

POLICY NUMBER: HDO G20592709

ENDT. #41

COMMERCIAL GENERAL LIABILITY
CG 01 18 12 04

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# LOUISIANA CHANGES – LEGAL ACTION AGAINST US

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART

The **Legal Action Against Us** Condition (Section **IV** – Conditions) is replaced by the following.

**Legal Action Against Us**

A person or organization may bring a "suit" against us including, but not limited to, a "suit" to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

© ISO Properties, Inc., 2003

EXHIBIT A

POLICY NUMBER: HDO G20592709

ENDT. #42

COMMERCIAL GENERAL LIABILITY
CG 01 25 03 03

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# LOUISIANA CHANGES – INSURING AGREEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. Paragraph **1.a.** of **Section I – Coverages, Coverage A – Bodily Injury And Property Damage Liability** is replaced with the following:

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

   (1) The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

   (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverage **A** or **B** or medical expenses under Coverage **C**. However, using up the Medical Expense Limit does not end our right and duty to defend.

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

B. Paragraph **1.a.** of **Section I – Coverages, Coverage B – Personal And Advertising Injury Liability** is replaced with the following:

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and "advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

   (1) The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

   (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**. However, using up the Medical Expense Limit does not end our right and duty to defend.

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

 © ISO Properties, Inc., 2002  □

EXHIBIT A

POLICY NUMBER: HDO G20592709

ENDT. #43

COMMERCIAL GENERAL LIABILITY
CG 26 84 12 04

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# LOUISIANA CHANGES – TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US CONDITION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

The **Transfer Of Rights Of Recovery Against Others To Us** Condition **Section IV – Conditions** is replaced by the following:

**TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US**

In the event of any payment under this Coverage Part, we will be entitled to the insured's rights of recovery against any person or organization, and the insured will do whatever is necessary to secure such rights. Our right to recover is subordinate to the insured's right to be fully compensated.

© ISO Properties, Inc., 2003

EXHIBIT A

POLICY NUMBER: HDO G20592709 ENDT. #44

IL 02 77 05 05

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# LOUISIANA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART

**A.** Paragraph **2.** of the **Cancellation Common Policy Condition** is replaced by the following, which applies unless Paragraph **B.** of this endorsement applies.

**2. Notice Of Cancellation**

a. Cancellation Of Policies In Effect For Fewer Than 60 Days Which Are Not Renewals

If this policy has been in effect for fewer than 60 days and is not a renewal of a policy we issued, we may cancel this policy for any reason, subject to the following:

**(1)** Cancellation for nonpayment of premium

We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least 10 days before the effective date of cancellation.

**(2)** Cancellation for any other reason

We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least 60 days before the effective date of cancellation.

b. Cancellation Of Renewal Policies And New Policies In Effect For 60 Days Or More

If this policy has been in effect for 60 days or more, or is a renewal of a policy we issued, we may cancel only for one or more of the following reasons:

**(1)** Nonpayment of premium;

**(2)** Fraud or material misrepresentation made by you or with your knowledge with the intent to deceive in obtaining the policy, continuing the policy, or in presenting a claim under the policy;

**(3)** Activities or omissions by you which change or increase any hazard insured against;

**(4)** Change in the risk which increases the risk of loss after we issued or renewed this policy including an increase in exposure due to regulation, legislation, or court decision;

**(5)** Determination by the Commissioner of Insurance that the continuation of this policy would jeopardize our solvency or would place us in violation of the insurance laws of this or any other state;

 © ISO Properties, Inc., 2004 

EXHIBIT A

(6) The insured's violation or breach of any policy terms or conditions; or

(7) Any other reasons that are approved by the Commissioner of Insurance.

We will mail or deliver written notice of cancellation under Paragraph **A.2.b.**, to the first Named Insured at least:

(a) 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

(b) 30 days before the effective date of cancellation if we cancel for a reason described in Paragraphs **A.2.b.(2)** through **(7)** above.

**B.** Paragraph **2.** of the **Cancellation Common Policy Condition** is replaced by the following, which applies with respect to premium payments due on new and renewal policies, including installment payments.

**2. Notice Of Cancellation**

**a.** If your premium payment check or other negotiable instrument is returned to us or our agent or a premium finance company because it is uncollectible for any reason, we may cancel the policy subject to Paragraphs **B.2.b.** and **B.2.c.**

**b.** We may cancel the policy effective from the date the premium payment was due, by sending you written notice by certified mail, or by delivering such notice to you within 10 days of the date that we receive notice of the returned check or negotiable instrument

**c.** The cancellation notice will also advise you that the policy will be reinstated effective from the date the premium payment was due, if you present to us a cashier's check or money order for the full amount of the returned check or other negotiable instrument within 10 days of the date that the cancellation notice was mailed.

**C.** Paragraph **5.** of the **Cancellation Common Policy Condition** is replaced by the following:

**5. Premium Refund**

If this policy is cancelled, we will return any premium refund due, subject to Paragraphs **C.5.a., C.5.b., C.5.c., C.5.d., C.5.e.** and **C.5.f.** The cancellation will be effective even if we have not made or offered a refund

**a.** If we cancel, the refund will be pro rata

**b.** If the first Named Insured cancels, the refund may be less than pro rata, and will be returned within 30 days after the effective date of cancellation.

**c.** We will send the refund to the first Named Insured unless Paragraph **C.5.d.** or **C.5.e.** applies.

**d.** If we cancel based on Paragraph **B.2.** of this endorsement, we will return the premium due, if any, within 10 days after the expiration of the 10-day period referred to in **B.2.c.** If the policy was financed by a premium finance company, or if payment was advanced by the insurance agent, we will send the return premium directly to such payor.

**e.** With respect to any cancellation of the Commercial Auto Coverage Part, we will send the return premium, if any, to the premium finance company if the premium was financed by such company.

**f.** When return premium payment is sent to the premium finance company or the agent of the insured, we will provide notice to you, at the time of cancellation, that a return of unearned premium may be generated by the cancellation.

**D.** The **Premiums Common Policy Condition** is replaced by the following:

**PREMIUMS**

**1.** The first Named Insured shown in the Declarations is responsible for the payment of all premiums.

**2.** We will pay return premiums, if any, to the first Named Insured, unless another person or entity is entitled to be the payee in accordance with Paragraph **C.** of this endorsement.

**E.** Paragraph **f.** of the **Mortgageholders Condition** in the Commercial Property Coverage Part and the Capital Assets Program (Output Policy) Coverage Part and Paragraph **4.(f)** of the **Mortgageholders Condition** in the Farm Coverage Part are replaced by the following:

If we cancel a policy that has been in effect for fewer than 60 days and is not a renewal of a policy we issued, we will give written notice to the mortgageholder at least:

**(1)** 10 days before the effective date of cancellation, if we cancel for nonpayment of premium; or

**(2)** 60 days before the effective date of cancellation, if we cancel for any other reason

© ISO Properties, Inc., 2004

EXHIBIT A

If we cancel a policy that has been in effect for 60 days or more, or is a renewal of a policy we issued, we will give written notice to the mortgageholder at least:

(1) 10 days before the effective date of cancellation, if we cancel for nonpayment of premium; or

(2) 30 days before the effective date of cancellation, if we cancel for any other reason.

F. The following is added and supersedes any other provision to the contrary:

**NONRENEWAL**

1. If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal to the first Named Insured, at least 60 days before its expiration date, or its anniversary date if it is a policy written for a term of more than one year or with no fixed expiration date.

2. We need not mail or deliver this notice if:

   a. We or another company within our insurance group have offered to issue a renewal policy; or

   b. You have obtained replacement coverage or have agreed in writing to obtain replacement coverage.

3. Any notice of nonrenewal will be mailed or delivered to the first Named Insured at the last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

4. Such notice to the insured shall include the insured's loss run information for the period the policy has been in force within, but not to exceed, the last three years of coverage.

 © ISO Properties, Inc., 2004  □

EXHIBIT A

POLICY NUMBER: HDO G20592709

ENDT. #45

COMMERCIAL GENERAL LIABILITY
CG 02 01 12 04

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# MARYLAND CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

A. Paragraphs 2. and 3. of the **Cancellation** Common Policy Condition are replaced by the following:

2. We may cancel this Coverage Part by mailing to the first Named Insured written notice of cancellation at least:

a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium;

b. 45 days before the effective date of cancellation if we cancel for any other reason.

B. Paragraph 5. of the **Cancellation** Common Policy Condition is replaced by the following.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due.

If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund will be calculated as follows.

a. **Policies Written For One Year Or Less**

We will refund 90% of the pro rata unearned premium.

b. **Policies Written For More Than One Year**

(1) If the policy is cancelled in the first year, we will refund 90% of the pro rata unearned premium for the first year, plus the full annual premium for subsequent years.

(2) If the policy is cancelled after the first year, we will refund the pro rata unearned premium.

c. **Continuous And Annual Premium Payment Policies**

We will refund 90% of the pro rata unearned premium for the year in which the policy is cancelled.

We will retain the minimum premium, except if the policy is cancelled as of the inception date.

However, if this policy is financed by a premium finance company and we or the premium finance company or the first Named Insured cancels the policy, the refund will be pro rata excluding any expense constant, administrative fee or nonrefundable charge filed with and approved by the insurance commissioner.

The cancellation will be effective even if we have not made or offered a refund.

C. Paragraph 6. of the **Cancellation** Common Policy Condition is replaced by the following:

A certificate of mailing will be proof of mailing and sufficient proof of notice.

D. The following condition is added and supersedes any provisions to the contrary:

**WHEN WE DO NOT RENEW**

If we decide not to renew this Coverage Part, we will mail to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 45 days before the expiration date. Even if we do not comply with these terms, this Coverage Part will terminate:

1. On the expiration date, if:

a. You fail to perform any of your obligations in connection with the payment of premium for the Coverage Part or the renewal of the Coverage Part, or any installment payment, whether payable directly to us or our agents or indirectly under any premium finance plan or extension of credit;

b. We have indicated our willingness to renew this Coverage Part to you or your representative;

© ISO Properties, Inc., 2003

EXHIBIT A

c. You have notified us or our agent that you do not want to renew this Coverage Part; or

2. On the effective date of any other insurance policy issued as a replacement for any insurance afforded by this Coverage Part, with respect to insurance to which both policies apply.

A certificate of mailing will be proof of mailing and sufficient proof of notice.

© ISO Properties, Inc., 2003

POLICY NUMBER: HDO G20592709

ENDT. #46

COMMERCIAL GENERAL LIABILITY
CG 26 73 12 04

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# MARYLAND CHANGES – PREMIUM AUDIT CONDITION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

Paragraph **b.** of the **Premium Audit Condition Section IV** is replaced by the following:

**Premium Audit**

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is 30 days from the date of the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

© ISO Properties, Inc., 2003

EXHIBIT A

POLICY NUMBER: HDO G20592709

ENDT. #47
INTERLINE
IL 09 13 04 98

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# INSURANCE INSPECTION SERVICES EXEMPTION FROM LIABILITY

## THE FOLLOWING LIMITS OUR LIABILITY

We, the insurance company, our agents, employees, or service contractors, are not liable for damages from injury, death or loss occurring as a result of any act or omission in the furnishing of or the failure to furnish insurance inspection services related to, in connection with or incidental to the issuance or renewal of a policy of property or casualty insurance.

This exemption from liability does not apply:

A. If the injury, loss or death occurred during the actual performance of inspection services and was proximately caused by our negligence, or by the negligence of our agents, employees or service contractors;

B. To any inspection services required to be performed under the provisions of a written service contract or defined loss prevention program;

C. In any action against us, our agents, employees, or service contractors for damages proximately caused by our acts or omissions which are determined to constitute a crime, actual malice or gross negligence; or

D. If we fail to provide this written notice to the insured whenever the policy is issued or when new **policy forms** are issued upon renewal.

Copyright, Insurance Services Office, Inc., 1997

EXHIBIT A

POLICY NUMBER: HDO G20592709

ENDT. #48

COMMERCIAL GENERAL LIABILITY
CG 01 68 12 04

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# MICHIGAN CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** The paragraph relating to prejudgment interest in **Supplementary Payments** Section **I** is replaced by the following:

Prejudgment interest awarded against the insured on that part of the judgment we pay.

**B.** With respect to the Duties Condition Section **IV**:

1. Notice given by or on behalf of the insured to our authorized agent, with particulars sufficient to identify the insured, shall be considered notice to us.

2. The last sentence of Paragraph **2.b.** is deleted.

3. The reference to Paragraph **d.** is amended to read Paragraph **e.**

4. The following is added:

   **d.** Failure to give any notice required by this Condition within the time period specified shall not invalidate any claim made by you if it shall be shown not to have been reasonably possible to give notice within the prescribed time period and that notice was given as soon as was reasonably possible.

© ISO Properties, Inc., 2003

EXHIBIT A

POLICY NUMBER: HDO G20592709

ENDT. #49

IL 02 86 07 02

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# MICHIGAN CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART

A. The **Cancellation** Common Policy Condition is amended as follows:

1. Paragraph 1. is replaced by the following:

   The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us or our authorized agent advance notice of cancellation.

2. Paragraph 3. is replaced by the following

   We will mail or deliver our notice to the first Named Insured's last mailing address known to us or our authorized agent.

3. Paragraph 5. is replaced by the following:

   If this policy is cancelled, we will send the first Named Insured any pro rata premium refund due. The minimum earned premium shall not be less than the pro rata premium for the expired time or $25.00, whichever is greater. The cancellation will be effective even if we have not made or offered a refund.

B. The following Condition is added and supersedes any other provision to the contrary:

**NONRENEWAL**

If we decide not to renew this policy, we will mail or deliver to the first Named Insured's last mailing address known to us or our authorized agent written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing shall be sufficient proof of notice.

© ISO Properties, Inc., 2001

EXHIBIT A

POLICY NUMBER: HDO G20592709

ENDT. #50

COMMERCIAL GENERAL LIABILITY
CG 01 22 07 98

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# MINNESOTA CHANGES – CONTRACTUAL LIABILITY EXCLUSION AND SUPPLEMENTARY PAYMENTS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

A. Paragraph **2.b.** of **Exclusions** of Section I – **Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

2. **Exclusions**

   This insurance does not apply to:

   b. **Contractual Liability**

      "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

      (1) That the insured would have in the absence of the contract or agreement; or

      (2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement.

B. Section I – **Supplementary Payments – Coverages A And B** is replaced by the following:

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

   a. All expenses we incur.

   b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

   c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

   d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

   e. All costs taxed against the insured in the "suit".

   f. Prejudgment interest awarded against the insured on that part of the judgment we pay.

   g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

   These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

   a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

   b. This insurance applies to such liability assumed by the insured;

   c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

Copyright, Insurance Services Office, Inc., 1997

EXHIBIT A

**d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**f.** The indemnitee:

**(1)** Agrees in writing to:

**(a)** Cooperate with us in the investigation, settlement or defense of the "suit";

**(b)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

**(c)** Notify any other insurer whose coverage is available to the indemnitee; and

**(d)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

**(2)** Provides us with written authorization to:

**(a)** Obtain records and other information related to the "suit"; and

**(b)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments.

Our obligation to defend an insured's indemnitee and to pay for attorneys fees and necessary litigation expenses as Supplementary Payments ends when:

**a.** We have used up the applicable limit of insurance in the payment of judgments or settlements; or

**b.** The conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

Copyright, Insurance Services Office, Inc., 1997

EXHIBIT A

POLICY NUMBER: HDOG20592709

ENDT. #51

COMMERCIAL GENERAL LIABILITY
CG 26 05 02 07

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# MINNESOTA CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. The **Examination Of Your Books And Records** Common Policy Condition is replaced by the following:

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to one year afterward.

B. Paragraph **1. Bankruptcy** under **Section IV – Commercial General Liability Conditions** is replaced by the following:

**1. Bankruptcy**

Bankruptcy, insolvency or dissolution of the insured or of the insured's estate will not relieve us of our obligation under this Coverage Part, and in case an execution against the insured on a final judgment is returned unsatisfied, then such judgment creditor shall have a right of action on this Coverage Part against the company to the same extent that the insured would have, had the insured paid the final judgment

C. The following is added to Paragraph **8. Transfer Of Rights Of Recovery Against Others To Us** Condition under **Section IV – Commercial General Liability Conditions:**

Our rights do not apply against any person or organization insured, under this or any other Coverage Part we issue, with respect to the same "occurrence".

© ISO Properties, Inc., 2006

EXHIBIT A

POLICY NUMBER: HDO G20592709

ENDT. #52

COMMERCIAL GENERAL LIABILITY
CG 26 81 12 04

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# MINNESOTA CHANGES – DUTIES CONDITION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE PART
EMPLOYEE BENEFITS LIABILITY COVERAGE CG 04 35
LIMITED PRODUCT WITHDRAWAL EXPENSE ENDORSEMENT CG 04 36
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
PERSONAL INJURY LIABILITY ENDORSEMENT CG 28 05
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

The following is added to the Duties Condition:

The requirement to notify us can be satisfied by notifying our agent Notice can be by any means of communication.

© ISO Properties, Inc., 2003

EXHIBIT A

POLICY NUMBER: HDO G20592709

ENDT. #53

COMMERCIAL GENERAL LIABILITY
CG 01 34 08 03

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# MISSOURI CHANGES – POLLUTION EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following is added to Subparagraph **f., Pollution** of Paragraph **2., Exclusions** under **Section I – Coverage A – Bodily Injury And Property Damage Liability Coverage** and to Subparagraph **m., Pollution** of Paragraph **2., Exclusions** under **Section I – Coverage B – Personal And Advertising Injury Liability** or to any amendment to or replacement thereof:

This Pollution Exclusion applies even if such irritant or contaminant has a function in your business, operations, premises, site or location.

© ISO Properties, Inc., 2003

EXHIBIT A

POLICY NUMBER: HDO G20592709

ENDT. #54

COMMERCIAL GENERAL LIABILITY
CG 26 25 04 05

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# MISSOURI CHANGES – GUARANTY ASSOCIATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**MISSOURI PROPERTY AND CASUALTY INSURANCE GUARANTY ASSOCIATION COVERAGE LIMITATIONS**

A. Subject to the provisions of the Missouri Property and Casualty Insurance Guaranty Association Act (to be referred to as the Act), if we are a member of the Missouri Property and Casualty Insurance Guaranty Association (to be referred to as the Association), the Association will pay claims covered under the Act if we become insolvent.

B. The Act contains various exclusions, conditions and limitations that govern a claimant's eligibility to collect payment from the Association and affect the amount of any payment. The following limitations apply subject to all other provisions of the Act:

1. Claims covered by the Association do not include a claim by or against an insured of an insolvent insurer, if the insured has a net worth of more than $25 million on the later of the end of the insured's most recent fiscal year or the December thirty-first of the year next preceding the date the insurer becomes insolvent; provided that an insured's net worth on such date shall be deemed to include the aggregate net worth of the insured and all of its affiliates as calculated on a consolidated basis

2. Payments made by the Association for covered claims will include only that amount of each claim which is less than $300,000.

   However, the Association will not:

   (1) Pay an amount in excess of the applicable limit of insurance of the policy from which a claim arises; or

   (2) Return to an insured any unearned premium in excess of $25,000.

These limitations have no effect on the coverage we will provide under this policy

© ISO Properties, Inc., 2004

EXHIBIT A

POLICY NUMBER: HDO G20592709

ENDT. #55

COMMERCIAL GENERAL LIABILITY
CG 26 50 12 98

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# MISSOURI CHANGES – MEDICAL PAYMENTS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. Paragraph **1.a.** of **Coverage C. Medical Payments** is replaced with the following:

1. **Insuring Agreement**

   a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

   **(1)** On premises you own or rent;

   **(2)** On ways next to premises you own or rent; or

   **(3)** Because of your operations;

   provided that:

   **(1)** The accident takes place in the "coverage territory" and during the policy period;

   **(2)** The expenses are incurred and reported to us within one year of the date of the accident. However, expenses reported to us after one year of the date of the accident will not be denied solely because of the late submission unless such late submission operates to prejudice our rights; and

   **(3)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

Copyright, Insurance Services Office, Inc., 1998

EXHIBIT A

POLICY NUMBER: HDO G20592709

ENDT. #56

IL 02 82 12 06

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# MISSISSIPPI CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTO COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART

**A.** Paragraph **7.** is added to the **Cancellation** Common Policy Conditions:

**7.** If:

**a.** The first Named Insured cancels this policy, we will notify any named creditor loss payee.

**b.** We cancel this policy, we will mail or deliver our written notice of cancellation to any named creditor loss payee in the same manner and at the same time as notification is given to the first Named Insured, as stated in this Condition.

The provisions of Paragraphs **a.** and **b.** above do not apply to any mortgageholder.

**B.** Paragraphs **f.** and **g.** of the **Mortgageholders** Condition, if any, are replaced by the following:

**f.** If:

**(1)** The first Named Insured cancels this policy, we will notify the mortgageholder.

(2) We cancel this policy, we will give written notice to the mortgageholder at least 30 days before the effective date of cancellation.

We will notify the mortgageholder by mailing or delivering the cancellation notice to the last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

**g.** If:

**(1)** The first Named Insured does not renew this policy, we will notify the mortgageholder.

**(2)** We decide not to renew this policy, we will give written notice to the mortgageholder at least:

**(a)** 10 days before an anniversary date or the expiration date of the policy, if the nonrenewal is due to nonpayment of premium, or

**(b)** 30 days before an anniversary date or the expiration date of the policy, if the nonrenewal is for any other reason.

We will notify the mortgageholder by mailing or delivering the notice of nonrenewal to the last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

© ISO Properties, Inc., 2006

EXHIBIT A

C. The following Condition is added and supersedes any provision to the contrary:

**NONRENEWAL**

1. If the first Named Insured does not renew this policy, we will notify any named creditor loss payee.

2. If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal to the first Named Insured and any named creditor loss payee, at least:

   a. 10 days before the effective date of nonrenewal, if the nonrenewal is due to nonpayment of premium; or

   b. 30 days before an anniversary date or the expiration date of the policy, if the nonrenewal is for any other reason.

   We will notify the first Named Insured and any named creditor loss payee, by mailing or delivering the notice of nonrenewal to the last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

The provisions of Paragraphs **1.** and **2.** above do not apply to any mortgageholder.

D. The requirements for notification of cancellation or nonrenewal of this policy, as stated in Paragraphs **A.**, **B.** and **C.** above, supersede any other notification requirements to any named creditor loss payee and any mortgageholder, stated in this policy, including any endorsement attached to the policy.

E. Any named creditor loss payee and any mortgageholder may elect not to receive notification of cancellation or nonrenewal by providing us with a written release.

© ISO Properties, Inc., 2006

EXHIBIT A

POLICY NUMBER: HDO G20592709

ENDT. #57

COMMERCIAL GENERAL LIABILITY
CG 26 20 10 93

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# NEW JERSEY CHANGES – LOSS INFORMATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART ("OCCURRENCE" VERSION)

The following Condition is added TO COMMERCIAL GENERAL LIABILITY CONDITIONS (Section IV):

**10. Your Right to Loss Information**

We will provide the first Named Insured shown in the Declarations the following loss information relating to this and any preceding general liability Coverage Part we have issued to you during the previous three years:

a. A list or other record of each "occurrence" of which we were notified in accordance with paragraph **2.a.** of the Duties in the Event of Occurrence, Offense, Claim or Suit Condition in this Section. We will include a brief description of the "occurrence" and information on whether any claim arising out of the "occurrence" is open or closed.

b. A summary by policy year, of payments made and amounts reserved, stated separately under any applicable General Aggregate Limit and Products-Completed Operations Aggregate Limit.

Amounts reserved are based on our judgment. They are subject to change and should not be regarded as ultimate settlement values.

You must not disclose this information to any claimant or any claimant's representative without our consent.

We will provide this information only if we receive a written request from the first Named Insured during the policy period. We will provide this information within 45 days of receipt of the request.

We compile claim and "occurrence" information for our own business purposes and exercise reasonable care in doing so. In providing this information to the first Named Insured, we make no representations or warranties to insureds, insurers or others to whom this information is furnished by or on behalf of any insured.

Copyright, Insurance Services Office, Inc., 1992

EXHIBIT A

POLICY NUMBER: HDO G20592709

ENDT. #58

IL 02 08 12 05

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# NEW JERSEY CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Pursuant to New Jersey law, this policy cannot be cancelled or nonrenewed for any underwriting reason or guideline which is arbitrary, capricious or unfairly discriminatory or without adequate prior notice to the insured. The underwriting reasons or guidelines that an insurer can use to cancel or nonrenew this policy are maintained by the insurer in writing and will be furnished to the insured and/or the insured's lawful representative upon written request.

This provision shall not apply to any policy which has been in effect for less than 60 days at the time notice of cancellation is mailed or delivered, unless the policy is a renewal policy.

**B.** Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following:

**2.** If this policy has been in effect for less than 60 days, we may cancel this policy for any reason subject to the following:

**a.** We may cancel this policy by mailing or delivering to the first Named Insured and any person entitled to notice under this policy written notice, of cancellation, at least:

**(1)** 10 days before the effective date of cancellation if we cancel for:

**(a)** Nonpayment of premium; or

**(b)** Existence of a moral hazard, as defined in N.J.A.C. 11:1-20.2(f) as follows:

**(i)** "The risk, danger or probability that the insured will destroy, or permit to be destroyed, the insured property for the purpose of collecting the insurance proceeds. Any change in the circumstances of an insured that will increase the probability of such a destruction may be considered a 'moral hazard'"; and

**(ii)** "The substantial risk, danger or probability that the character, circumstances or personal habits of the insured may increase the possibility of loss or liability for which an insurer will be held responsible. Any change in the character or circumstances of an individual, corporate, partnership or other insured that will increase the probability of such a loss or liability may be considered a 'moral hazard'".

© ISO Properties, Inc., 2005

EXHIBIT A

(2) 30 days before the effective date of cancellation if we cancel for any other reason.

b. In the notice of cancellation which is sent to the first Named Insured, we will state the reason for cancellation.

C. The following is added to the **Cancellation** Common Policy Condition:

7. **Cancellation Of Policies In Effect For 60 Days Or More**

a. If this policy has been in effect for 60 days or more, or is a renewal of a policy we issued, we may cancel this policy only for one or more of the following reasons:

(1) Nonpayment of premium;

(2) Existence of a moral hazard, as defined in N.J.A.C. 11:1-20.2(f);

(3) Material misrepresentation or nondisclosure to us of a material fact at the time of acceptance of the risk;

(4) Increased hazard or material change in the risk assumed which we could not have reasonably contemplated at the time of assumption of the risk;

(5) Substantial breaches of contractual duties, conditions or warranties that materially affect the nature and/or insurability of the risk;

(6) Lack of cooperation from the insured on loss control matters materially affecting insurability of the risk;

(7) Fraudulent acts against us by the insured or its representative that materially affect the nature of the risk insured.

(8) Loss of or reduction in available insurance capacity;

(9) Material increase in exposure arising out of changes in statutory or case law subsequent to the issuance of the insurance contract or any subsequent renewal;

(10) Loss of or substantial changes in applicable reinsurance;

(11) Failure by the insured to comply with any Federal, State or local fire, health, safety or building or construction regulation, law or ordinance with respect to an insured risk which substantially increases any hazard insured against within 60 days of written notification of a violation of any such law, regulation or ordinance;

(12) Failure by the insured to provide reasonable and necessary underwriting information to us upon written request therefor and a reasonable opportunity to respond;

(13) Agency termination, provided:

(a) We document that replacement coverage at comparable rates and terms has been provided to the first Named Insured, and we have informed the first Named Insured, in writing, of the right to continue coverage with us; or

(b) We have informed the first Named Insured, in writing, of the right to continue coverage with us and the first Named Insured has agreed, in writing, to the cancellation or nonrenewal based on the termination of the first Named Insured's appointed agent.

(14) Any other reasons in accordance with our underwriting guidelines for cancellation of commercial lines coverage.

b. If we cancel this policy based on Paragraphs 7.a.(1) or (2) above, we will mail or deliver a written notice, to the first Named Insured and any person entitled to notice under this policy, at least 10 days before the effective date of cancellation. If we cancel this policy for any other reason listed above, we will mail or deliver a written notice to the first Named Insured and any person entitled to notice under this policy, not more than 120 days nor less than 30 days before the effective date of such cancellation.

c. In the notice of cancellation which is sent to the first Named Insured, we will state the reason for cancellation. For cancellation due to the nonpayment of premium, the notice will state the effect of nonpayment by the due date. Cancellation for nonpayment of premium will not be effective if payment of the amount due is made before the effective date set forth in the notice.

d. Notice will be sent to the last mailing addresses known to us, by:

(1) Certified mail; or

(2) First class mail, if we have obtained from the post office a date stamped proof of mailing showing names and addresses.

© ISO Properties, Inc., 2005

EXHIBIT A

e. We need not send notice of cancellation if you have:

(1) Replaced coverage elsewhere; or

(2) Specifically requested termination.

D. The following is added and supersedes any other provision to the contrary:

**NONRENEWAL**

1. We may elect not to renew this policy for any reason permitted to cancel it. If we elect not to renew this policy, we will mail a notice of nonrenewal, stating the reasons for nonrenewal, to the first Named Insured at least 30 days but not more than 120 days before the expiration date of this policy. If this policy does not have a fixed expiration date, it shall be deemed to expire annually on the anniversary of its inception.

2. This notice will be sent to the first Named Insured at the last mailing address known to us by:

a. Certified mail; or

b. First class mail, if we have obtained from the post office a date stamped proof of mailing showing the first Named Insured's name and address.

3. We need not mail or deliver this notice if you have:

a. Replaced coverage elsewhere; or

b. Specifically requested termination.

© ISO Properties, Inc., 2005

EXHIBIT A

POLICY NUMBER: HDO G20592709

ENDT. #59

IL 02 51 02 04

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# NEVADA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

A. The following are added to the **Cancellation** Common Policy Condition.

7.a. **Midterm Cancellation**

If this policy has been in effect for 70 days or more, or if this policy is a renewal of a policy we issued, we may cancel only for one or more of the following reasons:

**(1)** Nonpayment of premium,

**(2)** Conviction of the insured of a crime arising out of acts increasing the hazard insured against;

**(3)** Discovery of fraud or material misrepresentation in obtaining the policy or in presenting a claim thereunder;

**(4)** Discovery of an act or omission or a violation of any condition of the policy which occurred after the first effective date of the current policy, and substantially and materially increases the hazard insured against.

**(5)** A material change in the nature or extent of the risk, occurring after the first effective date of the current policy, which causes the risk of loss to be substantially and materially increased beyond that contemplated at the time the policy was issued or last renewed;

© ISO Properties, Inc., 2003

EXHIBIT A

(6) A determination by the commissioner that continuation of our present volume of premiums would jeopardize our solvency or be hazardous to the interests of our policyholders, creditors or the public;

(7) A determination by the commissioner that the continuation of the policy would violate, or place us in violation of, any provision of the code.

b. **Anniversary Cancellation**

If this policy is written for a term longer than one year, we may cancel for any reason at an anniversary, by mailing or delivering written notice of cancellation to the first Named Insured at the last mailing address known to us at least 60 days before the anniversary date.

B. The following is added as an additional Condition and supersedes any other provision to the contrary:

**NONRENEWAL**

1. If we elect not to renew this policy, we will mail or deliver to the first Named Insured shown in the Declarations a notice of intention not to renew at least 60 days before the agreed expiration date.

   If notice is mailed, proof of mailing will be sufficient proof of notice.

© ISO Properties, Inc., 2003

EXHIBIT A

2. We need not provide this notice if:

   a. You have accepted replacement coverage;

   b. You have requested or agreed to nonrenewal; or

   c. This policy is expressly designated as nonrenewable.

**C. Notices**

1. Notice of cancellation or nonrenewal in accordance with **A.** and **B.** above, will be mailed, first class or certified, or delivered to the first Named Insured at the last mailing address known to us and will state the reason for cancellation or nonrenewal.

2. We will also provide a copy of the notice of cancellation, for both policies in effect less than 70 days and policies in effect 70 days or more, to the agent who wrote the policy.

© ISO Properties, Inc., 2003

EXHIBIT A

POLICY NUMBER: HDO G20592709

ENDT. #60

COMMERCIAL GENERAL LIABILITY
CG 01 04 12 04

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# NEW YORK CHANGES – PREMIUM AUDIT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

A. Paragraph b. of the **Premium Audit** Condition **Section IV** is replaced by the following:

**PREMIUM AUDIT**

b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. An audit to determine the final premium due or to be refunded will be completed within 180 days after the expiration date of the policy. But the audit may be waived if the total annual premium attributable to the auditable exposure base is not reasonably expected to exceed $1500. If the sum of the advance and audit premiums paid for the policy term is greater than the earned premium, we will return the excess to the first Named Insured.

B. Except as provided in Paragraph **A.** above, the **Examination Of Your Books And Records** Common Policy Condition continues to apply.

© ISO Properties, Inc., 2003

EXHIBIT A

POLICY NUMBER: HDO G20592709

ENDT. #61

COMMERCIAL GENERAL LIABILITY
CG 01 63 09 99

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

# NEW YORK CHANGES
# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. Paragraph **1. Insuring Agreement** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages even if the allegations of the "suit" are groundless, false or fraudulent. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2) The "bodily injury" or "property damage" occurs during the policy period; and

(3) Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

(1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

(2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage", or

Copyright, Insurance Services Office, Inc., 1999

EXHIBIT A

(3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

B. Paragraph **1.a.** of **Section I – Coverage B – Personal And Advertising Injury Liability** is replaced by the following:

1. **Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages even if the allegations of the "suit" are groundless, false or fraudulent. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** and **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

C. The following is added as Paragraph **e.** to the **Duties In The Event Of Occurrence, Offense, Claim Or Suit** Condition (Paragraph **2.** of **Section IV – Commercial General Liability Conditions**):

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

e. Notice given by or on behalf of the insured, or written notice by or on behalf of the injured person or any other claimant, to any agent of ours in New York State, with particulars sufficient to identify the insured, shall be considered to be notice to us.

D. The definition of "loading or unloading" in the **Definitions** Section does not apply.

Copyright, Insurance Services Office, Inc., 1999
EXHIBIT A

POLICY NUMBER: HDO G20592709

ENDT. #62

COMMERCIAL GENERAL LIABILITY

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# NEW YORK CHANGES – TRANSFER OF DUTIES WHEN A LIMIT OF INSURANCE IS USED UP

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following Condition is added to COMMERCIAL GENERAL LIABILITY CONDITIONS (Section IV):

**Transfer of Duties When a Limit of Insurance Is Used Up.**

**a.** If we conclude that, based on "occurrences," offenses, claims or "suits" which have been reported to us and to which this insurance may apply, the:

**(1)** General Aggregate Limit (other than the Products/Completed Operations Aggregate Limit);

**(2)** Products/Completed Operations Aggregate Limit;

**(3)** Personal and Advertising Injury Limit;

**(4)** Each Occurrence Limit; or

**(5)** Fire Damage Limit

is likely to be used up in the payment of judgments or settlements, we will notify the first Named Insured, in writing, to that effect.

**b.** When a limit of insurance described in paragraph **a.** above has actually been used up in the payment of judgments or settlements:

**(1)** We will notify the first Named Insured, in writing, as soon as practicable, that:

**(a)** Such a limit has actually been used up; and

**(b)** Our duty to defend "suits" seeking damages subject to that limit has also ended.

**(2)** We will initiate, and cooperate in, the transfer of control, to any appropriate insured, of all claims and "suits" seeking damages which are subject to that limit and which are reported to us before that limit is used up. That insured must cooperate in the transfer of control of said claims and "suits".

We agree to take such steps, as we deem appropriate, to avoid a default in, or continue the defense of, such "suits" until such transfer is completed, provided the appropriate insured is cooperating in completing such transfer.

We will take no action whatsoever with respect to any claim or "suit" seeking damages that would have been subject to that limit, had it not been used up, if the claim or "suit" is reported to us after that limit of insurance has been used up.

**(3)** The first Named Insured, and any other insured involved in a "suit" seeking damages subject to that limit, must arrange for the defense of such "suit" within such time period as agreed to between the appropriate insured and us. Absent any such agreement, arrangements for the defense of such "suit" must be made as soon as practicable.

**c.** The first Named Insured will reimburse us for expenses we incur in taking those steps we deem appropriate in accordance with paragraph **b.(2)** above.

The duty of the first Named Insured to reimburse us will begin on:

**(1)** The date on which the applicable limit of insurance is used up, if we sent notice in accordance with paragraph **a.** above; or

**(2)** The date on which we sent notice in accordance with paragraph **b.(1)** above, if we did not send notice in accordance with paragraph **a.** above.

**d.** The exhaustion of any limit of insurance by the payments of judgments or settlements, and the resulting end of our duty to defend, will not be affected by our failure to comply with any of the provisions of this Condition.

Copyright, Insurance Services Office, Inc., 1991

EXHIBIT A

POLICY NUMBER: HDO G20592709

ENDT. #63

IL 02 68 11 05

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# NEW YORK CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraphs **1.**, **2.**, **3.** and **5.** of the **Cancellation** Common Policy Condition are replaced by the following:

**1.** The first Named Insured shown in the Declarations may cancel this entire policy by mailing or delivering to us advance written notice of cancellation.

**2. Cancellation Of Policies In Effect**

**a. 60 Days Or Less**

We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

**(1)** 30 days before the effective date of cancellation if we cancel for any reason not included in Paragraph **A.2.a.(2)** below.

**(2)** 15 days before the effective date of cancellation if we cancel for any of the following reasons:

**(a)** Nonpayment of premium, provided however, that a notice of cancellation on this ground shall inform the first Named Insured of the amount due;

**(b)** Conviction of a crime arising out of acts increasing the hazard insured against;

**(c)** Discovery of fraud or material misrepresentation in the obtaining of the policy or in the presentation of a claim;

**(d)** After issuance of the policy or after the last renewal date, discovery of an act or omission, or a violation of any policy condition, that substantially and materially increases the hazard insured against, and that occurred subsequent to inception of the current policy period;

**(e)** Material physical change in the property insured, occurring after issuance or last annual renewal anniversary date of the policy, that results in the property becoming uninsurable in accordance with our objective, uniformly applied underwriting standards in effect at the time the policy was issued or last renewed; or material change in the nature or extent of the risk, occurring after issuance or last annual renewal anniversary date of the policy, that causes the risk of loss to be substantially and materially increased beyond that contemplated at the time the policy was issued or last renewed;

© ISO Properties, Inc., 2005

EXHIBIT A

(f) Required pursuant to a determination by the Superintendent that continuation of our present premium volume would jeopardize our solvency or be hazardous to the interest of our policyholders, our creditors or the public;

(g) A determination by the Superintendent that the continuation of the policy would violate, or would place us in violation of, any provision of the Insurance Code; or

(h) Where we have reason to believe, in good faith and with sufficient cause, that there is a probable risk of danger that the insured will destroy, or permit to be destroyed, the insured property for the purpose of collecting the insurance proceeds. If we cancel for this reason, you may make a written request to the Insurance Department, within 10 days of receipt of this notice, to review our cancellation decision. Also, we will simultaneously send a copy of this cancellation notice to the Insurance Department.

b. **For More Than 60 Days**

If this policy has been in effect for more than 60 days, or if this policy is a renewal or continuation of a policy we issued, we may cancel only for any of the reasons listed in Paragraph **A.2.a.(2)** above, provided:

(1) We mail the first Named Insured written notice at least 15 days before the effective date of cancellation; and

(2) If we cancel for nonpayment of premium, our notice of cancellation informs the first Named Insured of the amount due.

3. We will mail or deliver our notice, including the reason for cancellation, to the first Named Insured at the address shown in the policy and to the authorized agent or broker.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata.

However, when the premium is advanced under a premium finance agreement, the cancellation refund will be pro rata. Under such financed policies, we will be entitled to retain a minimum earned premium of 10% of the total policy premium or $60, whichever is greater. The cancellation will be effective even if we have not made or offered a refund.

**B.** The following is added to the **Cancellation** Common Policy Condition:

7. If one of the reasons for cancellation in Paragraph **A.2.a.(2)** or **D.2.b.(2)** exists, we may cancel this entire policy, even if the reason for cancellation pertains only to a new coverage or endorsement initially effective subsequent to the original issuance of this policy.

**C.** The following conditions are added:

1. **Nonrenewal**

If we decide not to renew this policy we will send notice as provided in Paragraph **C.3.** below.

2. **Conditional Renewal**

If we conditionally renew this policy subject to a:

a. Change of limits;

b. Change in type of coverage;

c. Reduction of coverage;

d. Increased deductible;

e. Addition of exclusion; or

f. Increased premiums in excess of 10%, exclusive of any premium increase due to and commensurate with insured value added or increased exposure units; or as a result of experience rating, loss rating, retrospective rating or audit;

we will send notice as provided in Paragraph **C.3.** below.

3. **Notices Of Nonrenewal And Conditional Renewal**

a. If we decide not to renew this policy or to conditionally renew this policy as provided in Paragraphs **C.1.** and **C.2.** above, we will mail or deliver written notice to the first Named Insured shown in the Declarations at least 60 but not more than 120 days before:

(1) The expiration date; or

(2) The anniversary date if this is a continuous policy.

b. Notice will be mailed or delivered to the first Named Insured at the address shown in the policy and to the authorized agent or broker. If notice is mailed, proof of mailing will be sufficient proof of notice.

c. Notice will include the specific reason(s) for nonrenewal or conditional renewal, including the amount of any premium increase for conditional renewal and description of any other changes.

© ISO Properties, Inc., 2005

EXHIBIT A

d. If we violate any of the provisions of Paragraph **C.3.a.**, **b.** or **c.** above by sending the first Named Insured an incomplete or late conditional renewal notice or a late nonrenewal notice:

(1) Coverage will remain in effect at the same terms and conditions of this policy at the lower of the current rates or the prior period's rates until 60 days after such notice is mailed or delivered, unless the first Named Insured, during this 60 day period, has replaced the coverage or elects to cancel.

(2) On or after the expiration date of this policy, coverage will remain in effect at the same terms and conditions of this policy for another policy period, at the lower of the current rates or the prior period's rates, unless the first Named Insured, during this additional policy period, has replaced the coverage or elects to cancel.

e. If you elect to renew on the basis of a late conditional renewal notice, the terms, conditions and rates set forth in such notice shall apply:

(1) Upon expiration of the 60 day period, or

(2) Notwithstanding the provisions in Paragraphs **d.(1)** and **d.(2)**, as of the renewal date of the policy if we send the first Named Insured the conditional renewal notice at least 30 days prior to the expiration or anniversary date of the policy

f. We will not send you notice of nonrenewal or conditional renewal if you, your authorized agent or broker or another insurer of yours mails or delivers notice that the policy has been replaced or is no longer desired.

D. The following provisions apply when the Commercial Property Coverage Part, the Farm Coverage Part or the Capital Assets Program (Output Policy) Coverage Part is made a part of this policy:

1. Items **D.2.** and **D.3.** apply if this policy meets the following conditions:

a. The policy is issued or issued for delivery in New York State covering property located in this state, and

b. The policy insures:

(1) For loss of or damage to structures, other than hotels or motels, used predominantly for residential purposes and consisting of no more than four dwelling units; or

(2) For loss of or damage to personal property other than farm personal property or business property; or

(3) Against damages arising from liability for loss of, damage to or injury to persons or property, except liability arising from business or farming; and

c. The portion of the annual premium attributable to the property and contingencies described in **1.b.** exceeds the portion applicable to other property and contingencies.

2. Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following:

**2. Procedure And Reasons For Cancellation**

a. We may cancel this entire policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

(1) 15 days before the effective date of cancellation if we cancel for nonpayment of premium, provided however, that a notice of cancellation on this ground shall inform the first Named Insured of the amount due; or

(2) 30 days before the effective date of cancellation if we cancel for any other reason.

b. But if this policy:

(1) Has been in effect for more than 60 days, or

(2) Is a renewal of a policy we issued:

we may cancel this policy only for one or more of the following reasons:

(1) Nonpayment of premium, provided however, that a notice of cancellation on this ground shall inform the first Named Insured of the amount due;

(2) Conviction of a crime arising out of acts increasing the risk of loss;

(3) Discovery of fraud or material misrepresentation in obtaining the policy or in making a claim;

(4) Discovery of willful or reckless acts or omissions increasing the risk of loss;

© ISO Properties, Inc., 2005

EXHIBIT A

(5) Physical changes in the covered property that make that property uninsurable in accordance with our objective and uniformly applied underwriting standards in effect when we:

(a) Issued the policy; or

(b) Last voluntarily renewed the policy;

(6) The Superintendent of Insurance's determination that continuing the policy would violate Chapter 28 of the Insurance Law; or

(7) Required pursuant to a determination by the Superintendent of Insurance that the continuation of our present premium volume would be hazardous to the interests of our policyholders, our creditors or the public.

3. The following are added:

a. **Conditional Continuation**

Instead of cancelling this policy, we may continue it on the condition that:

(1) The policy limits be changed; or

(2) Any coverage not required by law be eliminated.

If this policy is conditionally continued, we will mail or deliver to the first Named Insured written notice at least 20 days before the effective date of the change or elimination. We will mail or deliver our notice to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice. Delivery of the notice will be the same as mailing.

b. **Nonrenewal**

If, as allowed by the laws of New York State, we:

(1) Do not renew this policy; or

(2) Condition policy renewal upon:

(a) Change of limits; or

(b) Elimination of coverage;

we will mail or deliver written notice of nonrenewal or conditional renewal:

(a) At least 45 days; but

(b) Not more than 60 days;

before the expiration date of the policy. We will mail or deliver our notice to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice. Delivery of the notice will be the same as mailing.

E. The following is added to the Farm Property – Other Farm Provisions Form – Additional Coverages, Conditions, Definitions, the Commercial Property Coverage Part and the Capital Assets Program (Output Policy) Coverage Part:

When the property is subject to the Anti-Arson Application in accordance with New York Insurance Department Regulation No. 96, the following provisions are added:

If you fail to return the completed, signed and affirmed anti-arson application to us:

1. Or our broker or agent within 45 days of the effective date of a new policy, we will cancel the entire policy by giving 20 days' written notice to you and to the mortgageholder shown in the Declarations.

2. Before the expiration date of any policy, we will cancel the policy by giving written notice to you and to the mortgageholder shown in the Declarations at least 15 days before the effective date of cancellation.

The cancellation provisions set forth in **E.1.** and **E.2.** above supersede any contrary provisions in this policy including this endorsement.

If the notice in E.1. or E.2. above is mailed, proof of mailing will be sufficient proof of notice. Delivery of the notice will be the same as mailing.

F. The following applies to the Commercial Property Coverage Part, the Farm Coverage Part and the Capital Assets Program (Output Policy) Coverage Part:

Paragraphs **f.** and **g.** of the **Mortgageholders** Condition are replaced by the following:

f. **Cancellation**

(1) If we cancel this policy, we will give written notice to the mortgageholder at least:

(a) 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

(b) 30 days before the effective date of cancellation if we cancel for any other reason.

© ISO Properties, Inc., 2005

(2) If you cancel this policy, we will give written notice to the mortgageholder. With respect to the mortgageholder's interest only, cancellation will become effective on the later of:

(a) The effective date of cancellation of the insured's coverage; or

(b) 10 days after we give notice to the mortgageholder.

**g. Nonrenewal**

(1) If we elect not to renew this policy, we will give written notice to the mortgageholder at least 10 days before the expiration date of this policy.

(2) If you elect not to renew this policy, we will give written notice to the mortgageholder. With respect to the mortgageholder's interest only, nonrenewal will become effective on the later of:

(a) The expiration date of the policy; or

(b) 10 days after we give notice to the mortgageholder.

G. The following provisions apply when the following are made a part of this policy:

Commercial General Liability Coverage Part
Employment-Related Practices Liability Coverage Part
Farm Liability Coverage Form
Liquor Liability Coverage Part
Products/Completed Operations Liability Coverage Part

1. The aggregate limits of this policy as shown in the Declarations will be increased in proportion to any policy extension provided in accordance with Paragraph **C.3.d.** above.

2. The last sentence of Limits Of Insurance does not apply when the policy period is extended because we sent the first Named Insured an incomplete or late conditional renewal notice or a late nonrenewal notice.

© ISO Properties, Inc., 2005

EXHIBIT A

POLICY NUMBER: HDO G20592709

ENDT. #64

COMMERCIAL GENERAL LIABILITY

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# KANSAS AND OKLAHOMA CHANGES – TRANSFER OF RIGHTS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

Condition 8. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US (Section IV), does not apply to COVERAGE C. MEDICAL PAYMENTS.

Copyright, Insurance Services Office, Inc., 1984

EXHIBIT A

POLICY NUMBER: HDO G20592709

ENDT. #65

IL 02 36 07 02

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# OKLAHOMA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART

A. Paragraph 2. of the **Cancellation Common Policy Condition** is replaced by the following:

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

   After coverage has been in effect for more than 45 business days or after the effective date of a renewal of this policy, no notice of cancellation will be issued by us unless it is based on at least one of the following reasons:

   (1) Nonpayment of premium;

   (2) Discovery of fraud or material misrepresentation in the procurement of the insurance or with respect to any claims submitted under it;

   (3) Discovery of willful or reckless acts or omissions by you that increase any hazard insured against;

   (4) The occurrence of a change in the risk that substantially increases any hazard insured against after insurance coverage has been issued or renewed;

© ISO Properties, Inc., 2001

EXHIBIT A

(5) A violation of any local fire, health, safety, building, or construction regulation or ordinance with respect to any covered property or its occupancy that substantially increases any hazard insured against;

(6) A determination by the Insurance Commissioner that the continuation of the policy would place us in violation of the insurance laws of this state;

(7) Your conviction of a crime having as one of its necessary elements an act increasing any hazard insured against; or

(8) Loss of or substantial changes in applicable reinsurance.

B. The following are added to the **Common Policy Conditions** and supersede any provisions to the contrary:

1. **Nonrenewal**

a. If we elect not to renew this policy, we will mail or deliver written notice of nonrenewal to the first Named Insured at least 45 days before:

(1) The expiration date of this policy; or

(2) An anniversary date of this policy, if it is written for a term longer than one year or with no fixed expiration date.

© ISO Properties, Inc., 2001
EXHIBIT A

b. Any notice of nonrenewal will be mailed or delivered to the first Named Insured at the last mailing address known to us.

c. If notice is mailed:

(1) It will be considered to have been given to the first Named Insured on the day it is mailed.

(2) Proof of mailing will be sufficient proof of notice.

d. If notice of nonrenewal is **not** mailed or delivered at least 45 days before the expiration date or an anniversary date of this policy, coverage will remain in effect until 45 days after notice is given. Earned premium for such extended period of coverage will be calculated pro rata based on the rates applicable to the expiring policy.

e. We will **not** provide notice of nonrenewal if:

(1) We, or another company within the same insurance group, have offered to issue a renewal policy; or

(2) You have obtained replacement coverage or have agreed in writing to obtain replacement coverage.

f. If we have provided the required notice of nonrenewal as described in **B.1.a.** above, and thereafter extend the policy for a period of 90 days or less, we will **not** provide an additional nonrenewal notice with respect to the period of extension.

2. **Premium Or Coverage Changes At Renewal**

a. If we elect to renew this policy, we will give written notice of any premium increase, change in deductible, or reduction in limits or coverage, to the first Named Insured, at the last mailing address known to us.

b. Any such notice will be mailed or delivered to the first Named Insured at least 45 days before:

(1) The expiration date of this policy; or

(2) An anniversary date of this policy, if it is written for a term longer than one year or with no fixed expiration date.

c. If notice is mailed:

(1) It will be considered to have been given to the first Named Insured on the day it is mailed.

(2) Proof of mailing will be sufficient proof of notice.

d. If the first Named Insured accepts the renewal, the premium increase or coverage changes will be effective the day following the prior policy's expiration or anniversary date.

e. If notice is **not** mailed or delivered at least 45 days before the expiration date or anniversary date of this policy, the premium, deductible, limits and coverage in effect prior to the changes will remain in effect until:

(1) 45 days after notice is given; or

(2) The effective date of replacement coverage obtained by the insured;

whichever occurs first.

If the first Named Insured then elects **not** to renew, any earned premium for the resulting extended period of coverage will be calculated pro rata at the lower of the new rates or rates applicable to the expiring policy.

f. We will **not** provide notice of the following:

(1) Changes in a rate or plan filed with or approved by the State Board for Property and Casualty Rates or filed pursuant to the Commercial Property and Casualty Competitive Loss Cost Rating Act applicable to an entire class of business;

(2) Changes which are based upon the altered nature or extent of the risk insured; or

(3) Changes in policy forms filed with or approved by the Insurance Commissioner and applicable to an entire class of business.

© ISO Properties, Inc., 2001

EXHIBIT A

POLICY NUMBER: HDO G20592709

ENDT. #66

IL 02 79 01 06

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# OREGON CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART

A. Paragraph 2. of the **Cancellation** Common Policy Condition is replaced by the following:

2. If this policy has been in effect for:

a. Fewer than 60 days and is not a renewal policy, we may cancel for any reason.

b. 60 days or more or is a renewal policy, we may cancel only for one or more of the following reasons:

(1) Nonpayment of premium;

(2) Fraud or material misrepresentation made by you or with your knowledge in obtaining the policy, continuing the policy or in presenting a claim under the policy;

(3) Substantial increase in the risk of loss after insurance coverage has been issued or renewed, including but not limited to an increase in exposure due to rules, legislation or court decision;

(4) Failure to comply with reasonable loss control recommendations;

(5) Substantial breach of contractual duties, conditions or warranties;

(6) Determination by the commissioner that the continuation of a line of insurance or class of business to which the policy belongs will jeopardize our solvency or will place us in violation of the insurance laws of Oregon or any other state; or

(7) Loss or decrease in reinsurance covering the risk.

c. 60 days or more or is a renewal policy, we may cancel for any other reason approved by the commissioner by rule, but only with respect to insurance provided under the following:

(1) A package policy that includes commercial property and commercial liability insurance;

(2) Commercial Automobile Coverage Part;

(3) Commercial General Liability Coverage Part;

(4) Commercial Property Coverage Part – Legal Liability Coverage Form;

(5) Commercial Property Coverage Part – Mortgageholders Errors And Omissions Coverage Form;

(6) Employment Related Practices Liability Coverage Part;

© ISO Properties, Inc., 2005

EXHIBIT A

(7) Farm Coverage Part – Farm Liability Coverage Form;

(8) Liquor Liability Coverage Part;

(9) Products/Completed Operations Liability Coverage Part; or

(10) Professional Liability Coverage Part.

B. Paragraph **3.** of the **Cancellation** Common Policy Condition is amended by the addition of the following:

3. We will mail or deliver to the first Named Insured written notice of cancellation, stating the reason for cancellation.

C. The following is added to the **Cancellation** Common Policy Condition:

**7. Number Of Days' Notice Of Cancellation:**

a. With respect to insurance provided under **2.c.(1)** through **(10)** above, cancellation will not be effective until at least 10 working days after the first Named Insured receives our notice.

b. With respect to insurance other than that provided under **2.c.(1)** through **(10)** above, cancellation will not be effective until at least:

(1) 10 days after the first Named Insured receives our notice, if we cancel for nonpayment of premium; or

(2) 30 days after the first Named Insured receives our notice, if we cancel for any other reason.

D. Paragraph **6.** of the **Cancellation** Common Policy Condition does not apply.

E. The following are added and supersede any provision to the contrary:

**1. Nonrenewal**

We may elect not to renew this policy by mailing or delivering to the first Named Insured, at the last mailing address known to us, written notice of nonrenewal before the:

a. Expiration date of the policy; or

b. Anniversary date of the policy if the policy is written for a term of more than one year or without a fixed expiration date.

However, if this policy is issued for a term of more than one year and for additional consideration the premium is guaranteed, we may not refuse to renew the policy at its anniversary date.

Nonrenewal will not be effective until at least 45 days after the first Named Insured receives our notice.

**2. Mailing Of Notices**

a. If notice of cancellation or nonrenewal is mailed, a post office certificate of mailing will be conclusive proof that the first Named Insured received the notice on the third calendar day after the date of the certificate of mailing.

b. The following provision applies with respect to coverage provided under the Farm Coverage Part:

If the first Named Insured has affirmatively consented to our use of an electronic record to deliver notice of cancellation or nonrenewal and has not withdrawn such consent, then the electronic record delivering notice of cancellation or nonrenewal satisfies the requirement that the notice of cancellation or nonrenewal be provided, or made available, to the first Named Insured in writing if we send the first Named Insured the electronic record with a request for a return receipt and we receive the return receipt. If we do not receive the return receipt, we may cancel or nonrenew the policy only after providing or delivering the notice of cancellation or nonrenewal to the first Named Insured in writing, subject to Paragraph **2.a.** above.

© ISO Properties, Inc., 2005

EXHIBIT A

POLICY NUMBER: HDO G20592709

ENDT. #67

IL 02 46 07 02

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# PENNSYLVANIA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** The **Cancellation** Common Policy Condition is replaced by the following:

CANCELLATION

1. The first Named Insured shown in the Declarations may cancel this policy by writing or giving notice of cancellation.

2. **Cancellation Of Policies In Effect For Less Than 60 Days**

   We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least 30 days before the effective date of cancellation.

3. **Cancellation Of Policies In Effect For 60 Days Or More**

   If this policy has been in effect for 60 days or more or if this policy is a renewal of a policy we issued, we may cancel this policy only for one or more of the following reasons:

   a. You have made a material misrepresentation which affects the insurability of the risk. Notice of cancellation will be mailed or delivered at least 15 days before the effective date of cancellation.

   b. You have failed to pay a premium when due, whether the premium is payable directly to us or our agents or indirectly under a premium finance plan or extension of credit. Notice of cancellation will be mailed at least 15 days before the effective date of cancellation.

   c. A condition, factor or loss experience material to insurability has changed substantially or a substantial condition, factor or loss experience material to insurability has become known during the policy period. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

   d. Loss of reinsurance or a substantial decrease in reinsurance has occurred, which loss or decrease, at the time of cancellation, shall be certified to the Insurance Commissioner as directly affecting in-force policies. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

   e. Material failure to comply with policy terms, conditions or contractual duties. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

© ISO Properties, Inc., 2001

EXHIBIT A

f. Other reasons that the Insurance Commissioner may approve. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

This policy may also be cancelled from inception upon discovery that the policy was obtained through fraudulent statements, omissions or concealment of facts material to the acceptance of the risk or to the hazard assumed by us.

4. We will mail or deliver our notice to the first Named Insured's last mailing address known to us. Notice of cancellation will state the specific reasons for cancellation.

5. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

6. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata and will be returned within 10 business days after the effective date of cancellation. If the first Named Insured cancels, the refund may be less than pro rata and will be returned within 30 days after the effective date of cancellation. The cancellation will be effective even if we have not made or offered a refund.

7. If notice is mailed, it will be by registered or first class mail. Proof of mailing will be sufficient proof of notice.

B. The following are added and supersede any provisions to the contrary:

1. **Nonrenewal**

   If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal, stating the specific reasons for nonrenewal, to the first Named Insured at least 60 days before the expiration date of the policy.

2. **Increase Of Premium**

   If we increase your renewal premium, we will mail or deliver to the first Named Insured written notice of our intent to increase the premium at least 30 days before the effective date of the premium increase.

Any notice of nonrenewal or renewal premium increase will be mailed or delivered to the first Named Insured's last known address. If notice is mailed, it will be by registered or first class mail. Proof of mailing will be sufficient proof of notice.

© ISO Properties, Inc., 2001
EXHIBIT A

POLICY NUMBER: HDO G20592709

ENDT. #68

IL 01 97 07 02

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# RHODE ISLAND CHANGES

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY – LEGAL LIABILITY COVERAGE FORM
COMMERCIAL PROPERTY – MORTGAGEHOLDERS ERRORS AND OMISSIONS COVERAGE FORM
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM LIABILITY COVERAGE FORM
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

A. The following is added to the **Transfer Of Rights Of Recovery Against Others To Us** Condition:

When an insurer or its agents recover payment on a casualty loss from a third party through subrogation, the insurer must first pay the insured the deductible portion of the casualty loss, less the prorated share of subrogation expenses and thereafter retain any funds in excess of the deductible portion of the recovery.

B. The following provision is added:

DIRECT LIABILITY OF INSURERS

We will be directly liable for those sums the insured becomes legally obligated to pay as damages to the injured party to which this insurance applies. In the event of that injured party's death, we will be directly liable for those sums the insured becomes legally obligated to pay as damages to the party entitled to sue as a result of the injured party's death, and to which this insurance applies.

© ISO Properties, Inc., 2001

EXHIBIT A

POLICY NUMBER: HDO G20592709

ENDT. #69

IL 02 73 01 06

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# RHODE ISLAND CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART

**A.** When this endorsement is attached to the Standard Property Policy **CP 00 99** the term Coverage Part in this endorsement is replaced by the term Policy.

**B.** With respect to the:

Capital Assets Program (Output Policy) Coverage Part

Commercial Inland Marine Coverage Part

Commercial Property Coverage Part

Farm Property – Other Farm Provisions Form – Additional Coverages, Conditions, Definitions

Farm – Livestock Coverage Form

Farm – Mobile Agricultural Machinery And Equipment Coverage Form;

Paragraph **1.** of the **Cancellation** Common Policy Condition is replaced by the following:

1. The first Named Insured shown in the Declarations may cancel this policy by giving, mailing or delivering advance written notice of cancellation to us or to our agent who issued the policy.

**C.** With respect to all Coverage Parts and Policies addressed in this endorsement, the **Cancellation** Common Policy Condition is amended by replacing Paragraphs **2.**, **3.**, **5.** and **6.** with the following:

2. We may cancel this policy by giving, mailing or delivering to the first Named Insured and agent, if any, written notice of cancellation at least:

   **a.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

   If this policy has been in effect for 60 days or more, or if this is a renewal of a policy we issued, we may cancel only for one or more of the following reasons:

   **a.** Nonpayment of premium;

   **b.** Fraud or material misrepresentation made by you or with your knowledge in obtaining the policy, continuing the policy, or in presenting a claim under the policy;

© ISO Properties, Inc., 2005

EXHIBIT A

c. Activities or omissions on your part which increase any hazard insured against, including a failure to comply with loss control recommendations;

d. Change in the risk which increases the risk of loss after insurance coverage has been issued or renewed, including but not limited to an increase in exposure due to regulation, legislation, or court decision;

e. Loss or decrease of our reinsurance covering all or part of the risk or exposure covered by the policy;

f. Determination by the Commissioner of Insurance that the continuation of the policy would jeopardize our solvency or would place us in violation of the insurance laws of this state;

g. Owner or occupant incendiarism;

h. Violation or breach by you of any policy terms or conditions;

i. Constructive or actual total loss of the Covered Property; or

j. Such other reasons as may be approved by the Commissioner of Insurance.

3. We will give, mail or deliver written notice to the first Named Insured at the last address known to us, and to the agent, if any.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due

The cancellation will be effective even if we have not made or offered a refund.

The following provisions govern calculation of return premium:

a. We will compute return premium pro rata and round to the next higher whole dollar when this policy is:

(1) Cancelled at our request;

(2) Cancelled because you no longer have a financial or insurable interest in the property or business operation that is the subject of insurance;

(3) Cancelled and rewritten by us or a member of our company group;

(4) Cancelled after the first year, if it is a prepaid policy written for a term of more than one year; or

(5) Cancelled by us at the request of a premium finance company upon default of the first Named Insured, when this policy is financed under a premium finance agreement.

b. When this policy is cancelled at your request (except when Paragraph **a.(2)**, **a.(3)** or **a.(4)** applies), we will return 90% (75% for Boiler and Machinery policies) of the pro rata unearned premium, rounded to the next higher whole dollar. However, when such cancellation takes place during the first year of a multi-year prepaid policy, we will return the full annual premium for the subsequent years.

6. Proof of giving, mailing or delivering notice of cancellation will be sufficient proof of notice.

D. With respect to all Coverage Parts and Policies addressed in this endorsement, the following is added to the **Cancellation** Common Policy Condition:

7. We will provide you with the reason or reasons for cancellation if:

a. You request in writing a statement of the reasons for cancellation; and

b. You agree in writing to hold us harmless from liability for any:

(1) Communication giving notice of, or specifying the reasons for, cancellation; or

(2) Statement made in connection with an attempt to discover or verify the existence of conditions which would be a reason for cancellation as provided under Paragraph C.2.

E. With respect to all Coverage Parts and Policies addressed in this endorsement, the following is added and supersedes any provision to the contrary:

**NONRENEWAL**

1. If we elect not to renew this policy, we will give, mail or deliver to the first Named Insured and agent, if any, written notice of nonrenewal at least 60 days before:

a. The expiration date of the policy; or

b. An anniversary date of the policy, if the policy is written for a term longer than one year or with no fixed expiration date

2. However, we need not give, mail or deliver this notice if:

a. We have offered to issue a renewal policy; or

b. The first Named Insured has obtained, or has agreed in writing to obtain, replacement coverage.

© ISO Properties, Inc., 2005

F. With respect to the:

Capital Assets Program (Output Policy) Coverage Part

Commercial Inland Marine Coverage Part

Commercial Property Coverage Part

Farm Property – Other Farm Provisions Form – Additional Coverages, Conditions, Definitions

Farm – Livestock Coverage Form

Farm – Mobile Agricultural Machinery And Equipment Coverage Form;

The following is added to the Common Policy Conditions:

If notice of cancellation or nonrenewal is mailed to the insured, we shall forward the notice of cancellation or nonrenewal to the last known address of the first Named Insured stated in the policy by first class mail and maintain proof of mailing by the United States Postal Service certificate of mailing. This proof of mailing will be sufficient proof of notice.

We will also give, mail or deliver written notice of cancellation, subject to **C.2.** above, and written notice of nonrenewal, subject to **E.1.** above, to any loss payee named in the policy. Mailing will be accomplished in accordance with the procedure stated in the above paragraph.

G. Under the Mortgageholders Condition, the paragraphs pertaining to cancellation and nonrenewal are replaced by the following:

1. If we cancel this policy, we will give, mail or deliver written notice to the mortgageholder at least:
   a. 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or
   b. 30 days before the effective date of cancellation if we cancel for any other reason.
2. If we do not renew this policy, we will give, mail or deliver written notice to the mortgageholder at least 10 days before:
   a. The expiration date of the policy; or
   b. An anniversary date of the policy, if the policy is written for a term longer than one year or with no fixed expiration date.
3. If notice of cancellation or nonrenewal is mailed, we shall forward the notice of cancellation or nonrenewal to the last known address of the first Named Insured stated in the policy by first class mail and maintain proof of mailing by the United States Postal Service certificate of mailing. This proof of mailing will be sufficient proof of notice.

© ISO Properties, Inc., 2005

POLICY NUMBER: HDO G20592709

ENDT. #70

IL 02 49 07 02

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# SOUTH CAROLINA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART

A. Paragraphs 2. and 3. of **Cancellation** Common Policy Condition are replaced by the following:

2. We may cancel this policy by mailing or delivering to the first Named Insured and the agent, if any, written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium, or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's and agent's last known addresses.

B. The following is added to the **Cancellation** Common Policy Condition:

7. **Cancellation Of Policies In Effect For 90 Days Or More**

   If this policy has been in effect for 90 days or more, or is a renewal or continuation of a policy we issued, we may cancel this policy only for one or more of the following reasons:

   a. Nonpayment of premium;

   b. Material misrepresentation of fact which, if known to us, would have caused us not to issue the policy;

   c. Substantial change in the risk assumed, except to the extent that we should reasonably have foreseen the change or contemplated the risk in writing the policy;

   d. Substantial breaches of contractual duties, conditions or warranties; or

   e. Loss of our reinsurance covering all or a significant portion of the particular policy insured, or where continuation of the policy would imperil our solvency or place us in violation of the insurance laws of South Carolina.

   Prior to cancellation for reasons permitted in this Item **e.**, we will notify the Commissioner, in writing, at least sixty days prior to such cancellation and the Commissioner will, within thirty days of such notification, approve or disapprove such action.

   Any notice of cancellation will state the precise reason for cancellation.

C. The following is added and supersedes any provisions to the contrary:

**Nonrenewal**

1. If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal to the first Named Insured and agent, if any, at least 30 days before

© ISO Properties, Inc., 2001

EXHIBIT A

a. The expiration date of this policy, if the policy is written for a term of one year or less; or

b. An anniversary date of this policy, if the policy is written for a term of more than one year or for an indefinite term.

However, we will not refuse to renew a policy issued for a term of more than one year, until expiration of its full term, if anniversary renewal has been guaranteed by additional premium consideration.

2. Any notice of nonrenewal will be mailed or delivered to the first Named Insured's and agent's last known addresses. If notice is mailed, proof of mailing will be sufficient proof of notice.

3. Any notice of nonrenewal will state the precise reason for nonrenewal.

© ISO Properties, Inc., 2001

EXHIBIT A

POLICY NUMBER: HDO G20592709

ENDT. #71

IL 02 50 07 02

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# TENNESSEE CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART

A. Paragraph 5. of the **Cancellation** Common Policy Condition is replaced by the following:

5. If this policy is cancelled, we will send the first Named Insured any premium refund due.

The refund will be pro rata if:

a. We cancel; or

b. The policy is cancelled at the request of a premium finance company that has financed this policy under a premium finance agreement.

The refund may be less than pro rata if the first Named Insured cancels the policy.

The cancellation will be effective even if we have not made or offered a refund.

B. The following is added to the **Cancellation** Common Policy Condition:

**CANCELLATION OF POLICIES IN EFFECT FOR 60 DAYS OR MORE**

If this policy has been in effect for 60 days or more, or if this policy is a renewal of a policy we issued, we may cancel this policy only for one or more of the following reasons:

1. Nonpayment of premium, including any additional premium, calculated in accordance with our current rating manual, justified by a physical change in the insured property or a change in its occupancy or use;
2. Your conviction of a crime increasing any hazard insured against;
3. Discovery of fraud or material misrepresentation on the part of either of the following:
   a. You or your representative in obtaining this insurance; or
   b. You in pursuing a claim under this policy;
4. Failure to comply with written loss control recommendations;
5. Material change in the risk which increases the risk of loss after we issued or renewed insurance coverage;
6. Determination by the insurance commissioner that the continuation of the policy would jeopardize our solvency or would place us in violation of the insurance laws of Tennessee or any other state;
7. Your violation or breach of any policy terms or conditions, or
8. Other reasons that are approved by the insurance commissioner.

© ISO Properties, Inc., 2001

EXHIBIT A

Notice of cancellation will state the reason for cancellation.

C. The following is added and supersedes any provisions to the contrary:

NONRENEWAL

1. If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal to the first Named Insured and agent, at least 60 days before the expiration date unless:

   a. We have offered to issue a renewal policy; or

   b. You have obtained replacement coverage or have agreed in writing to obtain replacement coverage.

2. Any notice of nonrenewal will be mailed or delivered to the first Named Insured's and agent's addresses shown in the policy. If notice is mailed, proof of mailing will be sufficient proof of notice.

D. The following is added to the **Premiums** Common Policy Condition:

Whenever an insurance policy which is financed with a premium finance company is cancelled, the insurer shall return, within 30 days after the effective date of the cancellation, whatever gross unearned premiums are due under the insurance policy directly to the premium finance company for the account of the first Named Insured.

© ISO Properties, Inc., 2001

EXHIBIT A

POLICY NUMBER: HDO G20592709

ENDT. #72

COMMERCIAL GENERAL LIABILITY
CG 01 03 06 06

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# TEXAS CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. With regard to liability for Bodily Injury, Property Damage and Personal And Advertising Injury, unless we are prejudiced by the insured's or your failure to comply with the requirement, no provision of this Coverage Part requiring you or any insured to give notice of "occurrence", claim or "suit", or forward demands, notices, summonses or legal papers in connection with a claim or "suit" will bar coverage under this Coverage Part.

© ISO Properties, Inc., 2005

EXHIBIT A

POLICY NUMBER: HDO G20592709

ENDT. #73

COMMERCIAL GENERAL LIABILITY
CG 01 86 12 04

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# UTAH CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

A. Any Condition titled:

Duties In the Event of An Electronic Data Incident
Duties in the Event of Occurrence, Offense, Claim or Suit
Duties in the Event of Occurrence, Claim or Suit
Duties in the Event of Injury, Claim or Suit
Duties in the Event of A Pollution Incident, Claim or Suit
Duties In the Event of A Claim Or Suit Or A Defect Or Product Withdrawal
Insured's Duties in the Event of a Loss
Duties in the Event of An Underground Storage Tank Incident

requiring notice to us is amended to include:

"Notice to our authorized representative is notice to us".

B. The **Legal Action Against Us** Condition does not apply.

© ISO Properties, Inc., 2003

EXHIBIT A

POLICY NUMBER: HDO G20592709

ENDT. #74

COMMERCIAL GENERAL LIABILITY
CG 01 79 02 03

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# VIRGINIA CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. Paragraph **4.** of **Section II – Who Is An Insured** is replaced by the following:

**4.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as an insured if there is no other similar insurance available to that organization. However:

a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**b.** Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**c.** Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

© ISO Properties, Inc., 2002

EXHIBIT A

POLICY NUMBER: HDO G20592709

ENDT. #75

COMMERCIAL GENERAL LIABILITY
CG 01 54 09 06

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

# VERMONT CHANGES - POLLUTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM (OCCURRENCE VERSION)

## SCHEDULE

| Pollution Liability Aggregate Limit: $ |
| --- |

A. The following is added to **Section 1 – Coverages:**
**COVERAGE D POLLUTION BODILY INJURY AND PROPERTY DAMAGE**

1. **Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" included within the "pollution liability hazard" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III - Limits Of Insurance, and

(2) Our right and duty to defend end when we have used up the Pollution Liability Aggregate Limit in the payment of judgments or settlements.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A, B and D.

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2) The "bodily injury" or "property damage" occurs during the policy period; and

(3) A claim for damages because of the "bodily injury" or "property damage" is first made against any insured, in accordance with Paragraph c. below, during the policy period.

c. A claim by a person or organization seeking damages will be deemed to have been made at the earlier of the following times:

(1) When notice of such claim is received and recorded by any insured or by us, whichever comes first; or

(2) When we make a settlement in accordance with Paragraph 1.a. above

All claims for damages because of "bodily injury" to the same person, including damages claimed by any person or organization for care, loss of services, or death resulting at any time from the "bodily injury" will be deemed to have been made at the time the first of those claims is made against any insured.

All claims for damages because of "property damage" causing loss to the same person or organization as a result of an "occurrence" will be deemed to have been made at the time the first of those claims is made against any insured.

All claims for injury or damage arising out of a discharge, release or escape of "pollutants", including all injury or damage arising out of all subsequent exposure of persons and property to such "pollutants", shall be deemed to have been made at the time the first of those claims is made against any insured.

© ISO Properties, Inc., 2006

EXHIBIT A

**2. Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage", expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

(2) That the insured would have in the absence of the contract or agreement.

**c. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**d. Employer's Liability**

"Bodily injury" to

(1) An "employee" of the insured arising out of and in the course of

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business, or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**e. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies to claims against any insured that allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which resulted in the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

(a) Less than 26 feet long; and

(b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of:

(a) The operation of machinery or equipment that is attached to or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged, or

(b) The operation of any of the machinery or equipment listed in Paragraph f.(2) or f.(3) of the definition of "mobile equipment".

**f. Mobile Equipment**

**j. Statutory Or Regulatory Clean-Up Costs**

© ISO Properties, Inc., 2006

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition or stunting activity.

**g. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war; or

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**h. Damage To Property**

"Property damage" to:

(1) Property you own, rent or occupy including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you; or

(4) Personal property in the care, custody or control of the insured.

Paragraphs (3) and (4) of this exclusion do not apply to liability assumed under a side-track agreement.

**i. Products-Completed Operations Hazard**

"Bodily injury" or "property damage" included within the "products-completed operations hazard".

Any loss, cost or expense arising out of any:

(1) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**B. Supplementary Payments – Coverages A And B** is replaced by the following:

**SUPPLEMENTARY PAYMENTS – COVERAGES A, B AND D**

We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

1. All expenses we incur.
2. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.
3. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.
4. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.
5. All costs taxed against the insured in the "suit".
6. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

© ISO Properties, Inc., 2006

EXHIBIT A

7. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

C. The following is added to **Section III – Limits Of Insurance:**

The Pollution Liability Aggregate Limit is the most we will pay under Coverage **D** for all damages because of injury and damage for which claim is first made during the policy period.

D. Paragraph 4. **Other Insurance** of **Section IV – Conditions** is amended as follows:

All references to Coverage **A** or **B** are amended to read Coverage **A**, **B** or **D**.

E. The following additional definition applies:

"Pollution Liability hazard" means all "bodily injury" and "property damage" arising out of the discharge, release or escape of "pollutants" at or from:

a. Premises you own, rent or occupy; or

b. Any site or location on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations.

© ISO Properties, Inc., 2006

EXHIBIT A

POLICY NUMBER: HDO G20592709

ENDT. #76

IL 01 09 02 06

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# VERMONT CHANGES – CIVIL UNION

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART

A. The term "spouse" is replaced by the following:

Spouse or party to a civil union under Vermont law.

B. Under the Commercial Auto Coverage Part, the term "family member" is replaced by the following:

"Family member" means a person, who is a resident of your household and is related to you by blood, adoption, including a ward or foster child, marriage, or civil union under Vermont law.

C. With respect to coverage for the ownership, maintenance, or use of "covered autos" provided under the Commercial Liability Umbrella Coverage Part or the Farm Umbrella Liability Policy, the term "family member" is replaced by the following:

"Family member" means a person, who is a resident of your household and is related to you by blood, adoption, including a ward or foster child, marriage, or civil union under Vermont law

© ISO Properties, Inc., 2005

EXHIBIT A

POLICY NUMBER: HDO G20592709

ENDT. #77

COMMERCIAL GENERAL LIABILITY
CG 01 24 01 93

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# WISCONSIN CHANGES – AMENDMENT OF POLICY CONDITIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**1.** The following is added to CHANGES (Common Policy Conditions):

If one of our agents knows of a fact that breaches a condition of this Coverage Part, we will be considered to have knowledge of this same fact if:

**a.** The agent knows of this fact at the time the Coverage Part is issued or an application is made; or

**b.** The agent later learns of this fact in the course of his dealings as an agent with you.

Any fact that breaches a condition of this Coverage Part and is known to the agent prior to loss shall not void the Coverage Part or prevent a recovery in the event of loss.

**2.** The LEGAL ACTION AGAINST US Condition (Section **IV**) does not apply.

**3.** The following is added to Condition **6.** REPRESENTATIONS (Section **IV**):

No misrepresentation or breach of affirmative warranty made by you or on your behalf in the negotiation of this Coverage Part affects our obligation under this Coverage Part unless:

**a.** We rely on it and it is either material or made with intent to deceive; or

**b.** The facts misrepresented or falsely warranted contribute to the loss.

No failure of a condition before the loss and no breach of a promissory warranty affects our obligation under this Coverage Part unless such failure or breach:

**a.** Exists at the time of the loss; and

**b.** Either increases the risk at the time of the loss or contributes to the loss.

The provisions of this condition do not apply to nonpayment of premium.

**4.** Condition 8. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US (Section **IV**) is replaced by the following:

In the event of any payment under this Coverage Part, we will be entitled to the insured's rights of recovery against any person or organization and the insured will do whatever is necessary to secure such rights. We will be entitled to a recovery only after the insured has been fully compensated for damages.

**5. CONFORMITY TO STATUTE OR RULE**

Any provision of this policy (including endorsements which modify the policy) that is in conflict with a Wisconsin statute or rule is hereby amended to conform to that statute or rule.

The term rule means a valid rule promulgated by the Commissioner of Insurance in accordance with the rule-making authority conferred under Wis. Stat. Ann. Section 227.11(2) and published in the Wisconsin Administrative Code.

Copyright, Insurance Services Office, Inc., 1984, 1992

EXHIBIT A

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Christina A. Snyder and the assigned discovery Magistrate Judge is Suzanne H. Segal.

The case number on all documents filed with the Court should read as follows:

**CV10- 881 CAS (SSx)**

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

[X] **Western Division**
**312 N. Spring St., Rm. G-8**
**Los Angeles, CA 90012**

[ ] **Southern Division**
**411 West Fourth St., Rm. 1-053**
**Santa Ana, CA 92701-4516**

[ ] **Eastern Division**
**3470 Twelfth St., Rm. 134**
**Riverside, CA 92501**

Failure to file at the proper location will result in your documents being returned to you.

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
KEYSTONE AUTOMOTIVE INDUSTRIES, INC.

**DEFENDANTS**
ACE AMERICAN INSURANCE COMPANY

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)
Anderson Kill Wood & Bender, P.C.
864 East Santa Clara Street
Ventura, CA 93001 Tel: (805) 288-1300 / Fax: (805) 288-1301

Attorneys (If Known)

COPY

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff
☑ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only (Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify): ☐ 6 Multi-District Litigation ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☑ Yes ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☑ No ☐ **MONEY DEMANDED IN COMPLAINT: $**________

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Breach of Implied Covenant or Good Faith Dealing

**VII. NATURE OF SUIT (Place an X in one box only.)**

**OTHER STATUTES**
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Act
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Info. Act
- ☐ 900 Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes

**CONTRACT**
- ☑ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS — PERSONAL INJURY**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Fed. Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury- Med Malpractice
- ☐ 365 Personal Injury- Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 463 Habeas Corpus- Alien Detainee
- ☐ 465 Other Immigration Actions

**TORTS — PERSONAL PROPERTY**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**CIVIL RIGHTS**
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/Accommodations
- ☐ 444 Welfare
- ☐ 445 American with Disabilities - Employment
- ☐ 446 American with Disabilities - Other
- ☐ 440 Other Civil Rights

**PRISONER PETITIONS**
- ☐ 510 Motions to Vacate Sentence Habeas Corpus
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus/ Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**FORFEITURE / PENALTY**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety /Health
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt. Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS-Third Party 26 USC 7609

CV10 0881

**FOR OFFICE USE ONLY:** Case Number: ________

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No ☐ Yes
If yes, list case number(s): ______

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No ☐ Yes
If yes, list case number(s): ______

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply)
☐ A. Arise from the same or closely related transactions, happenings, or events; or
☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Pennsylvania |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
**Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

*** Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): [signature] **Date** February 3, 2010

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

ANDERSON KILL WOOD & BENDER, P.C.
JOSEPH G. BALICE (SBN 245509)
864 EAST SANTA CLARA STREET
VENTURA, CA 93001
TEL: (805) 288-1300
FAX:(805) 288-1301

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KEYSTONE AUTOMOTIVE INDUSTRIES, INC. PLAINTIFF(S) v. | CASE NUMBER CV10 0881 CAS (SSx) |
| ACE AMERICAN INSURANCE COMPANY, DEFENDANT(S). | **SUMMONS** |

TO: DEFENDANT(S): ACE AMERICAN INSURANCE COMPANY

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ ____________ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, Anderson Kill Wood & Bender, P.C., whose address is 864 East Santa Clara Street, Ventura, CA 93001. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: FEB - 5 2010

By: CHRISTOPHER POWERS
Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*